# UNITED STATES DISTRICT COURT

for the
Middle District of Florida

ALLSTATE INSURANCE COMPANY;
ALLSTATE INDEMNITY COMPANY;
ALLSTATE PROPERTY AND CASUALTY
  INSURANCE COMPANY;
ALLSTATE FIRE AND CASUALTY
  INSURANCE COMPANY; and
ALLSTATE VEHICLE AND PROPERTY
  INSURANCE COMPANY (F/K/A: DEERBROOK
  INSURANCE COMPANY, SUCCESSOR BY
  MERGER TO NORTHBROOK INDEMNITY
  COMPANY),

       Plaintiffs;

v.                                             Civil Action No.

SARA C. VIZCAY, M.D.;
BEST CARE MEDICAL CENTER, INC.;
CALEB HEALTH CARE, INC.;
FLORIDA REHABILITATION PRACTICE, INC.
  (F/K/A: DANA MEDICAL CENTER, INC.);
GLOBAL DIAGNOSTIC CENTER, INC.;
PERSONAL MEDICAL CENTER, INC.;
P.V.C. MEDICAL CENTER, INC.; and
REGIONAL ENTERPRISES FOR HEALTH
  CORPORATION;

       Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiffs, ALLSTATE INSURANCE COMPANY; ALLSTATE

INDEMNITY COMPANY; ALLSTATE PROPERTY AND CASUALTY INSURANCE

COMPANY; ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY; and

ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY (F/K/A: DEERBROOK INSURANCE COMPANY SUCCESSOR BY MERGER TO NORTHBROOK INDEMNITY COMPANY) (hereinafter collectively referred to as "ALLSTATE"), and hereby sue Defendants, SARA C. VIZCAY, M.D. (hereinafter referred to as "VIZCAY"); and the following corporations that will be hereinafter collectively referred to as "CLINICS": BEST CARE MEDICAL CENTER, INC.; CALEB HEALTH CARE, INC.; FLORIDA REHABILITATION PRACTICE, INC. (F/K/A: DANA MEDICAL CENTER, INC.); GLOBAL DIAGNOSTIC CENTER, INC.; PERSONAL MEDICAL CENTER, INC.; P.V.C. MEDICAL CENTER, INC.; and REGIONAL ENTERPRISES FOR HEALTH CORPORATION, state as follows:

## JURISDICTION, VENUE AND PARTIES

1.      This action seeks money damages in excess of $75,000.00, exclusive of interest, costs and attorneys' fees and this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, based upon on the amount in controversy and diverse citizenship of the parties.

2.      Venue is proper in this Court pursuant to 28 U.S.C § 1391 because a substantial part of the events giving rise to this cause of action occurred in this judicial district and Defendants reside and/or do business in this judicial district.

3.      At all times material to this action, the ALLSTATE entities were Illinois and California corporations that were authorized to transact, and were transacting, business in the State of Florida.

4.      At all times material to this action, VIZCAY was a resident of the State of

Florida and was the purported owner and/or medical director of the CLINICS.  VIZCAY is a medical doctor, licensed pursuant to Florida Statute §458 et al.

5.     At all times material, VIZCAY was the purported 100% owner of:

    a.  CALEB HEALTH CARE, INC.;

    b.  GLOBAL DIAGNOSTIC CENTER, INC.;

    c.  PERSONAL MEDICAL CENTER, INC.; and

    d.  REGIONAL ENTERPRISES FOR HEALTH CORPORATION

which will hereinafter be referred to as the "DE FACTO CLINICS".

6.     At all times material, VIZCAY was the purported medical director of:

    a.  BEST CARE MEDICAL CENTER, INC.;

    b.  FLORIDA REHABILITATION PRACTICE, INC. (F/K/A: DANA MEDICAL CENTER INC.); and

    c.  P.V.C. MEDICAL CENTER, INC.

which will hereinafter be referred to as the "MEDICAL DIRECTOR CLINICS".

7.     At all times material to this action, the CLINICS were Florida corporations that conducted business in Hillsborough County, Florida.

## GENERAL ALLEGATIONS AS TO ALL COUNTS

8.     ALLSTATE issued automobile insurance policies, which provided Personal Injury Protection Benefits pursuant to Florida Statute §627.736, and in some cases, medical payment coverage to each of the persons listed in the attached "Exhibit A" (hereinafter referred to as "INSUREDS").

9.     Each of ALLSTATE's INSUREDS were reportedly involved in motor vehicle accidents.

10.     Pursuant to Florida's No-Fault Law, ALLSTATE is contractually obligated to indemnify its insured for up to ten thousand dollars ($10,000) of benefits and is further obligated to pay 80% of all medically necessary and related medical bills. Some of ALLSTATE's INSUREDS purchased medical payment coverage which provides additional coverage for the remaining 20% not paid by No-Fault.

11.     ALLSTATE's INSUREDS sought treatment from the CLINICS and the CLINICS obtained irrevocable assignments of personal injury protection benefits, and in some cases medical payment benefits, from the INSUREDS.

12.     The CLINICS exercised undue influence on the INSUREDS in such a manner as to exploit the INSUREDS for the CLINICS' own financial gain.

13.     The CLINICS' actions resulted in the depletion of the limited No-Fault benefits available to ALLSTATE's INSUREDS. Consequently, some of ALLSTATE's INSUREDS have been left without any available No-Fault benefits to pay for necessary medical care and treatment.

14.     To the extent that the CLINICS' bills that were submitted to ALLSTATE are not properly payable under Florida's No-Fault Statute, neither ALLSTATE nor its INSUREDS were responsible for said payment.

15.     ALLSTATE's contract of insurance incorporates Florida Statutes §627.736. Florida Statute §627.736(1)(a) clearly provides that ALLSTATE shall pay medical benefits under PIP as follows:

> (a)     *Medical benefits.*   --Eighty percent of all reasonable expenses for medically necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices,

and medically necessary ambulance, hospital, and nursing services. However, the medical benefits shall provide reimbursement only for such services and care that are **lawfully provided**, supervised, ordered, or prescribed by a physician licensed under chapter 458 or chapter 459, a dentist licensed under chapter 466, or a chiropractic physician licensed under chapter 460 or that are provided by any of the following persons or entities:

\* \* \*

3. An entity **wholly owned** by one or more physicians licensed under chapter 458 or chapter 459, chiropractic physicians licensed under chapter 460, or dentists licensed under chapter 466 or by such practitioner or practitioners and the spouse, parent, child, or sibling of that practitioner or those practitioners.

§627.736(1)(a), Fla. Stat. (2008) (emphasis added).

16.     Florida's No-Fault Statute, §627.736(5)(a) provides as follows:

. . . (5)(a) Any physician, hospital, *clinic*, or other person or institution **lawfully rendering** treatment to an injured person ... may charge only a reasonable amount for the services ... rendered, and the insurer providing such coverage may pay for such charges directly to such person or institution **lawfully rendering** such treatment. §627.736(5)(a), Fla. Stat. (2008) (emphasis added).

17.     Florida Statute §627.732(11) defines "lawfully" as being "in substantial compliance with **all** relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment." (emphasis added). Based on the statutory definition and case law existing before this definition was promulgated by Florida's legislature, it is clear that an insurer such as ALLSTATE only has to pay for charges for services that are lawfully rendered.

