UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

ALLSTATE INSURANCE COMPANY;
ALLSTATE INDEMNITY COMPANY;
ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY;
ALLSTATE FIRE AND CASUALTY INSURANCE
COMPANY; and
ALLSTATE VEHICLE AND PROPERTY
INSURANCE COMPANY (F/K/A DEERBROOK
INSURANCE COMPANY, SUCCESSOR BY MERGER
TO NORTHBROOK INDEMNITY COMPANY),

     Plaintiffs,

                            Case No.: 8:11-cv-00804-EAE-EAJ

vs.

SARA C. VIZCAY, M.D.;
BEST CARE MEDICAL CENTER, INC.;
CALEB HEALTH CARE, INC.;
FLORIDA REHABILITATION PRACTICE, INC.
(F/K/A DANA MEDICAL CENTER, INC.)
GLOBAL DIAGNOSTIC CENTER, INC.
P.V.C. MEDICAL CENTER, INC. and
REGIONAL ENTERPRISES FOR HEALTH CORPORATION

     Defendants.
_____/

## DEFENDANTS' MOTION TO DISMISS ALL CLAIMS, TO ABSTAIN OR IN THE ALTERNATIVE TO SEVER CLAIMS AGAINST DEFENDANTS, FOR MORE DEFINITE STATEMENT AND MEMORANDUM OF LAW IN SUPPORT

Defendants, SARA C. VIZCAY, M.D., BEST CARE MEDICAL CENTER, INC., CALEB HEALTH CARE, INC., FLORIDA REHABILITATION PRACTICE, INC. (F/K/A DANA MEDICAL CENTER, INC.), GLOBAL DIAGNOSTIC CENTER, INC., P.V.C. MEDICAL CENTER, INC. and REGIONAL ENTERPRISES FOR HEALTH CORPORATION, move to dismiss, pursuant to Rule 12(b) or, in the alternative, to sever the claims alleged against each Defendant from the unrelated Defendants, pursuant to Rule 21, and for more definite statement, pursuant to Rule 12(e), and as grounds state:

## I.  INTRODUCTION

On April 12, 2011, six (6) different Allstate companies filed the present lawsuit against seven (7) separate and independent medical entities and Dr. Sara Vizcay, a medical physician. Allstate's allegations stem from the contention that the Defendants are in violation of provisions of the Health Care Clinic Act (the Act) and, therefore, the medical bills submitted by the Defendants were not payable pursuant to F.S. 627.736.

The seven medical facilities are different corporations owned by various individuals.  Dr. Vizcay is the owner of Caleb Healthcare, Global Diagnostic, Personal Medical Center and Regional Enterprises.  Best Care is owned by Mario Felipe, Florida Rehabilitation is owned by Arianne Tejada and PVC Medical is owned by Alfredo Rodriguez.  The Complaint alleges that each individual medical facility is in violation of the Health Care Clinic Act and alleges non-compliance with various licensing or administrative regulations or requirements.  Allstate makes these allegations notwithstanding the undisputed fact that all the Defendants have been found in compliance with the Health Care Clinic Act by the Agency for Healthcare Administration. Notwithstanding AHCA's findings, Allstate's claims are directed to each individual facility and any viable cause of action against each facility is not dependent upon or related to any alleged violation by another co-defendant.

In Count I, the Allstate entities allege that the Defendants negligently represented that Caleb, Global, Personal Medical and Regional were wholly owned by Dr. Vizcay.  Count I further alleges that Best Care, Florida Rehabilitation and PVC negligently represented that they were in compliance with the provisions of the Health Care Clinic Act.  Based upon these alleged misrepresentations, Allstate seeks an undisclosed and undifferentiated amount of damages from the Defendants.  In Count II the Plaintiffs assert an action for fraud contending that Caleb,

2

Global, Personal Medical and Regional misrepresented the ownership of the facilities and that Best Care, Florida Rehabilitation and PVC misrepresented that the facilities were complying with the statutory medical director duties.   As in Count I, in Count II Allstate seeks an undisclosed and undifferentiated amount of damages from the Defendants.   In Count III, the Plaintiffs contend that the Defendants were unjustly enriched because the medical bills submitted by the facilities were not "lawfully rendered" due to unnamed violations of §627.736, §817.505, §460.4167, §400.9935 and Chapter 408.   As in Counts I and II, in Count III Allstate seeks an undisclosed and undifferentiated amount of damages from the Defendants.   Finally, in Counts IV, V, VI and VII, Allstate requests declaratory relief regarding the defendants compliance with §460.4167, §627.736, §400.9935, §456.054, §458.331 and §817.505.

Plaintiffs' Complaint is nothing more than vague listings of conclusory allegations plead in violation of federal law and numerous rules of civil procedure.   The Complaint fails in its entirety, and thus should be dismissed with prejudice as to these Defendants.   Alternatively, this Court should exercise its discretion and abstain from adjudication of the declaratory judgment claims and sever the remaining claims from each other and require Plaintiffs to provide a more definite statement as to its claims against each Defendant.