18.     The legislature specifically mandated that neither an insured nor an insurer is obligated to pay for medical services that were not lawful at the time they were

rendered. §627.736(5)(b)(1)(b), Fla. Stat. (2008).

19.     Each of the CLINICS submitted bills in the ordinary course of business through the United States Postal Service to ALLSTATE.

20.     All conditions precedent to the bringing of this cause of action have been met or waived.

### GENERAL ALLEGATIONS AS TO BEST CARE MEDICAL CENTER, INC.

21.     On or about August 1, 2003, Yodani Carro Perez filed with Florida's Secretary of State, BEST CARE MEDICAL CENTER INC.'s (hereinafter "BEST CARE") Articles of Incorporation which listed Yodani Carro Perez as the registered agent and incorporator of same.

22.     On May 24, 2005, Enrique Toledo filed with Florida's Secretary of State, BEST CARE's Amended Annual Report which replaced "Yordani Carro" with Enrique Toledo as president and registered agent of BEST CARE.

23.     On May 27, 2005, Enrique Toledo filed with Florida's Secretary of State, BEST CARE's Statement of Change of Registered Office or Registered Agent or Both for Corporations which replaced Yodani Carro Perez with Enrique Toledo as BEST CARE's registered agent.

24.     On December 15, 2006, Armando B. Angulo filed with Florida's Secretary of State, BEST CARE's Amended Annual Report replacing Enrique Toledo with Armando B. Angulo as the president and registered agent of BEST CARE.

25.     On April 23, 2009, Armando B. Angulo, as president and director of BEST CARE, filed with Florida's Secretary of State, BEST CARE's Articles of

Amendment which replaced Armando B. Angulo with Mario Enrique Amador Felipe as the president, director, and registered agent of BEST CARE.

26.     On October 12, 2004, Yodani Carro Perez filed with Florida's Agency for Health Care Administration, on behalf of BEST CARE, Change of Medical Director Form which replaced Ernest A. Gonzalez with VIZCAY as the medical director of BEST CARE. To date, VIZCAY is listed as the medical director of BEST CARE.

27.     BEST CARE billed ALLSTATE for services/treatments that were allegedly provided to ALLSTATE's INSUREDS identified in the BEST CARE section of the attached "Exhibit A".

28.     ALLSTATE paid BEST CARE for services which were not properly payable.

## GENERAL ALLEGATIONS AS TO CALEB HEALTH CARE, INC.

29.     On December 26, 2007, VIZCAY filed with Florida's Secretary of State, CALEB HEALTH CARE, INC.'s (hereinafter "CALEB") Articles of Incorporation which listed her as its president and registered agent.

30.     In her January 14, 2008 Application for Certificate of Exemption from Licensure as a Health Care Clinic, VIZCAY indicated that she was the 100% owner of CALEB.   In said application, VIZCAY affirmed "upon personal information and knowledge, the undersigned affirms that the applicant meets each and every statutory requirement for the issuance of a certificate of exemption under this part and requests the Agency for Health Care Administration rely upon this affirmation."

31.     Based upon VIZCAY's affirmation, Florida's Agency for Health Care

Administration issued a Health Care Clinic Certificate of Exemption with an effective date of January 17, 2008.

32.     Despite the representations made on the aforementioned January 14, 2008 Application for Certificate of Exemption from Licensure as a Health Care Clinic, at all times material to this Complaint, VIZCAY was not the true owner, operator, and/or manager of CALEB.

33.     CALEB billed ALLSTATE for services/treatments that were allegedly provided to ALLSTATE's INSUREDS identified in the CALEB section of the attached "Exhibit A".

34.     ALLSTATE paid CALEB for services which were not properly payable.

**GENERAL ALLEGATIONS AS TO FLORIDA REHABILITATION PRACTICE, INC. (F/K/A DANA MEDICAL CENTER, INC.)**

35.     On July 11, 2002, Angel Diaz and Danai Diaz filed with Florida's Secretary of State, DANA MEDICAL CENTER, INC.'s ("DANA") Articles of Incorporation which listed Angel Diaz as the registered agent of DANA.

36.     On April 7, 2003, Danai Diaz filed with Florida's Secretary of State, DANA's Uniform Business Report which listed Angel Diaz as the president and Danai Diaz as the director of DANA.

37.     On January 29, 2008, Yuniet Rodriguez submitted a Change of Ownership form to Florida's Agency for Health Care Administration, advising that the facility was in the process of being purchased from Angel Diaz and Dania Diaz and the sale would be finalized on March 28, 2008.  The licensure for the new ownership became effective as of March 28, 2008.

38.     On April 14, 2008, Angel Diaz filed with Florida's Secretary of State, DANA's Articles of Amendment which removed Angel Diaz and Danai Diaz as the president and director and added Yuniet Rodriguez as the sole owner, president, and registered agent of DANA.

39.     On November 24, 2008, Arianne Rodriguez Tejada submitted a Change of Ownership form with the Florida Agency for Health Care Administration, advising that the facility was in the process of being purchased from Yuniet Rodriguez and the sale would be finalized on January 21, 2009.  The licensure for the new ownership became effective as of January 21, 2009.

40.     On December 23, 2008, Yuniet Rodriguez filed with Florida's Secretary of State, DANA's Articles of Amendment which replaced Yuniet Rodriguez with Arianne Rodriguez Tejada as the president, director, and registered agent of DANA.

41.     In December of 2008, DANA's office moved from 1947 West Martin Luther King, Jr. Boulevard, Tampa, Florida to 2901 West Busch Boulevard, Suite 610, Tampa, Florida.

42.     On February 13, 2009, Arianne Rodriguez Tejada submitted to Florida's Agency for Health Care Administration, a Change of Facility Name and Address Change form, advising that the facility's name was being changed from DANA's name to FLORIDA REHABILITATION PRACTICE, INC. ("FLORIDA REHAB") and this became effective on February 13, 2009.

43.     On February 27, 2009, Arianne Rodriguez Tejada filed with Florida's Secretary of State, DANA's Articles of Amendment which changed DANA's name to

FLORIDA REHAB.

44.     On October 18, 2010, Arianne Rodriguez Tejada filed with Florida's Secretary of State, FLORIDA REHAB's Articles of Amendment which added Orelve Garcia Perez as a director of FLORIDA REHAB.

45.     On March 2, 2004, Angel Diaz and Dania Diaz, on behalf of FLORIDA REHAB (F/K/A DANA), filed with Florida's Agency for Health Care Administration an Application for Health Care Clinic Licensure naming VIZCAY as the medical director of same.  To date, VIZCAY is listed as the medical director of FLORIDA REHAB (F/K/A DANA).

46.     FLORIDA   REHAB   (F/K/A   DANA)   billed   ALLSTATE   for services/treatments that were allegedly provided to ALLSTATE's INSUREDS identified in the FLORIDA REHAB (F/K/A DANA) section of the attached "Exhibit A".