## II. ARGUMENT

The Plaintiffs' claims should be dismissed or severed for several reasons. As a threshold matter, the Plaintiffs lack standing to bring any of the claims in its Complaint.   Specifically, the Plaintiffs cannot bring any claim against these Defendants because an insurance company cannot assert a private right of enforcement in Chapters 400, 408 and 460, Florida Statutes.   Further, Plaintiff has not alleged any viable causes of action against any of the Defendants and the Court lacks subject matter jurisdiction for Plaintiffs' requests for declaratory judgment.   Additionally,

pursuant to *Wilton v Seven Falls Co.*, 515 U.S. 277 (1995) and *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) the Court should decline to exercise its jurisdiction over Allstate's requests for Declaratory Judgment (Counts IV, V, VI, VII of the Amended Complaint).   Alternatively, the claims against each Defendant should be severed because they are not properly joined given the fact that they do not arise out of the same transaction, occurrence, or series of transactions or occurrences, as required by Rule 20 of the Federal Rules of Civil Procedure.   Moreover, the claims should be severed because each Defendant would be unfairly prejudiced if the claims against all seven (7) medical facilities were heard by a single jury.

### A.  This Court Lacks Subject Matter Jurisdiction Because The Legislature Did Not Create a Private Right of Action In Fla. Stat. §400.990- §400.995

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party can bring either a facial or a factual challenge to a court's subject matter jurisdiction. *Lawrence v. Dunbar,* 919 F.2d 1525, 1528-29 (11th Cir.1990).   In a facial challenge, a court assumes all of the plaintiff's allegations are true and determines whether a plaintiff has alleged a sufficient basis for subject matter jurisdiction. *Id.* at 1529. In a factual challenge, a court must determine if it has the power to hear the case. *Id.* A court is free to weigh the evidence and evaluate the merits of the jurisdictional claims.  *Id .*  As there is no private right of enforcement in the relevant statutes, Allstate's claims must be dismissed.

All of Allstate's claims are predicated upon its contention that the Defendants have, individually, violated some provision of The Health Care Clinic Act (the "Act").   The Act was enacted to regulate health care clinics and provide for the licensure, establishment and enforcement of basic standards and to provide administrative oversight by the Agency for

4

Healthcare Administration. Fla. Stat.  §400.990 (2008).   Section 400.9905(4)(g) provides that

the licensure requirements of the Act do not apply to a corporation that provides health care

services by licensed health care practitioners under chapter 460 which are wholly owned by one

or more licensed health care practitioners. Fla. Stat. §400.9905(4)(g) (2008).

Section 400.993 enumerates the penalties for operating an unlicensed clinic and

incorporates Section 408.812.   Section 408.812, entitled "Unlicensed activity" provides in

pertinent part:

> (2) The operation or maintenance of an unlicensed provider or the performance of
> any services that require licensure without proper licensure is a violation of this
> part and authorizing statutes. Unlicensed activity constitutes harm that materially
> affects the health, safety, and welfare of clients. The agency or any state attorney
> may, in addition to other remedies provided in this part, bring an action for an
> injunction to restrain such violation, or to enjoin the future operation or
> maintenance of the unlicensed provider or the performance of any services in
> violation of this part and authorizing statutes, until compliance with this part,
> authorizing statutes, and agency rules has been demonstrated to the satisfaction of
> the agency.
>
> (3) It is unlawful for any person or entity to own, operate, or maintain an
> unlicensed provider. If after receiving notification from the agency, such person
> or entity fails to cease operation and apply for a license under this part and
> authorizing statutes, the person or entity shall be subject to penalties as prescribed
> by authorizing statutes and applicable rules. Each day of continued operation is a
> separate offense.
>
> (4) Any person or entity that fails to cease operation after agency notification may
> be fined $1,000 for each day of noncompliance.

Fla. Stat. §408.812 (2008).

The Act provides for penalties for any violations of the Act.  Fla. Stat. §400.995(1)

(2008).  The Act provides that the agency can impose administrative fines of up to $5,000.00 per

day for violations of the requirements of the Act.  *Id.*  Furthermore, the agency shall determine if

a penalty will be imposed and will make such a determination based upon the factors enumerated

at  §400.995(1)(a)-(d).   As  an  alternative  to  agency  action,  the  agency  has  discretion  to

recommend corrective action or request a plan of corrective action. Fla. Stat. §400.995(6) (2008).

The legal foundation for all of Allstate's actions is that each of the Defendants is in violation of Chapter 400.990 because it is either not licensed and, according to Allstate, it should be, or the medical facilities are licensed but are not sufficiently complying with the responsibilities required to retain the license.[1]   Allstate generally contends that Dr. Vizcay's facilities (Caleb, Global, Personal Medical and Regional Enterprises) should be required to be licensed because non-owners are allegedly exercising control over the business and medical aspects of the clinic.  As to the facilities that hold valid ACHA licenses, Allstate contends that these facilities (Best Care, Florida Rehab and PVC) are not adequately complying with the requirements under the Act to sustain the licenses.  Unfortunately for Allstate, these are not issues Allstate has the power to adjudicate, regulate or enforce.