47.     ALLSTATE paid FLORIDA REHAB (F/K/A DANA) for services which were not properly payable.

### GENERAL ALLEGATIONS AS TO GLOBAL DIAGNOSTIC CENTER, INC.

48.     On January 14, 2008, VIZCAY filed with Florida's Secretary of State, GLOBAL  DIAGNOSTIC  CENTER,  INC.'s  (hereinafter  "GLOBAL")  Articles  of Incorporation which listed her as its president and registered agent and Romero Norge as its director.

49.     In her January 9, 2008 Application for Certificate of Exemption from Licensure as a Health Care Clinic, VIZCAY indicated that she was the 100% owner of GLOBAL.   In said application, VIZCAY affirmed "upon personal information and

knowledge, the undersigned affirms that the applicant meets each and every statutory requirement for the issuance of a certificate of exemption under this part and requests the Agency for Health Care Administration rely upon this affirmation."

50.     Based upon VIZCAY's affirmation, Florida's Agency for Health Care Administration issued a Health Care Clinic Certificate of Exemption with an effective date of January 25, 2008.

51.     Despite the representations made on the aforementioned January 9, 2008 Application for Certificate of Exemption from Licensure as a Health Care Clinic, at all times material to this Complaint, VIZCAY was not the true owner, operator, and/or manager of GLOBAL.

52.     GLOBAL billed ALLSTATE for services/treatments that were allegedly provided to ALLSTATE's INSUREDS identified in the GLOBAL section of the attached "Exhibit A".

53.     ALLSTATE paid GLOBAL for services which were not properly payable.

**GENERAL ALLEGATIONS AS TO PERSONAL MEDICAL CENTER, INC.**

54.     On January 14, 2008, VIZCAY filed with Florida's Secretary of State, PERSONAL MEDICAL CENTER, INC.'s (hereinafter "PERSONAL MEDICAL") Articles of Incorporation which listed VIZCAY as its president and registered agent and Ariel Santos as its director.

55.     On January 18, 2010, VIZCAY filed with Florida's Secretary of State, PERSONAL MEDICAL's Annual Report which listed VIZCAY as its president and registered agent and Alipio Simon Perez as its director.  Ariel Santos was not included in

the aforementioned annual report.

56.     On June 28, 2010, VIZCAY filed with Florida's Secretary of State, PERSONAL MEDICAL's Articles of Amendment which removed Alipio Simon Perez as the director of PERSONAL MEDICAL.

57.     On January 22, 2008, VIZCAY filed with Florida's Agency for Health Care Administration, an Application for Certificate of Exemption from Licensure as a Health Care Clinic and VIZCAY indicated that she was the 100% owner of PERSONAL MEDICAL.   In said application, VIZCAY affirmed "upon personal information and knowledge, the undersigned affirms that the applicant meets each and every statutory requirement for the issuance of a certificate of exemption under this part and requests the Agency for Health Care Administration rely upon this affirmation."

58.     Based upon VIZCAY's affirmation, Florida's Agency for Health Care Administration issued a Health Care Clinic Certificate of Exemption with an effective date of January 22, 2008.

59.     Despite the representations made on the aforementioned Application for Certificate of Exemption from Licensure as a Health Care Clinic, at all times material to this Complaint, VIZCAY was not the true owner, operator, and/or manager of PERSONAL MEDICAL.

60.     PERSONAL MEDICAL billed ALLSTATE for services/treatments that were allegedly provided to ALLSTATE's INSUREDS identified in the PERSONAL MEDICAL section of the attached "Exhibit A".

61.     ALLSTATE paid PERSONAL MEDICAL for services which were not

properly payable.

## GENERAL ALLEGATIONS AS TO P.V.C. MEDICAL CENTER, INC.

62. On or about January 27, 2005, Jose Antonio Plasencia filed with Florida's Secretary of State, P.V.C. MEDICAL CENTER, INC.'s ("PVC") Articles of Incorporation which listed "Jose A Placiences" as the registered agent and Jose Antonio Plasencia as the president and incorporator of same.

63. On May 4, 2005, Jose A. Plasencia, on behalf of PVC, filed with Florida's Agency for Health Care Administration, an Application for Health Care Clinic Licensure which listed Robert Casanas, M.D. as the medical director of PVC.

64. On September 30, 2005, Jose A. Plasencia, on behalf of PVC, filed with Florida's Agency for Health Care Administration, a Change of Medical or Clinic Director Form, which replaced Robert Casanas, M.D. as the medical director of PVC with VIZCAY.

65. On September 17, 2008, Jose A. Plasencia and Alfredo Rodriguez filed with Florida's Secretary of State, PVC's Articles of Amendment which transferred the capital shares of stock to Alfredo Rodriguez and named Alfredo Rodriguez as the new president and registered agent of PVC.

66. On July 7, 2008, Alfredo Rodriguez, on behalf of PVC, filed with Florida's Agency Health Care Administration, a Change of Ownership form advising that he was in the process of purchasing PVC from Jose A. Plasencia and that the sale would be finalized on August 29, 2008. The licensure for the new ownership became effective as of September 6, 2008.

67. PVC billed ALLSTATE for services/treatments that were allegedly provided to ALLSTATE's INSUREDS identified in the PVC section of the attached "Exhibit A".

68. ALLSTATE paid PVC for services which were not properly payable.

## GENERAL ALLEGATIONS AS TO
## REGIONAL ENTERPRISES FOR HEALTH CORPORATION

69. On January 3, 2008, VIZCAY filed with Florida's Secretary of State, REGIONAL ENTERPRISES FOR HEALTH CORPORATION's (hereinafter "REGIONAL") Articles of Incorporation which listed VIZCAY as its president and registered agent, Heather Green as its vice president, and Enrique Toledo as its secretary.

70. On May 9, 2008, Enrique Toledo filed with Florida's Secretary of State, REGIONAL's Articles of Amendment which removed Heather Green as vice president and Enrique Toledo as secretary and added Miguel Moreno-Cardenas as its vice president.

71. On January 18, 2010, VIZCAY filed with Florida's Secretary of State, REGIONAL's annual report which listed VIZCAY as president and Yoandry Corvo-Hernandez as director of REGIONAL.

72. On January 28, 2008, VIZCAY filed, on behalf of REGIONAL, an Application for Certificate of Exemption from Licensure as a Health Care Clinic. VIZCAY indicated in same that she was the 100% owner of REGIONAL. In said application, VIZCAY affirmed "upon personal information and knowledge, the undersigned affirms that the applicant meets each and every statutory requirement for the issuance of a certificate of exemption under this part and requests the Agency for Health

Care Administration rely upon this affirmation."

73.    Based upon VIZCAY's affirmation, Florida's Agency for Health Care Administration issued a Health Care Clinic Certificate of Exemption with an effective date of February 1, 2008.

74.    Despite the representations made in VIZCAY's aforementioned Application for Certificate of Exemption from Licensure as a Health Care Clinic, at all times material to this Complaint, VIZCAY was not the true owner, operator, and/or manager of REGIONAL.

75.    REGIONAL billed ALLSTATE for services/treatments that were allegedly provided to ALLSTATE's INSUREDS identified in the REGIONAL section of the attached "Exhibit A".

76.    ALLSTATE paid REGIONAL for services which were not properly payable.

**COUNT I - NEGLIGENT MISREPRESENTATION**
**(VIZCAY AND CLINICS)**

77.    ALLSTATE re-affirms and re-alleges paragraphs 1-76 as if fully set forth herein.

78.    VIZCAY and each of the CLINICS submitted bills and medical documentation to ALLSTATE that contained material facts which were false.