The purpose of the Health Care Clinic Act is not to allow PIP insurers to unilaterally determine a medical provider's compliance with the agency rules and regulations as a defense to payment.  The stated purpose of the Health Care Clinic Act is **consumer** protection.  *See* § 400.990, Fla. Stat.  Under Allstate's interpretation of the Health Care Clinic Act, insurers are allowed to challenge the Agency for Health Care Administration's licensure, establishment and enforcement of the standards set forth by the Agency.  The stated legislative purpose behind the enactment of Chapter 400 is found at § 400.990(2) which states, inter alia:

> The Legislature finds that the regulation of health care clinics must be strengthened to prevent significant cost and harm to consumers.  The purpose of this part is to

---

[1] Allstate's contentions against the defendants that are licensed under the Act, is that these defendants are not in compliance with the requirements of the Act.  Another separate and completely distinct contention against the different set of defendants is that there are "de facto" owners of the Vizcay facilities which void Vizcay's exemption certificate from AHCA.

> provide licensure, establishment, and enforcement of basic standards for health care clinics and to provide administrative oversight by the Agency for Health Care Administration.

To accept Allstate's suggestion that it is entitled to challenge the ownership or compliance of the Defendant facilities with regulatory provisions would result in a private cause of action vesting in every patient, PIP insurer, HMO, PPO, and managed care organization. Thus, all entities would be entitled to challenge the "lawfulness" of a health care provider's bills solely by identifying a purported violation of the rules promulgated by the Agency. Nothing in Chapter 400, or in any part of the PIP statute, indicates that the Legislature intended such an outrageous result. In cases of statutory construction, the Court's purpose is to effectuate legislative intent. *Polite v. State*, 973 So.2d 1107, 1111 (Fla. 2007). "Legislative intent is the polestar that guides a court's statutory construction analysis." *Id.* (quoting *State v. J.M.*, 824 So. 2d 105, 109 (Fla. 2003).

In fact, Allstate has asserted this exact challenge on numerous other occasions in Florida state courts and Allstate's position **has been universally rejected.** No state court has agreed with Allstate's contention that it can challenge the ownership of a medical facility and exercise a private right of enforcement in The Health Care Clinic Act. In fact, no Florida state court has ever allowed Allstate or any insurance carrier to assert the cause of action attempted by Allstate in this case. Specifically, Judge Jordan of the Ninth Judicial Circuit held that "[t]here is no private right of enforcement by insurance carriers under F.S. §400.900." (Exhibit A, P. 2) In another case where Peachtree made a similar contention against another medical facility, Judge Sanders of the Seventh Judicial Circuit held that "[t]he Florida Supreme Court's decision in *Murthy v. N. Sinha Corp.*, 644 So. 2d 983 (1994), bars Peachtree's challenge to the ownership of the medical facility or the compliance with the requirements found in the Health Care Clinic Act." (Exhibit B, P. 2)

7

Additionally, Judge Pope Hamrick of the Seventh Judicial Circuit and Judge Heather Higbee of the Ninth Judicial Circuit have arrived at the same conclusion on this legal issue.  (Exhibit C)

As held by Judge Jordan, Judge Higbee, Judge Sanders and Judge Hamrick, the Health Care Clinic Act does not create a private cause of action or right of enforcement.  (Exhibits A, B and C) Florida courts have applied one of two tests to determine if a statute allows a private right of enforcement:  (1) the "class benefitted" test and, (2)  the "legislative intent/*Cort*" test.  Allstate has no right to enforce or challenge the Defendants' exemption status as wholly owned by a medical provider or a licensed medical facility's compliance with Chapter 400 under either test.

The historical, and broader, test for private enforcement is the "class benefitted" test.  Under this test, a court will imply a private right of enforcement if the statute at issue imposes a duty to benefit a class of individuals, and a class member was injured by a breach of that duty. *See, e.g., Rosenberg v. Ryder Leasing, Inc.* 168 So. 2d 678 (Fla. 3d DCA 1964). The Health Care Clinic Act does not confer any benefits on insurance carriers.  The benefits of the Health Care Clinic Act -- regulation of health care clinics -- inure to the benefit of consumers, not the insurance carriers.

The Florida Supreme Court has actually narrowed the test for a private right of enforcement. "Today. . .most courts generally look to the legislative intent of a statute to determine whether a private cause of action should be judicially inferred." *Murthy v. N. Sinha Corp.* 644 So.2d 983, 985 (Fla.l994).  This new, narrow approach is based on the United States Supreme Court's decision in *Cort v. Ash*, 422 U.S. 66 (1975) . *See generally Fischer v. Metcalf*, 543 So.2d 785, 788 (Fla. 3d DCA 1989).   *Cort* set forth the following criteria for determining whether a statute creates an implied private right of action: (1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted; (2) whether there is any indication, either explicit or implicit, of a legislative intent to create or deny such a remedy; and (3) whether judicial implication is consistent with the

underlying purposes of the legislative scheme. *See* 422 U.S. at 78; *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran* 456 U.S. 353, 377 (1982) (explaining the reasoning behind the narrower test).