79.    Specifically, VIZCAY and each of the CLINICS submitted bills and medical documentation to ALLSTATE for services that were not lawfully rendered to ALLSTATE's INSUREDS identified in the attached "Exhibit A".

80.    VIZCAY and each of the CLINICS knew or should have known that the

statements made in their bills, medical documentation and other claims submission-related documents submitted to ALLSTATE were false.

81.    VIZCAY and each of the CLINICS intended and expected ALLSTATE to rely upon the misrepresentations made in the bills, medical documentation and other claims submission-related documents submitted to ALLSTATE.

82.    ALLSTATE justifiably relied on the bills and medical documentation submitted by VIZCAY and each of the CLINICS.

83.    VIZCAY and each of the DE FACTO CLINICS made material misrepresentations to ALLSTATE by representing to ALLSTATE that VIZCAY was the owner of the DE FACTO CLINICS.

84.    VIZCAY and each of the MEDICAL DIRECTOR CLINICS made material misrepresentations by representing that the MEDICAL DIRECTOR CLINICS had a Medical Director that was performing the statutory duties required of a medical director pursuant to Florida law.  However, VIZCAY did not comply with her statutory duties as Medical Director.

85.    Each of the MEDICAL DIRECTOR CLINICS failed to employ a medical director who performed the required statutory duties as medical director.

86.    VIZCAY, as Medical Director of the MEDICAL DIRECTOR CLINICS, and the MEDICAL DIRECTOR CLINICS owed ALLSTATE's INSUREDS (identified in the attached "Exhibit A") a duty to perform the medical director duties to ensure services were properly and lawfully rendered, and that the medical bills, records and other claims submission-related documents were properly completed and submitted.

87.    VIZCAY and the MEDICAL DIRECTOR CLINICS breached their duties by not complying with the medical director duties.

88.    VIZCAY's failure to comply with the medical director duties at the MEDICAL DIRECTOR CLINICS rendered the bills submitted by the MEDICAL DIRECTOR CLINICS to ALLSTATE's INSUREDS (listed in the attached "Exhibit A") noncompensable.

89.    VIZCAY and each of the CLINICS contended that their representations regarding ownership and their use of medical directors were true, when in fact they were false.

90.    VIZCAY and each of the CLINICS knew or should have known that their ownership and medical director representations to ALLSTATE as described in this Count were false.

91.    These ownership and medical director misrepresentations by VIZCAY and each of the CLINICS had a direct impact on ALLSTATE's determination of the compensability of the bills submitted by VIZCAY and each of the CLINICS.

92.    VIZCAY and each of the CLINICS intended and expected ALLSTATE to rely upon the ownership and medical director representations that each of them made.

93.    ALLSTATE justifiably relied upon the ownership and medical director representations made by each of the CLINICS in determining the compensability of the bills VIZCAY and each of the CLINICS submitted to ALLSTATE.

94.    As a direct and proximate result of the above-described negligent misrepresentations, ALLSTATE and its INSUREDS (listed in the attached "Exhibit A")

were damaged.

WHEREFORE, ALLSTATE demands judgment against VIZCAY and each of the CLINICS for damages, costs and such other relief as the court deems equitable, just and proper.

### COUNT II - COMMON LAW FRAUD
### (VIZCAY AND CLINICS)

95.     ALLSTATE re-affirms and re-alleges paragraphs 1-76 as if fully set forth herein.

96.     After January 1, 2008, the DE FACTO CLINICS and VIZCAY falsely represented that VIZCAY was the sole owner of the DE FACTO CLINICS. VIZCAY and the DE FACTO CLINICS concealed the true owners of the DE FACTO CLINICS. The DE FACTO CLINICS and VIZCAY knew who the true owners were of the DE FACTO CLINICS.

97.     The CLINICS and VIZCAY submitted medical documentation and bills to ALLSTATE that they knew were false, incomplete, misleading and deceptive.

98.     Each of the CLINICS and VIZCAY knew or should have known that the medical documentation and bills they each submitted to ALLSTATE were false, incomplete, misleading and deceptive.

99.     ALLSTATE does not know the extent of the false, incomplete, misleading and deceptive medical records and billings submitted by the CLINICS and VIZCAY.

100.     ALLSTATE justifiably relied upon the representations made by VIZCAY and the CLINICS in making payments under the applicable contracts of insurance.

101.     The CLINICS and VIZCAY operated under a scheme whereby the

CLINICS obtained more proceeds from ALLSTATE than they were otherwise entitled to receive.

102. The CLINICS and VIZCAY engaged in a pattern and practice of deceptive, misleading, false, and unlawful billing directed to ALLSTATE for which they received financial benefits.

103. The CLINICS and VIZCAY acted in reckless disregard as to the truth or falsity of the claims submitted to ALLSTATE.

104. VIZCAY and the CLINICS willfully, knowingly, and intentionally schemed to defraud ALLSTATE by submitting medical documentation and bills seeking payment of insurance benefits which falsely stated what services/treatments were purportedly provided to ALLSTATE's INSUREDS (listed in the attached "Exhibit A").

105. VIZCAY and the DE FACTO CLINICS willfully, knowingly, and intentionally schemed to defraud ALLSTATE by conspiring to misrepresent and by misrepresenting VIZCAY as the owner of the DE FACTO CLINICS.

106. VIZCAY and the MEDICAL DIRECTOR CLINICS willfully, knowingly, and intentionally schemed to defraud ALLSTATE by conspiring to misrepresent and by misrepresenting that the MEDICAL DIRECTOR CLINICS had a medical director that was complying with the statutory medical director duties required in Florida.

107. Based upon each of their false misrepresentations, VIZCAY and the CLINICS intended for ALLSTATE to pay bills submitted to ALLSTATE by VIZCAY and the CLINICS.

108.    ALLSTATE justifiably relied on the false information submitted by VIZCAY and the CLINICS.

109.    VIZCAY and the CLINICS submitted the false information to induce ALLSTATE to issue payments for the medical bills submitted.

110.    The payments made by ALLSTATE inured to the benefit of VIZCAY and the CLINICS.

111.    The above-described actions and omissions of VIZCAY and the CLINICS were unlawful and were against the public policy of the State of Florida.

112.    ALLSTATE and its INSUREDS were injured by and as a result of VIZCAY and the CLINICS' false representations.

WHEREFORE, ALLSTATE demands judgment against VIZCAY and the CLINICS for damages, costs and other relief as the court deems equitable, just and proper.

## COUNT III – UNJUST ENRICHMENT
### (VIZCAY AND CLINICS)

113.    ALLSTATE re-affirms and re-alleges paragraphs 1-112 as if fully set forth herein.

114.    CLINICS and VIZCAY billed for services which were not lawfully rendered or properly payable.  The services were not lawfully rendered because they were performed and/or billed in violation of Florida Statute §627.736, §817.505, §460.4167, §400.9935 and §400.990 et sec, and Florida Chapter 408.