In *Murthy* the Florida Supreme Court applied the narrower test and held that there could be no private enforcement of a statute that required a corporation's qualifying agent to supervise the corporation's construction projects.  Significantly, the court agreed with the plaintiff that the statute, which was both regulatory and penal in nature, did create a legal duty on the part of the qualifying agent.  However, the court rejected the "class benefitted" test as being overbroad.  Explaining the new, narrower test, the court stated: "legislative intent, rather than the duty to benefit a class of individuals, should be the primary factor considered by a court in determining whether a cause of action exists when a statute does not expressly provide for one." *Id.* at 985; *see also Freehauf v. School Bd.* 623 So. 2d 761, 763 (Fla. 5th DCA 1993); *Finkle v. Mayerchak* 578 So.2d 396 (Fla. 3d DCA 1991); *Fischer v. Metcalf,* 543 So .2d 785, 788 (Fla. 3d DCA 1989) (en banc).

In enacting the statute at issue in *Murthy* the Legislature had recited that work improperly performed by incompetent or dishonest contractors "may pose a danger of significant harm to the public," and "that it is necessary in the interest of the public health, safety and welfare to regulate the construction industry." 644 So.2d at 986 (quoting § 489.101, Fla. Stat.).  The supreme court held that, "[in] general, a statute that does not purport to establish civil liability but merely makes provision to secure the safety or welfare of the public as an entity, will not be construed as establishing a civil liability." *Id.* (quoting *Moyant v. Beattie*, 561 So.2d 1319, 1320 (Fla.4th DCA 1990)).  The court also noted that the legislative history of the statute did not express an intent to create any private right of enforcement.  *Id.*  Finally, the court emphasized that another provision of the same chapter had previously authorized private suits in a different context. *Id.*  Under *Murthy* it

is apparent that State Farm cannot privately enforce The Health Care Clinic Act.  There can be no question that the statute (and the no-fault act as a whole) is intended to benefit the public and the state as a whole.  *Lasky v. State Farm Ins. Co.* 296 So. 2d 9, 16 (Fla. 1974).  There is no evidence whatsoever that Chapter 400 was intended to benefit insurance carriers.

Like the statute at issue in *Murthy,* the Health Care Clinic Act does not express any intent to create a private right of enforcement.  Likewise, there is no indication in the legislative history that a private right of enforcement was intended.  Rather, the Agency for Health Care Administration is the entity that generally regulates medical care providers. At §627.736(12), the Legislature has expressly provided for an insurance carrier's challenge to the "lawfulness" of an insured's medical bills.  Where the legislature has provided an express private right of action in one part of an Act, but not in another, courts should be even more cautious in implying a right of action in the silent part. *See Montes de Oca v. Orkin Exterminating Co.* 692 So. 2d 257 (Fla. 3d DCA 1997).

The fact that the Legislature had previously provided a right of enforcement in another part of the same statute was significant to the Florida Supreme Court in rejecting an implied right of enforcement in *Murthy.  See*  644 So. 2d at 986.  Likewise, in *Mostoufi v. Presto Food Stores, Inc.,* 618 So. 2d 1372 (Fla. 2d DCA 1993), the Second District rejected an implied private right of action, noting that, "it is significant that the Act contains a section specifically addressed to private rights of action. . . Congress having thus specifically addressed the subject of private remedies, it is reasonable to assume that it said all that it intended on that subject."  The  same  analysis  applies here.  The Legislature is obviously capable of providing an express right of private enforcement in the Health Care Clinic Act, and has not done so.  Thus, all the factors which led the Supreme Court to reject a private right of action in *Murthy* are equally present here.  The result should therefore be the same.

10

Certainly, the Legislature was free to provide an express right of private enforcement in The Health Care Clinic Act.  However, when a court is asked to judicially infer a private enforcement right, the court must act cautiously.  *See Kaplan v. Peterson*, 674 So. 2d 201 (Fla. 5th DCA 1996) ("[C]ourts are reluctant to read into a statute a new private cause of action not expressly provided for by the Legislature...."); *see also Goff v. Ehrlich*, 776 So. 2d 1011 (Fla. 5th DCA 2001); *St. John Med. Plans, Inc. v. Gutman*, 721 So. 2d 717 (Fla. 1998); *Bass v. Morgan, Lewis & Bockius*, 516 So.2d 1011 (Fla. 3d DCA 1987); *Lavis Plumbing Servs. v. Johnson,* 515 So. 2d 296 (Fla. 3d DCA 1987).

It is clear that the legislature did not confer a private right of action or a private right of adjudication in Allstate.  If Allstate believes that the Defendants are performing services in a manner that is not in compliance with Chapter 400, then its sole recourse is to report its suspicions to the Agency for Healthcare Administration.  The remedy is not for Allstate to become an agent of the Department of Health or Agency for Healthcare Administration and seek adjudications outside of the parameters set forth in the controlling statutes.