115.    VIZCAY and each of the CLINICS knew or should have known that the services/treatments that they provided to ALLSTATE's INSUREDS (identified in the

attached "Exhibit A") were not lawfully rendered and not properly compensable under Florida's No-Fault law.

116.    ALLSTATE detrimentally relied upon VIZCAY and the CLINICS' representations in paying the claims submitted.

117.    ALLSTATE issued checks to the CLINICS and the CLINICS negotiated the checks.

118.    VIZCAY and the CLINICS had knowledge that they accepted and retained payment from ALLSTATE for services that were not lawfully rendered.

119.    As a direct and proximate result of the above described conduct of VIZCAY and the CLINICS, ALLSTATE and its INSUREDS suffered damages.

120.    It would be inequitable for VIZCAY and the CLINICS to retain the payments made by ALLSTATE for the services that were not lawfully rendered.

WHEREFORE, ALLSTATE demands judgment against VIZCAY and the CLINICS for damages, costs and other relief as the court deems equitable, just and proper.

## COUNT IV: DECLARATORY RELIEF AS TO DE FACTO OWNERSHIP/ VIOLATION OF FLORIDA STATUTES §400.990 et sec. REGARDING THE DE FACTO CLINICS

121.    ALLSTATE re-affirms and re-alleges paragraphs 1-76 as if fully set forth herein.

122.    This is an equitable action for declaratory relief pursuant to Chapter 86, Florida Statutes.

123.    This action for declaratory relief arises out of a dispute between the parties

with respect to ALLSTATE's payment obligation for services purportedly rendered under

Florida Statute §627.736 for the bills submitted by the DE FACTO CLINICS for

services/treatments that were purportedly lawfully rendered to ALLSTATE's INSUREDS

(listed in the attached "Exhibit A" under CALEB, GLOBAL, PERSONAL MEDICAL and

REGIONAL).

124.   ALLSTATE is uncertain as to whether the charges billed by the DE

FACTO CLINICS to ALLSTATE are properly payable because the DE FACTO

CLINICS are not properly licensed by Florida's Agency for Health Care Administration

(hereinafter "AHCA").

125.   In 2003, the Florida Legislature passed the Health Care Clinic Act,

(hereinafter "Act") in order to "reduce fraud and abuse occurring in the Personal Injury

Protection insurance system." *See Licensing Florida's Health Care Clinics: Status,*

*Progress and Recommendation,* AHCA, December 31, 2004.

126.   The Act was implemented mainly to require clinics with unlicensed, non-

physician owners to obtain a clinic license and be subject to a background screening if

they sought reimbursement from third party payers.

127.   Florida Statutes §400.9905(4) defines "clinic" and the exceptions to the

licensing requirements in the following pertinent part:

> "Clinic" means an entity at which health care services are
> provided to individuals and which tenders charges for
> reimbursement for such services, including a mobile clinic and
> a portable equipment provider. For purposes of this part, the
> term does not include and the licensure requirements of this
> part do not apply to:

***

> (g)   A ... corporation that provides health care services by licensed health care practitioners under ... chapter 460... which are **wholly owned** by one or more licensed health care practitioners, or the licensed health care practitioners set forth in this paragraph ... so long as one of the owners who is a licensed health care practitioner is supervising the business activities and is legally responsible for the entity's compliance with all federal and state laws.

* * *

(Emphasis added)

128.   The everyday definition of "wholly" pursuant to Merriam-Webster's online dictionary is: "to the full or entire extent: completely." "Ownership" is defined by Black's Law Dictionary as: "the collection of rights allowing one to use and enjoy property, including the right to convey it to others; ownership implies the right to possess a thing, regardless of any actual or constructive control; ownership rights are general, permanent, and inheritable."

129.   At all times material, the DE FACTO CLINICS claimed to be solely owned by VIZCAY but were in fact owned by undisclosed, unlicensed entrepreneurs.

130.   Each of the DE FACTO CLINICS share a common scheme designed by VIZCAY and the DE FACTO CLINICS.

131.   VIZCAY and the DE FACTO CLINICS, as a matter of custom and practice, allowed the undisclosed owners to operate and/or manage the DE FACTO CLINICS.

132.   VIZCAY did not manage, operate, or supervise the DE FACTO CLINICS' day to day activities.

133.   The undisclosed owners managed the DE FACTO CLINICS.

134.    VIZCAY did not pay any money for the purchase of the DE FACTO CLINICS.

135.    VIZCAY does not own any shares in stock of the DE FACTO CLINICS.

136.    VIZCAY does not share in the profits of the DE FACTO CLINICS.

137.    VIZCAY does not have a key to the DE FACTO CLINICS.

138.    VIZCAY does not own any of the equipment at the DE FACTO CLINICS.

139.    VIZCAY does not participate in decisions regarding hiring and firing of employees and independent contractors utilized by the DE FACTO CLINICS.

140.    VIZCAY does not pay rent for the office space utilized by the DE FACTO CLINICS.

141.    VIZCAY does not participate in the marketing/advertising of the DE FACTO CLINICS.

142.    VIZCAY does not participate in determining the manner in which each of the DE FACTO CLINICS' carries out its medical treatment protocols.

143.    VIZCAY does not participate in decisions pertaining to pricing at the DE FACTO CLINICS.

144.    VIZCAY does not participate in the decision making related to hours of operation for the DE FACTO CLINICS.

145.    The DE FACTO CLINICS pay their employees and independent contractors out of individual bank accounts maintained by individuals other than VIZCAY.

146.    According to the Act, Florida Statute §400.9905, entrepreneurial clinics are

required to obtain a license from AHCA.

147.    VIZCAY requested and obtained an exemption to the Act for the DE

FACTO CLINICS pursuant to Florida Statute §400.9905(4)(g) which states:

> (g)    A sole proprietorship, group practice, partnership, or corporation that provides health care services by licensed health care practitioners under chapter 457, chapter 458, chapter 459, chapter 460, chapter 461, chapter 462, chapter 463, chapter 466, chapter 467, chapter 480, chapter 484, chapter 486, chapter 490, chapter 491, or part I, part III, part X, part XIII, or part XIV of chapter 468, or s. 464.012, which are wholly owned by one or more licensed health care practitioners, or the licensed health care practitioners set forth in this paragraph and the spouse, parent, child, or sibling of a licensed health care practitioner, **so long as one of the owners who is a licensed health care practitioner is supervising the business activities and is legally responsible for the entity's compliance with all federal and state laws.** However, a health care practitioner may not supervise services beyond the scope of the practitioner's license, except that, for the purposes of this part, a clinic owned by a licensee in s. 456.053(3)(b) that provides only services authorized pursuant to s. 456.053(3)(b) may be supervised by a licensee specified in s. 456.053(3)(b). (Emphasis added)

148.    None of the DE FACTO CLINICS were properly licensed with AHCA at

the time that they submitted bills to ALLSTATE.

149.    The DE FACTO CLINICS were "purchased on paper" and/or "created on

paper" by VIZCAY to circumvent the Act.

150.    The agreements between VIZCAY and the undisclosed clinic owners of

the DE FACTO CLINICS are shams. The DE FACTO CLINICS did business under the

guise of VIZCAY being the sole owner of the DE FACTO CLINICS so that they would

be able to continue to operate without having to be licensed with AHCA pursuant to the

Act.