## B. Allstate's Claim of "De Facto" Ownership As to Caleb, Global, Personal Medical and Regional Enterprises Does Not Exist Under Florida Law

For the purposes of a motion to dismiss for failure to state a claim, the Court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences. *Jackson v. Okaloosa County, Fla.,* 21 F.3d 1532, 1534 (11th Cir.1994); *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). Additionally, the Court must limit its consideration to the complaint and written instruments attached to it as exhibits. *Fed R. Civ. P.* 10(c); *GSW, Inc. v. Long County, Ga.,* 999 F.2d 1508, 1510 (11th Cir.1993).  The plaintiff's complaint should not be dismissed for failure to state a

claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

Allstate's entire action against Caleb, Global, Personal Medical and Regional Enterprises is predicated upon its contention that it can challenge the ownership of the Defendants medical facilities and the exemption certificate from AHCA.  Instead of the traditional action where a Plaintiff attempts to pierce the corporate veil to impose personal liability on corporate owners, Allstate seeks to pierce the corporate veil to insert new owners that have no ownership in the facility. As succinctly stated by the Court in *Mother Doe I v. Al Maktoum*, 632 F.Supp.2d 1130, 1142 (S.D.Fla.2007), "if courts were to attribute corporate acts to every individual who is involved in establishing or is intimately involved with a corporation, or whose picture is featured on a corporation's website, the corporate form would be rendered completely meaningless." This is the novel position urged by Allstate in this matter.  However, the concept of peeling back the corporate veil to insert a new owner into the corporate structure is unheard of and does not exist in Florida law.

Allstate contends that the "de facto owners" exercised considerable control over the operations of Caleb, Global, Personal Medical and Regional Enterprises notwithstanding the undisputed lack of any formal ownership interest in the medical facilities.  Allstate believes that in determining compliance with the licensing requirements of the Act, control or management may be substituted for an ownership interest.  However, the terms of Fla. Stat. §400.9905(4)(g) explicitly exempt any medical facility that is "wholly owned by one or more licensed health care practitioners."  The statute is clear - ownership, not control, is the benchmark of the exemption to the Act's licensing requirements.  It is unnecessary and immaterial to delve into the extent of any non-owner's activities as a manager or contractor of Caleb, Global, Personal or Regional

Enterprises.   Even if non-medical personnel exerted the control that Allstate describes, that would not give those individuals an "ownership" interest in the medial facility.   Clearly, control and ownership are distinct concepts. See, e.g., *United States v. Bestfoods*, 524 U.S. 51, 64-65, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998) (distinguishing between "operation" and "ownership" of a subsidiary's assets).   "Ownership" in a corporation is a black and white issue and a challenge to the undisputed legal ownership of the facilities and the exemption certificate issued by AHCA cannot be manufactured by Allstate to undermine its payment obligations pursuant to Fla. Stat. §627.736.

The legislature certainly understood the business reality that medical providers would utilize managers, billing personnel, and other professional management services in the efficient handling of their business.   Assuming all of the allegations in the Complaint are true, this does not provide this Court or Allstate with any legal basis to disregard the corporate structure and straightforward ownership of the medical facilities.   Furthermore, the language of Fla. Stat. §400.991 will not support a control test that mandates inquiry into the role of non-owners in the management or activities of the medical facility.   Instead of the complete and total disregard of all corporate formalities as suggested by Allstate, the better and more legitimate practice is the one supported by the statutory text and elementary principles of corporate law.

### C.  Plaintiff's Declaratory Judgment Actions Should Be Dismissed Or Plaintiff Must Replead Pursuant to Rule 12(e)

Allstate requests declaratory relief in four separate counts pursuant to Florida Statute Chapter 86.   The Court in *Wolf Sanitary Wiping Cloth, Inc. v. Wolf,* 526 So.2d 702 (Fla. 3d DCA 1988) explained that under Florida law a declaratory judgment action is improper when the Court is asked to determine factual questions.   In analyzing the propriety of a declaratory judgment action under Chapter 86, the Court  stated:

> [A] declaratory judgment action will not lie when judicial determinations involve factual questions and issues and not contract interpretations or construction. Applying the rule to the facts of this case, it is clear that no question exists concerning title, ownership, possession, or rights attendant to the stock .... The use of declaratory proceedings is not available where the object is to try disputed questions of fact as the determinative issue rather than to seek a construction of definite stated rights, status, or other relations. *Smith v. Milwaukee Ins. Co.*, 197 So.2d 548 (Fla. 4th DCA), cert. dismissed, 204 So.2d 332 (Fla. 1967).

526 So.2d at 704-705.  Notwithstanding Allstate's identification of Chapter 86 as the procedural vehicle for its requests for declaratory relief, federal law determines whether a federal court can and may properly render a declaratory judgment. *See Cincinnati Ins. Co. v. Holbrook*, 867 F.2d 1330, 1332-33 (11th Cir. 1989), abrogated on other grounds by *Wilton v. Seven Falls Co*., 515 U.S. 277, 115 S.Ct. 2137, 132 L. Ed. 2d 214 (1995)  State law determines the substantive rights and duties of the parties to an insurance contract, but the question of justiciability is a federal issue to be determined only by federal law. *See Holbrook*, 867 F.2d at 1333.

Allstate requests declaratory relief in four separate counts of its Complaint.  As to each of Allstate's counts for declaratory relief, Allstate requests a "Declaratory Order determining its contractual and statutory rights and responsibilities to pay insurance benefits." (Dkt. 1 P. 26, 30, 35, 40)  Allstate asks this Court to determine the following "questions":

> Whether the issuance of an AHCA exemption precludes ALLSTATE from complying with its statutory obligations to only pay for bills for services that are lawfully rendered.

> Whether ALLSTATE can properly look to circumstantial evidence to determine if a clinic has complied with Florida Statute §400.990 et. sec.