151.   VIZCAY did not wholly own the DE FACTO CLINICS.

152.   Under the terms of Florida's No-Fault law, ALLSTATE is only required to pay for services that are lawfully rendered.  ALLSTATE's investigation revealed the DE FACTO CLINCS are not wholly owned by VIZCAY.

153.   As a result of ALLSTATE's knowledge that VIZCAY does not wholly own the DE FACTO CLINICS, ALLSTATE is unsure of its obligation to pay as a result of AHCA issuing Health Care License Exemptions to the DE FACTO CLINICS.

154.   All interested, adverse parties are before the Court pursuant to proper service of process.

155.   There is a bonafide, actual, present, and practical need for a declaration based on the present ascertained facts and controversy outlined herein and the applicable law and provisions at issue.

156.   There is an actual, present, adverse, and antagonistic interest between ALLSTATE, VIZCAY and the DE FACTO CLINICS.

157.   ALLSTATE's immunity, power, privilege, and right is dependent upon the aforementioned facts and the law applicable to the aforementioned facts.

158.   The relief sought is not merely seeking legal advice or answers by the Court concerning questions propounded from curiosity.

159.   The facts and circumstances outlined above are a common occurrence and will continue to occur in the future.

WHEREFORE, ALLSTATE respectfully requests this Court to enter a Declaratory Order determining its contractual and statutory rights and responsibilities to

pay insurance benefits, for supplementary relief and for any other relief this Court deems just and proper and more specifically, to determine the following questions:

1) Whether the issuance of an AHCA exemption precludes ALLSTATE from complying with its statutory obligations to only pay for bills for services that are lawfully rendered.;

2) Whether ALLSTATE can properly look to circumstantial evidence to determine if a clinic has complied with Florida Statute §400.990 et sec.;

3) Whether the DE FACTO CLINICS need to be licensed with AHCA because they are not wholly owned by a licensed health care physician and do not fall within any exemptions listed in Florida Statute §400.990 et sec.; and

4) Whether the DE FACTO CLINICS' bills are compensable under Florida's No-Fault law when the DE FACTO CLINICS are not wholly owned by one or more physicians licensed under chapter 458 or chapter 459, chiropractic physicians licensed under chapter 460, or dentists licensed under chapter 466 or by such practitioner or practitioners and the spouse, parent, child, or sibling of that practitioner or those practitioners.

## COUNT V: DECLARATORY RELIEF AS TO VIOLATION OF FLORIDA STATUTES §460.4167 REGARDING CHIROPRACTIC CLINICS UTILIZATION OF CHIROPRACTORS

160.    ALLSTATE re-affirms and re-alleges paragraphs 1-76, 129, 132-146, 150 and 152-153 as if fully set forth herein.

161.    This is an equitable action for declaratory relief pursuant to Chapter 86, Florida Statutes.

162.   "CHIROPRACTIC CLINICS" within this Count refers to BEST CARE, CALEB, FLORIDA REHAB, GLOBAL, PVC and REGIONAL.

163.   This action for declaratory relief arises out of a dispute between the parties with respect to ALLSTATE's payment obligation for rendered services under Florida Statute §627.736, related to bills submitted by the CHIROPRACTIC CLINICS for services/treatments purportedly lawfully rendered to ALLSTATE's INSUREDS (listed in the attached "Exhibit A" under BEST CARE, CALEB, FLORIDA REHAB, GLOBAL, PVC and REGIONAL).

164.   As of July 1, 2008, the legislature implemented major changes to Florida law concerning the employment of chiropractic physicians or use of chiropractic physicians as independent contractors.  Pursuant to Florida Statute §460.4167, any clinic that employs chiropractic physicians but is not also **wholly owned** by licensed chiropractic physician(s) is prohibited from exercising control over the practice of chiropractic medicine.  This Statute provides an exception for clinics owned by a medical doctor.  *See* Florida Statute §460.4167 (2008).

165.   Florida Statute §460.4167 indicates that any employment arrangement with a chiropractic physician entered into or renewed on or after July 1, 2008, which does not comply with the terms of the statute, shall be void.  There is no provision for a certificate of exemption from this statute.

166.   At all times material, the DE FACTO CLINICS claimed to be solely owned by a medical doctor, VIZCAY, but they were in fact owned by undisclosed, unlicensed entrepreneurs who are not medical doctors and do not meet any exceptions

contained within Florida Statute §460.4167.

167.   If VIZCAY's ownership of the DE FACTO CLINICS is a sham, then the DE FACTO CLINICS that employ chiropractors or use chiropractors as independent contractors are not properly and lawfully operating such that the bills submitted to ALLSTATE by these clinics are not properly payable.

168.   ALLSTATE is uncertain as to whether the charges billed by the CHIROPRACTIC CLINICS to ALLSTATE are properly payable because the CHIROPRACTIC CLINICS employed chiropractors when the CHIROPRACTIC CLINICS are not owned by a chiropractor, medical doctor, or any other person enumerated in Florida Statute §460.4167.

169.   Florida Statute §460.4167(4) provides in pertinent part:

> **The purpose of this section is to prevent a person other than a licensed chiropractic physician from influencing or otherwise interfering with the exercise of a chiropractic physician's independent professional judgment.** In addition to the acts specified in subsection (1), a person other than a licensed chiropractic physician and any entity other than a sole proprietorship, group practice, partnership, or corporation that is **wholly owned** by one or more chiropractic physicians licensed under this chapter or by a chiropractic physician licensed under this chapter and the spouse, parent, child, or sibling of that physician, may not employ a chiropractic physician licensed under this chapter or enter into a contract or arrangement with a chiropractic physician pursuant to which such unlicensed person or such entity exercises control over the following:
>
> > (a) The selection of a course of treatment for a patient, the procedures or materials to be used as part of such course of treatment, and the manner in which such course of treatment is carried out by the licensee;
> > (b) The patient records of a chiropractor;

(c) Policies and decisions relating to pricing, credit, refunds, warranties, and advertising; or

(d) Decisions relating to office personnel and hours of practice.

(5) Any person who violates this section commits a felony . . . §460.4167, Fla. Stat. (2008) (Emphasis added).

170.   All interested, adverse parties are before the Court pursuant to proper service of process.

171.   There is a bonafide, actual, present, and practical need for a declaration based on the present ascertained facts and controversy outlined herein and the applicable law and provisions at issue.

172.   There is an actual, present, adverse, and antagonistic interest between ALLSTATE, VIZCAY and the CHIROPRACTIC CLINICS.

173.   ALLSTATE's immunity, power, privilege, and right is dependent upon the aforementioned facts and the law applicable to the aforementioned facts.

174.   The relief sought is not merely seeking legal advice or answers by the Court concerning questions propounded from curiosity.