> Whether the DE FACTO CLINICS need to be licensed with AHCA because they are not wholly owned by a licensed health care physician and do not fall within any exemptions listed in Florida Statute §400.990 et sec.

> Whether the DE FACTO CLINICS' bills are compensable under Florida's No-Fault law when the DE FACTO CLINICS are not wholly owned by one or more physicians licensed under chapter 458 or chapter 459, chiropractic physicians licensed under chapter 460, or dentists licensed under chapter 466 or by such

14

practitioner or practitioners and the spouse, parent, child, or sibling of that practitioner or those practitioners.

Whether VIZCAY' s creative "purchase" agreements allows the previous entrepreneurs to employ chiropractic physicians when the entrepreneurs maintain control over CALEB, GLOBAL, PERSONAL and REGIONAL's operations, such as the patient· records, pricing, advertising, office personnel, office hours, and course of treatment.

Whether ALLSTATE can properly look to circumstantial evidence to determine if a clinic is wholly owned by a licensed health care provider as required by Florida Statute §460.4167.

Whether or not the CHIROPRACTIC CLINICS billing for chiropractic services in violation of Florida Statute §460.4167 renders the bills not properly payable under Florida Statute §627.736.

Whether VIZCAY's failure to perform her statutorily mandated duties as Medical Director of the MEDICAL DIRECTOR CLINICS renders the services/treatments provided by the MEDICAL DIRECTOR CLINICS not compensable under Florida Statutes §§400.9935 and 627.736.

Whether the CLINICS failed to lawfully render services as required by Florida Statute §627.736(5)(b), by violating Florida Statute §817.505, the Anti-Kickback Statute and Florida Statutes §§456.054 and 458.331(l)(i).

Whether VIZCAY and the CLINICS engaged in splitting/kickback activities in violation of Florida Statutes §§465.054, 458.331, and 817.505.

The Supreme Court has laid out the test for jurisdiction over declaratory judgment actions as follows: the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests; and it must be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.,* 127 S.Ct. 764, 771 (2007)(internal citations omitted).  As each and every declaration requested by Allstate is based upon a hypothetical set of facts, this Court should decline to consider Allstate's declaratory judgment actions.

First, no policies of insurance are part of Allstate's Complaint and Allstate makes no effort to advise the Court or the Defendants as to what portions of the phantom policies which

15

warrant declaratory relief.  Second, the "questions" posed by Allstate do not seek a declaration of rights or legal relations.  Instead, each of Allstate's purported "questions" improperly requires that this Court assume disputed facts and adjudicate allegations of past conduct.  In *Great Lakes Reinsurance (UK) PLC v. TLU Ltd.,* 2008 WL 828122 (S.D. Fla. Mar. 27, 2008) the Court explained:

> Plaintiff seeks a declaration that the policy it issued to Defendants is void because of material omissions by Defendants in its application, as well as a declaration that the type of damage that Defendants' vessel sustained would not be covered by the policy. In other words, Plaintiff asks this Court to make factual determinations about the materiality of information that Defendants did not include on its application as well as factual determinations regarding potential breaches of contract that Defendants are alleged to have committed in the past. Plaintiff does not seek a purely legal ruling, such as a request to resolve differences in the interpretation of specific language in the insurance contract .... Factual questions regarding whether a breach of contract has been committed in the past is unrelated to the purpose behind the Declaratory Judgment Act.

> *Id.* at *2.

Similarly, the Court in *Watershed Treatment Programs, Inc. v. United Healthcare Insurance Company,* 20 Fla. L. Weekly Fed. D 705 (S.D. Fla. Apr. 10, 2007) explained:

> Even if jurisdiction over this count were found to exist, I would utilize my discretion to decline to decide the matter. The Declaratory Judgment Act provides that a court "may declare the rights and other legal relations of any interested party," 28 U.S.C. § 2201 (a), not that it must do so. This text has long been understood "to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* at 776, citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995). The determination of *Plaintiffs licensure rights is best left to the state agencies that issued and administer the licenses.* I shall therefore dismiss Plaintiffs count for declaratory relief.

> *Id.* at 18. (Emphasis added).

Allstate seeks an advisory opinion from this Court that the Defendants violated numerous provisions of Florida statutory law, including licensure statutes.  The Defendants would submit that the purpose of the Declaratory Judgment Act is not to authorize a Court to issue an advisory

opinion regarding whether the defendants violated a state statute.   Therefore, the Defendants request that this Court dismiss Allstate's declaratory judgment actions.

### D.  This Court Should Abstain and Decline Jurisdiction Based Upon The Existence of Numerous Parallel and Ongoing  State Court Proceedings

In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.  *Wilton v Seven Falls Co.,* 515 U.S. 277, 115 S. Ct. 2137 (1995).   The discretionary standard of *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 62 S.Ct. 1173 (1942), governs a district court's decision to stay a declaratory judgment action during the pendency of parallel state court proceedings.

Pursuant to 28 U.S.C. § 2201(a), a district court "**may** declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.,* 515 U.S. 277 at 287. "It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir.2005). While district courts may not decline to hear actions for declaratory relief "on the basis of whim or personal disinclination," the standard is clearly generous. *Angora v. Condo. Ass'n of Lakeside Village, Inc*., 796 F.2d 384, 387 (11th Cir.1986).