175.   The facts and circumstances outlined above are a common occurrence and will continue to occur in the future.

WHEREFORE, ALLSTATE respectfully requests this Court to enter a Declaratory Order determining its contractual and statutory rights and responsibilities to pay insurance benefits, for supplementary relief and for any other relief this Court deems just and proper and more specifically, to determine the following questions:

1) Whether VIZCAY's creative "purchase" agreements allows the previous

entrepreneurs to employ chiropractic physicians when the entrepreneurs maintain control over CALEB, GLOBAL, PERSONAL and REGIONAL's operations, such as the patient records, pricing, advertising, office personnel, office hours, and course of treatment.;

2) Whether ALLSTATE can properly look to circumstantial evidence to determine if a clinic is wholly owned by a licensed health care provider as required by Florida Statute §460.4167.; and

3) Whether or not the CHIROPRACTIC CLINICS billing for chiropractic services in violation of Florida Statute §460.4167 renders the bills not properly payable under Florida Statute §627.736.

## COUNT VI: DECLARATORY RELIEF AS TO FAILURE TO COMPLY WITH MEDICAL DIRECTOR DUTIES/VIOLATION OF FLORIDA STATUTES §§400.9935 & 627.736 REGARDING THE MEDICAL DIRECTOR CLINICS

176.    ALLSTATE re-affirms and re-alleges paragraphs 1-76 as if fully set forth herein.

177.    This is an action for declaratory relief pursuant to Florida Chapter 86 et seq. seeking to determine ALLSTATE's payment obligations, under Florida Statute §627.736, relating to bills submitted by the MEDICAL DIRECTOR CLINICS for services allegedly rendered to ALLSTATE's INSUREDS (listed in the attached "Exhibit A" under BEST CARE, FLORIDA REHAB and PVC).

178.    At all times relevant to this action, the MEDICAL DIRECTOR CLINICS met the definition of a "clinic" as provided under Florida Statute §400.9905. As a result, the MEDICAL DIRECTOR CLINICS were required to comply with the provisions set forth in

Florida Statutes §§400.990-995 (hereinafter collectively referred to as the "clinic licensing statutes").

179.   Under the clinic licensing statutes, the MEDICAL DIRECTOR CLINICS were required to appoint a licensed medical doctor to serve as their Medical/Clinical Director (hereinafter "Medical Director"). *See* Florida Statute §400.9905(1).

180.   The MEDICAL DIRECTOR CLINICS contracted with Defendant, VIZCAY, to serve as Medical Director.

181.   At all time material to this complaint, VIZCAY agreed to accept legal responsibility to perform the required activities of a Medical Director (hereinafter "Medical Director duties") on behalf of the MEDICAL DIRECTOR CLINICS.

182.   The clinic licensing statutes identify the Medical Director duties and provide that the Medical Director shall, amongst other things:

a. Have signs identifying the medical director posted in a conspicuous location within the clinic such that the sign is readily visible to all patients;

b. Ensure that all practitioners providing health care services or supplies to patients maintain a current active and unencumbered Florida license;

c. Review any patient referral contracts or agreements executed by the clinic;

d. Ensure that all health care practitioners at the clinic have active appropriate certification or licensure for the level of care being provided;

e.   Ensure compliance with the recordkeeping and adverse incident reporting requirements; and

f.   Conduct systematic reviews of the clinics billing to ensure that the billings are not fraudulent or unlawful.  Upon discovery of an unlawful charge, the medical director shall take immediate action.

183.   Florida's clinic licensing statutes expressly state the Medical Director "shall" perform the enumerated medical director duties in order to fulfill the statutory requirements. The use of the term "shall" clearly conveys the legislature's mandatory requirement.  This statutory language is clear and unambiguous and should be given its plain and obvious meaning.

184.   VIZCAY did not properly and fully perform the Medical Director duties on behalf of the MEDICAL DIRECTOR CLINICS.

185.   The MEDICAL DIRECTOR CLINICS also hold responsibility under Florida's clinic licensing statutes since a clinic's compliance is strictly required.   The consequences for failing to comply are provided for within the clinic licensing statutes. Florida Statute §400.9935(4) states:

> All charges or reimbursement claims made by or on behalf of a clinic that is required to be licensed under this part, but that is not so licensed, or that is otherwise operating in violation of this part, are unlawful charges, and therefore are noncompensable and unenforceable.

186.   Pursuant to Florida's clinic licensure statutes, the MEDICAL DIRECTOR CLINICS should be accountable for ensuring that the chosen Medical Director understands his/her obligations and that he/she is performing them.   The MEDICAL DIRECTOR

CLINICS are responsible to the extent they knew or should have known that VIZCAY was not properly performing her duties.

187.    The consequence of rendering the bills noncompensable is intended to serve as an enforcement tool to discourage clinics from merely appointing a Medical Director in name only and not ensuring the Medical Director is complying with his/her mandatory, statutory duties.

188.    In order for billing submitted by the MEDICAL DIRECTOR CLINICS to be properly payable under Florida's No-Fault statute, the services billed must be "lawfully" rendered. *See* Florida Statute §627.736(5)(a).

189.    VIZCAY's failure to properly and fully perform her Medical Director duties created a situation where the MEDICAL DIRECTOR CLINICS were not operating in "substantial compliance with all relevant applicable" state law requirements "related to the provision of medical services or treatment." Thus, it logically follows that the services rendered by the MEDICAL DIRECTOR CLINICS were not "lawfully" rendered services.

190.    The public policy and purpose behind Florida's clinic licensing statutes is to protect the health and safety of the public. In *Active Spine Ctrs., LLC v. State Farm Fire & Cas. Co.*, 911 So.2d 241 (Fla. 3d DCA 2005) the Third District Court of Appeals noted:

> The intent of the [clinic] registration statute was to preserve "the health, safety and welfare of the public under police powers of state" because unregulated clinics could "endanger the health, safety, and welfare of the public." *See* § 456.003(2), Fla. Stat. (2001). Only by enforcing the registration statute in circumstances such as this can Florida's citizens be protected. *Id.*

191.    By this Court entering a Declaratory Judgment order, this court would be enforcing a Florida Statute designed to protect the health, safety and welfare of the public.

192.   All interested, adverse parties are before the Court pursuant to proper service of process.

193.   ALLSTATE has complied with all the conditions precedent to bringing this Complaint for Declaratory Relief.

194.   There is a bonafide, actual, present, and practical need for a declaration based on the present ascertained facts and circumstances outlined herein and the applicable law and provisions at issue.

195.   This action for declaratory relief addresses a genuine justifiable issue and an actual, present, adverse and antagonistic interest existing between ALLSTATE and the MEDICAL DIRECTOR CLINICS regarding matters of insurance coverage.

196.   The relief sought is not merely seeking legal advice by the Court, and it is not to answer questions propounded from curiosity.

197.   The facts and circumstances outlined hereinabove are a common occurrence and will continue to occur in the future.

198.   ALLSTATE is in doubt as to its rights and obligations under the subject insurance polices issued by ALLSTATE that provided benefits for patients that treated at the subject clinics.

WHEREFORE, ALLSTATE respectfully requests this Court to enter a Declaratory Order determining its contractual and statutory rights and responsibilities to pay insurance benefits, for supplementary relief and for any other relief this Court deems just and proper and more specifically, to determine the following question:

Whether VIZCAY's failure to perform her statutorily mandated duties as Medical Director of the MEDICAL DIRECTOR CLINICS renders the services/treatments provided by the MEDICAL DIRECTOR CLINICS not compensable under Florida Statutes §§400.9935 and 627.736.