Accordingly, a district court enjoys substantial latitude in deciding to stay or dismiss a declaratory judgment action in deference to a state action, if "parallel proceedings, presenting opportunity for ventilation of the same state law issues, [are] underway in state court." *Wilton*, 515 U.S. at 290. To avoid waste and gratuitous interference with the orderly and comprehensive disposition of state court litigation, a district court ordinarily defers if "another suit is pending in

17

a state court presenting the same issues, not governed by federal law, between the same parties."

*Brillhart*, 316 U.S. at 495. In fact, it appears that when parallel state proceedings are pending,

there is virtually a presumption *against* the exercise of jurisdiction in the federal declaratory

judgment action. *Lincoln Ben. Life Co. v. Look,* 2006 WL 3734331 (M.D.Fla.2006). This Court

should exercise its discretion and decline to exercise jurisdiction in this matter as there are in

pending parallel state court proceedings involving the same parties and same issues.

As identified in detail in the Defendants' Notices of Related Cases, there are in excess of

twenty (20) ongoing breach of contract actions involving these same Plaintiffs, same patients and

same Defendants.  The issues raised in Allstate's declaratory judgment counts merely set forth

issues which, if viable, would be raised as affirmative defenses in PIP cases pending in the

Florida State Court system.

The Eleventh Circuit Court of Appeals set forth factors for district courts to consider in

determining whether to entertain or to dismiss a declaratory judgment action. In *Ameritas*

*Variable Life Insurance Co. v. Roach,* 411 F.3d 1328 (11th Cir.2005), the court listed what it

referred to as "guideposts" for determining whether to extend jurisdiction to a declaratory action

when a similar proceeding is pending in state court:

> (1) the strength of the state's interest in having the issues raised in the federal
> declaratory action decided in the state courts;
> (2) whether the judgment in the federal declaratory action would settle the
> controversy;
> (3) whether the federal declaratory action would serve a useful purpose in
> clarifying the legal relations at issue;
> (4) whether the declaratory remedy is being used merely for the purpose of
> "procedural fencing"-that is, to provide an arena for a race for res judicata or to
> achieve a federal hearing in a case otherwise not removable;
> (5) whether the use of a declaratory action would increase the friction between
> our federal and state courts and improperly encroach on state jurisdiction;
> (6) whether there is an alternative remedy that is better or more effective;
> (7) whether the underlying factual issues are important to an informed resolution
> of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

The essence of Allstate's declaratory judgment questions is the request that this court interpret Florida statutory law as an affirmative defense to ongoing and future breach of contract actions.   In applying the *Ameritas* standards set forth by the Eleventh Circuit, abstention is warranted in the current case.

First, Florida state courts have an interest in analyzing and applying new and previously untested defenses to payment under Florida No Fault law. The rulings requested by Allstate in the declaratory judgment actions have widespread and broad applicability to Personal Injury Protection claims in the State of Florida and will affect numerous medical providers regardless of the identification of the insurance carrier.   Second, as there are no contract actions asserted in this federal venue, this Court's adjudication of Allstate's declaratory judgment questions would not resolve the whole controversy.   Additionally, Allstate has numerous other affirmative defenses to assert to avoid payment on any individual claims which can and are asserted in the state court actions.   Third, the federal declaratory action would not promote a clarification of the legal issues as Allstate's "questions" require the Court to assume disputed facts.   Fourth, Allstate is clearly using this Court's declaratory judgment action as "procedural fencing" as the individual cases are not otherwise removable and federal jurisdiction would not exist outside Allstate's filing of the collective pleading herein.   Fifth, if the federal court decides issues of state law that are of first impression, particularly when state courts are already resolving these issues, it may result in friction between the state and federal courts.   Sixth, the alternative remedy that is more appropriate is for the parties to resolve these issues in the ongoing state court actions – some of

which have been pending since 2009.  Seventh, there are no underlying factual issues presented herein that are important to a resolution of the declaratory judgment claims.  Eighth, the state courts are in a better position to determine the factual issues related to alleged violations of Florida state court statutes and its application to the legal relations and public policy of Florida's No Fault law.  Federal review should not disrupt a state's efforts to establish a coherent policy in matters of public concern.  *Colorado River Water Conservation Dist. v. U. S.,* 424 U.S. 800 (1976).  The states regulate medical providers as well as insurance  companies and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation.

As clearly set forth above, the careful application of the *Ameritas* factors and principles to the instant case indicates that dismissal is not only appropriate but is necessary.  Considered collectively, the *Ameritas* guideposts weigh heavily in favor of abstention.  Therefore, pursuant to the discretion in *Wilton* and applying the *Ameritas* guideposts leads to the conclusion that abstention as it pertains to the counts for Declaratory Judgment will promote the interests of practicality, comity and the efficient, wise administration of justice.