<u>**COUNT VII: DECLARATORY RELIEF FOR
UNLAWFUL FEE SPLIT ARRANGEMENT/VIOLATION OF
FLORIDA STATUTES §§456.054, 458.331, 627.736, & 817.505
(VIZCAY AND CLINICS)**</u>

199.    ALLSTATE re-affirms and re-alleges paragraphs 1-76 as if fully set forth herein.

200.    This is an action for declaratory relief pursuant to Florida Chapter 86 et seq. seeking to determine ALLSTATE's payment obligations, under Florida Statute §627.736, relating to bills submitted by each of the CLINICS for services allegedly rendered to ALLSTATE's INSUREDS (listed in the attached "Exhibit A").

201.    Each of the CLINICS failed to lawfully render services as required by Florida Statute §627.736(5)(b), by violating Florida Statute §817.505, the Anti-Kickback Statute and Florida Statutes §§456.054 and 458.331(1)(i).

202.    Each of the CLINICS referred ALLSTATE's INSUREDS (listed in the attached "Exhibit A") to VIZCAY for medical examinations.

203.    Each of the CLINICS, as a matter of custom and practice, would refer ALLSTATE's INSUREDS (listed in the attached "Exhibit A") to VIZCAY, and VIZCAY would examine ALLSTATE's INSUREDS (listed in the attached "Exhibit A") at each of the CLINICS' offices and would recommend continued treatment at each of the CLINICS.

204. No written contract exists between each of the CLINICS and VIZCAY for the use of any space, equipment, or staff.

205. The CLINICS permitted VIZCAY to use each of their examination and treatment rooms, equipment, supplies, personnel and all related expenses free of charge.

206. The CLINICS provided remuneration to VIZCAY on a per exam basis.

207. The DE FACTO CLINICS provided VIZCAY with remuneration for listing herself as the "owner" of the DE FACTO CLINICS.

208. Pursuant to Florida Statute §817.505 (Patient Brokering Prohibited), it is unlawful for anyone to pay anything, directly or indirectly, to induce the referral of patients from a health care provider or facility, or to solicit any kind of payment, directly or indirectly, in return for referring a patient to a health care provider or facility.

209. Each of the CLINICS and VIZCAY entered into agreements under which VIZCAY would obtain, directly or indirectly and overtly or covertly, money or in-kind for the referral of services or the inducement of further referrals.

210. In exchange for the referral of ALLSTATE's INSUREDS (listed in the attached "Exhibit A"), VIZCAY would prescribe further rehabilitative treatment with each of the corresponding CLINICS and allowed the CLINICS to retain any monies paid by ALLSTATE above and beyond her per patient examination flat fee.

211. Each of the CLINICS used the services of VIZCAY to support each of their prior treatments and to justify future treatments of ALLSTATE's INSUREDS (listed in the attached "Exhibit A").

212.   The treatment rendered by each of the CLINICS to ALLSTATE's INSUREDS (listed in the attached "Exhibit A") was not lawfully rendered as required by Florida Statute §627.736 due to the referral arrangement between each of the CLINICS and VIZCAY.

213.   The reciprocal referral arrangement between each of the CLINICS and VIZCAY included the following:

a.   The CLINICS provided medical doctor services with no business or financial risk;

b.   VIZCAY provided medical evaluation services and allowed the CLINICS to prosper therefrom;

c.   VIZCAY used, free of charge, each of the CLINICS' premises, equipment and staff to treat ALLSTATE's INSUREDS;

d.   Each of the CLINICS and VIZCAY shared in the economic benefit of the services provided through their reciprocal arrangement;

e.   Each of the CLINICS providing free rent, free use of the staff, and the referral of patients to VIZCAY is a remuneration to induce VIZCAY to order the patients obtain additional rehabilitative treatment with each corresponding CLINICS; and

f.   VIZCAY's prescriptions for additional treatment of ALLSTATE's INSUREDS with each of the corresponding CLINICS are remunerations to each of the corresponding CLINICS.

214. The factors in the aforementioned reciprocal arrangement were designed to permit the CLINICS to indirectly offer VIZCAY referrals in exchange for impermissible remuneration and allowed VIZCAY to provide each of the CLINICS with remuneration for the CLINICS' referrals.

215. The remuneration directly related to the referral of patients is prohibited under Florida Statute §458.331(1)(i).

216. Since it is unlawful to "[s]olicit or receive any commission, bonus, rebate, kickback, or bribe" or to "engage in any split-fee arrangement," in return for referring patients, the treatment rendered by the CLINICS to ALLSTATE's INSUREDS (listed in the attached "Exhibit A") is unlawful. *See State v. Rubio*, 967 So. 2d 768, 778 (Fla. 2007).

217. The reciprocal referral relationship between the CLINICS and VIZCAY violates public policy as it unnecessarily increases the health care costs to ALLSTATE's INSUREDS (listed in the attached "Exhibit A") and as such, is void.

218. All interested, adverse parties are before the Court pursuant to proper service of process.

219. ALLSTATE has complied with all the conditions precedent to bringing this Complaint for Declaratory Relief.

220. There is a bonafide, actual, present, and practical need for a declaration based on the present ascertained facts and circumstances outlined herein and the applicable law and provisions at issue.

221.    This action for declaratory relief addresses a genuine justifiable issue and an actual, present, adverse and antagonistic interest existing between ALLSTATE and the CLINICS, upon matters of insurance coverage.

222.    There is an actual, present, adverse, and antagonistic interest between ALLSTATE and the CLINICS.

223.    ALLSTATE is in doubt as to whether the CLINICS bills are properly payable.

224.    The relief sought is not merely seeking legal advice by the Court, and it is not to answer questions propounded from curiosity.

225.    The facts and circumstances outlined hereinabove are a common occurrence and will continue to occur in the future.

226.    ALLSTATE is in doubt as to its rights and obligations under the subject insurance polices issued by ALLSTATE that provided benefits for its INSUREDS (listed in the attached "Exhibit A") that treated at the CLINICS.

WHEREFORE, ALLSTATE respectfully requests this Court to enter a Declaratory Order determining its contractual and statutory rights and responsibilities to pay insurance benefits, for supplementary relief and for any other relief this Court deems just and proper and more specifically, to determine the following questions:

1) Whether the CLINICS failed to lawfully render services as required by Florida Statute §627.736(5)(b), by violating Florida Statute §817.505, the Anti-Kickback Statute and Florida Statutes §§456.054 and 458.331(1)(i).; and

2) Whether VIZCAY and the CLINICS engaged in splitting/kickback activities in violation of Florida Statutes §§465.054, 458.331, and 817.505.

## DEMAND FOR JURY TRIAL

ALLSTATE demands trial by jury on all issues so triable.

Respectfully submitted this 12th day of April, 2011.

**TAMMY B. DENBO, ESQ. (Trial Counsel)**
Florida Bar No. 0163597
tammy.denbo@mastenlyerly.com
**DONALD J. MASTEN, ESQ. (Trial Counsel)**
Florida Bar No. 0679161
don.masten@mastenlyerly.com
Masten, Lyerly, Peterson & Denbo, LLC
6730 West Linebaugh Avenue
Suite 101
Tampa, FL 33625
(813) 418-6400/office
(813) 217-9367/fax

TBD/CCG/dam