### E. The Plaintiffs' Claims Are Not Properly Joined And, Thus, Should Be Severed.

The Eleventh Circuit discussed the requirements of joinder in *Alexander v. Fulton County, Georgia*, 207 F.2d 1303, 1322 (11th Cir. 2000) and stated:

> Among other things, the Federal Rules of Civil Procedure provide that "[a]ll persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." Fed.R.Civ.P. 20(a). *See also Grayson v. K Mart Corp.,* 79 F.3d 1086, 1097 (11th Cir.1996). A party seeking joinder of claimants under Rule 20 must establish two prerequisites: 1) a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences, and 2) some question of law or fact common to all persons seeking to be joined. *See* Fed.R.Civ.P. 20(a). Plainly, the central purpose

of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits. *See Mosley v. General Motors Corp.,* 497 F.2d 1330, 1332 (8th Cir.1974). The Federal Rules, however, also recognize countervailing considerations to judicial economy. Rule 42(b), for example, provides for separate trials where the efficiency of a consolidated trial is outweighed by its potential prejudice to the litigants. *See* Fed.R.Civ.P. 42(b); *Grayson,* 79 F.3d at 1097.

Federal Rule of Civil Procedure 21 requires severance of improperly joined parties. The Plaintiffs have improperly joined unrelated Defendants in this action in violation of Rule 20(a)(2). Once the improperly joined Defendants are severed, federal jurisdiction will be lacking against one or more of the defendants due to the amount in controversy being less than $75,000.00.

As delineated in the Complaint, Best Care, Florida Rehabilitation and PVC Medical are separate medial facilities all owed by different individuals. The sole connection between these parties is that Sara Vizcay, M.D. is the designated medical director for each of these facilities. As for Defendants Caleb, Global, Personal Medical and Regional Enterprises, the Plaintiffs have asserted that although each facility is owned by Dr. Vizcay, that there were "de facto" owners at each facility. None of these alleged "de facto" owners overlap from one facility to the next.

Allstate's allegations are individualized and specific to each Defendant. All of the Defendants are separate entities. Without question, an independent violation by one defendant does not subject any of the co-defendants to joint or several liability. In fact, the Plaintiffs have not asserted any right to relief against the Defendants "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences and there is no common question of law or fact common to all the defendants that will arise in the action." *Newman v. Sun Capital*, 2010 WL 1961158 (M.D. Fla. 2010). To the extent a viable cause of action exists for the Plaintiffs' in this case, each Plaintiff must prove

liability on the part of each Defendant with respect to that Defendants' actions.   As a consequence, the Plaintiffs' claims clearly do not arise from the same "transaction, occurrences or series of transactions or occurrences" necessary to satisfy the requirements of Fed. R. Civ. P. 20.   Thus, the claims of each of the Plaintiffs are improperly joined and should be severed pursuant to Fed. R. Civ. P. 21.

### F.  Motion for More Definite Statement

The Complaint attaches an "Exhibit A" which is an undifferentiated list of over 200 individual patients that allegedly sought medical care as a result of injuries sustained in motor vehicle accidents.   It is alleged that each of the patients identified on Exhibit A to the Complaint were contracting policyholders of one of the Plaintiffs and that each of these individuals sought medical care and treatment from one of the seven Defendants.   It is unknown whether any amounts were paid for any medical treatment rendered to the Allstate policyholders and, if so, what amounts were paid under the policies of insurance.

If the Court declines to dismiss Allstate's Complaint, the Defendants would request that Allstate be required to amend the complaint to identify what insurance carrier is asserting what claims against which Defendants.   Additionally, the amounts paid by each insurance company as to each of the individuals on Exhibit A is necessary to adequately respond to the Plaintiff's Complaint.   Furthermore, this Court should grant the Defendants request for a more definite statement so that the Defendants can determine how to formulate a responsive pleading and be placed on notice of the alleged portions of the policies of insurance and Florida Statute that the Plaintiffs intend to rely upon for its actions.

## CONCLUSION

For the foregoing reasons, Defendants request that this Court grant their motion to dismiss, motion to abstain, motion to sever or for more definite statement as delineated herein.

_____/s/ Kimberly P. Simoes_____

KIMBERLY P. SIMOES
The Simoes Law Group, P.A.
Florida Bar No. 109479
Kimberly@SimoesLaw.com
120 S. Woodland Blvd. Suite 213
Deland, Florida 32720
Telephone:  (386) 490-4360
Facsimile:    (386) 738-0701
ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 25th day of May, 2011, I electronically filed the

foregoing with the Clerk of the Courts by using the ECF system which will send a notice of

electronic filing to the following: Tammy Denbo, Esq. and Donald Masten, Esq., Masten, Lyerly,

Peterson & Dunbo, LLC, 6730 West Linebaugh Avenue, Suite 101, Tampa, FL 33625.


                    /s/ Kimberly P. Simoes
KIMBERLY P. SIMOES
The Simoes Law Group, P.A.
Florida Bar No. 109479
Kimberly@SimoesLaw.com
120 S. Woodland Blvd. Suite 213
Deland, Florida 32720
Telephone:  (386) 490-4360
Facsimile:   (386) 738-0701
ATTORNEY FOR SARA VIZCAY, M.D.
BEST CARE MEDICAL CENTER, INC.
CALEB HEALTH CARE, INC.
FLORIDA REHABILITATION PRACTICE
GLOBAL DIAGNOSTIC CENTER
PERSONAL MEDICAL CENTER
P.V.C. MEDICAL CENTER, INC.
REGIONAL ENTERPRISES FOR HEALTH
CORPORATION