# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

ALLSTATE INSURANCE COMPANY;
ALLSTATE INDEMNITY COMPANY;
ALLSTATE PROPERTY AND CASUALTY
 INSURANCE COMPANY;
ALLSTATE FIRE AND CASUALTY
 INSURANCE COMPANY; and
ALLSTATE VEHICLE AND PROPERTY
 INSURANCE COMPANY (F/K/A: DEERBROOK
 INSURANCE COMPANY, SUCCESSOR BY
 MERGER TO NORTHBROOK INDEMNITY
 COMPANY),

       Plaintiffs;

v.                        Civil Action No.: 8:11-cv-00804-EAK-EAJ

SARA C. VIZCAY, M.D.;
BEST CARE MEDICAL CENTER, INC.;
CALEB HEALTH CARE, INC.;
FLORIDA REHABILITATION PRACTICE, INC.
 (F/K/A: DANA MEDICAL CENTER, INC.);
GLOBAL DIAGNOSTIC CENTER, INC.;
PERSONAL MEDICAL CENTER, INC.;
P.V.C. MEDICAL CENTER, INC.; and
REGIONAL ENTERPRISES FOR HEALTH
 CORPORATION;

       Defendants.

_____/

### PLAINTIFFS' RESPONSE AND MEMORANDUM OF LAW TO DEFENDANTS' MOTION TO DISMISS ALL CLAIMS, TO ABSTAIN OR IN THE ALTERNATIVE TO SEVER CLAIMS AGAINST DEFENDANTS, FOR MORE DEFINITE STATEMENT AND MEMORANDUM OF LAW IN SUPPORT

     COMES NOW, Plaintiffs (hereinafter collectively referred to as "ALLSTATE"), by

and through their undersigned counsel and responds to Defendants' motions as stated in the

title above and states:

## I. INTRODUCTION/SUMMARY OF FACTS

The Complaint filed in this action contains much more thorough facts, but a summary of the facts will be provided for purposes of this response. ALLSTATE issued automobile insurance policies that provided PIP coverage to its insureds specified in "Exhibit A" of Plaintiff's Complaint.  ALLSTATE made some PIP payments on behalf of its insureds to the Defendant clinics.  Additionally, ALLSTATE was billed for some services allegedly rendered to its insureds that have not been paid as a result of the services not being lawfully rendered.

On April 12, 2011, ALLSTATE filed the present litigation against the seven (7) Defendants listed above.  During the pertinent timeframes specified in the Complaint, Sara C. Vizcay, M.D. ("VIZCAY") claimed to wholly own four (4) of the Defendant clinics: Caleb Health Care, Inc.; Global Diagnostic Center, Inc.; Personal Medical Center, Inc.; and Regional Enterprises for Health Corporation.  These four (4) clinics will be collectively referred to as the "DE FACTO CLINICS."  In the Complaint, ALLSTATE alleges VIZCAY did not wholly own these clinics and that pertinent bills submitted by the DE FACTO CLINICS to ALLSTATE are not properly compensable since VIZCAY and the DE FACTO CLINICS made material misrepresentations to ALLSTATE and committed Common Law Fraud by representing that VIZCAY was the owner of the DE FACTO CLINCS.  As a result, VIZCAY and the DE FACTO CLINICS were Unjustly Enriched by payments made by ALLSTATE on behalf of its insureds for services that were not lawfully rendered under Florida Statutes §627.736, §817.505, §460.4167, §400.9935, §460.990 et sec, and Florida

Statute Chapter 408.

During the pertinent timeframes specified in the Complaint, VIZCAY was the purported Medical Director of three (3) of the Defendant clinics: Best Care Medical Center, Inc.; Florida Rehabilitation Practice, Inc. (f/k/a Dana Medical Center, Inc.); and P.V.C. Medical Center, Inc. These three (3) clinics will be collectively referred to as the "MEDICAL DIRECTOR CLINICS." In the Complaint, Plaintiffs allege that VIZCAY did not comply with her statutory duties as Medical Director. Thus, according to Florida case law, pertinent bills submitted by the MEDICAL DIRECTOR CLINICS to ALLSTATE are not properly compensable since VIZCAY and the MEDICAL DIRECTOR CLINICS made material misrepresentations that the MEDICAL DIRECTOR CLINICS had a Medical Director that was performing the statutory duties required of a Medical Director under Florida law, when in fact VIZCAY was not complying with the duties. For these same reasons, ALLSTATE alleged that VIZCAY and the MEDICAL DIRECTOR CLINICS committed Common Law Fraud. As a result, VIZCAY and the MEDICAL DIRECTOR CLINICS were Unjustly Enriched by payments made by ALLSTATE for services that were not lawfully rendered under Florida Statutes §627.736, §817.505, §460.4167, §400.9935, §460.990 et sec, and Florida Statute Chapter 408.

Defendants, Best Care Medical Center, Inc., Florida Rehabilitation Practice, Inc. (f/k/a Dana Medical Center, Inc.), Caleb Health Care, Inc., Global Diagnostic Center, Inc., P.V.C. Medical Center, Inc. and Regional Enterprises for Health Corporation ("CHIROPRACTIC CLINICS") each utilized chiropractors and exercised control over the practice of chiropractic medicine, when the CHIROPRACTIC CLINICS were not wholly

owned by chiropractic physicians, which violates Fla. Stat. §460.4167 and renders bills submitted to ALLSTATE not compensable under Fla. Stat. §627.736.

## II. ARGUMENT

ALLSTATE's Complaint is properly pled and states sufficient facts upon which relief should be granted. Each of Defendants' arguments are without merit and Defendant's Motion to Dismiss All Claims, to Abstain or in the Alternative to Sever Claims Against Defendants, for More Definite Statement should be denied. Counsel for Plaintiffs have agreed to provide a more definite statement.

**Standard of Review**

Defendants seek to dismiss the instant Complaint under Fed. R. Civ. P. 12(b) and in ruling on this motion to dismiss, this Court should liberally construe the Complaint in the light most favorable to Plaintiffs. The Eleventh Circuit Court of Appeals explained the applicable standard for review under Fed. R. Civ. P. 12(b)(1) as follows:

> Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms, "facial" and "factual" attacks. Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion.

*Morrison v. Amway Corporation*, 323 F. 3d 920, 924 n. 5 (11th Cir. 2003)(internal citations omitted). Additionally, The Middle District Court succinctly summarized the standard for reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss as follows:

> In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. … To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level. …. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1270, 1286-1287 (M.D. Fla. 2009)(internal citations and quotations omitted).  Further "courts must be mindful that the Federal Rules only require that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief." *U.S. v. Baxter Intern, Inc.* 345 F.3d 866, 880 (11th Cir. 2003) (citing FED. R. CIV. P. 8(a)).   Here, the allegations in the Complaint are sufficiently framed to state causes of action upon which relief may be granted.

**A. This Court Has Subject Matter Jurisdiction.  ALLSTATE is Not Seeking a Private Right of Action Through Fla. Stat. §400.990-§400.995**

Defendants' contention that this Court lacks subject matter jurisdiction is without merit, is a red herring, and misconstrues ALLSTATE's basis for the claims presented. ALLSTATE is not seeking to assert a private right of action through Fla. Stat. §§400.900-§400.995 or 460.4167.  ALLSTATE's claims are based on Florida's No Fault Statute, Fla. Stat. §627.736.  ALLSTATE seeks a determination that bills submitted to ALLSTATE by the Defendants are not compensable as the services were not lawfully rendered, in violation of Fla. Stat. §627.736.

Defendants allege that based upon facts stated in the Complaint, this Court lacks subject matter jurisdiction.  This is an obvious facial attack; thus, the allegations in the Complaint should be taken as true when considering the motion. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003).

As detailed in the Complaint, the Defendant clinics submitted claims to ALLSTATE and sought payment under PIP for services allegedly rendered to ALLSTATE's insureds. The bills submitted were required to comply with Fla. Stat. §627.736.   Fla. Stat.

§627.736(1)(a) provides that an insurer:

> ... shall provide reimbursement only for such services and care that are **lawfully provided**, supervised, ordered, or prescribed by a physician licensed under chapter 458 or chapter 459, a dentist licensed under chapter 466, or a chiropractic physician licensed under chapter 460 or that are provided by any of the following persons or entities:
>
> 3. An entity **wholly owned** by one or more physicians licensed under chapter 458 or chapter 459, chiropractic physicians licensed under chapter 460, or dentists licensed under chapter 466 or by such practitioner or practitioners and the spouse, parent, child, or sibling of that practitioner or those practitioners. §627.736(1)(a), Fla. Stat. (2008) (emphasis added).

Fla. Stat. §627.736(5)(a) limits the charges a medical provider can submit to an insurer as follows:

> . . . (5)(a) Any physician, hospital, *clinic*, or other person or institution **lawfully rendering** treatment to an injured person ... may charge only a reasonable amount for the services … rendered, and the insurer providing such coverage may pay for such charges directly to such person or institution **lawfully rendering** such treatment. . . (Emphasis added). §627.736(5)(a), Fla. Stat. (2008) (emphasis added).

Fla. Stat. §627.732(11) defines "lawfully" as being "in substantial compliance with **all** relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment." §627.732(11), Fla. Stat. (2008) (emphasis added). Based on this definition and case law existing before this definition was promulgated by the legislature, it is clear that an insurer such as ALLSTATE only has to pay for charges that are lawfully rendered.

In addition to mandating that the services be lawfully rendered, Fla. Stat. §627.736(5)(b)(1) further limits what an insurer must pay by providing that "an insurer or insured is not required to pay a claim or charges: . . . (b) **For any service or treatment that was not lawful at the time rendered**." (emphasis added).

Furthermore, Fla. Stat. §627.736(5)(d) specifically provides that "[N]o statement of medical services may include charges for medical services of a person or entity that performed such services without possessing the **valid licenses** required to perform such services. For purposes of paragraph (4)(b), an insurer shall not be considered to have been furnished with notice of the amount of covered loss or medical bills due unless the statements or bills comply with this paragraph . . . §627.736(5)(d), Fla. Stat. (2008) (Emphasis added).

Finally, Fla. Stat. §627.736(4)(b) provides:

> This paragraph does not preclude or limit the ability of the insurer to assert that the claim was unrelated, was not medically necessary, or was unreasonable or that the amount of the charge was in excess of that permitted, **or in violation of, section (5)**. Such assertion by the insurer may be made at any time, including after payment of the claim or after the 30-day time period for payment set forth in this paragraph. §627.736(4)(b), Fla. Stat. (2008) (emphasis added)

This language is clear and unambiguous. Florida's legislature clearly required insurers to pay certain medical providers for reasonably related and medically necessary medical expenses for lawfully rendered treatment. *Id.* The legislature required that providers only submit claims for services that were lawfully rendered. The legislature specifically mandated that neither an insured, nor an insurer is obligated to pay for medical services that were not lawful at the time they rendered. §627.736(5)(b)(1)(b), Fla. Stat. (2008). The legislature required that medical providers comply with **all** relevant criminal, civil, and administrative requirements of state and federal law relating to providing the medical care. *Id.*

Whether the services billed by Defendants were lawfully rendered and/or compensable under Fla. Stat. §627.736 is the basis of the Complaint since ALLSTATE is

only required to pay for lawfully rendered services.  This issue was clearly framed by the pleadings, is within this court's jurisdiction and ALLSTATE has a right to pursue the causes of action stated within Plaintiff's Complaint.

As stated in the statutory language above, in order for claims submitted by the subject clinics to be properly payable, Fla. Stat. §627.736 requires that the services must be lawfully rendered and that no false or misleading statements relating to the claim be submitted.  This requires that the Defendants comply with Florida's licensing requirements.  By accepting the allegations contained within the Complaint as true, Defendants violated Fla. Stat. Chapters 400, 408 and 460 and Defendants submitted false and misleading statements to ALLSTATE.

In order to reduce fraud, curtail chiropractic treatment at unlicensed clinics staffed by untrained personnel, and to protect the health, safety and welfare of the public, Florida's legislature enacted the Health Care Clinic Act ("the ACT").  *Active Spine Centers, LLC v. State Farm Fire & Cas. Co.*, 911 So. 2d 241 (Fla. 3d DCA 2005).  The ACT was designed to make it unlawful for unlicensed personnel to own, operate or manage a health care clinic in Florida. §400.990 (2008) and §460.4167, Fla. Stat. (2008). The ACT requires clinics with unlicensed, non-physician owners to obtain a clinic license and be subject to a background screening.  For purposes of the ACT, *clinic* is defined as "an entity at which health care services are provided to individuals and which tenders charges for reimbursement for such services." §400.9905(4), Fla. Stat (2008).  Each clinic meeting this definition is required to obtain a license from AHCA, unless it falls under one of a few limited exceptions as defined by the statute.

The DE FACTO CLINICS claim to be exempt from licensure based on Fla. Stat.

§400.9905(4) which states as follows:

> (f)   A sole proprietorship, group practice, partnership, or corporation that provides health care services by licensed health care practitioners…**which are *wholly owned* by a licensed health care practitioner,** or the licensed health care practitioner and the spouse, parent, or child of a licensed health care practitioner, so long as one of the owners who is a licensed health care practitioner is supervising the services performed therein and is legally responsible for the entity's compliance with all federal and state laws.

§400.9905(4), Fla. Stat. (2008) (Emphasis added).

Fla. Stat. §400.9935 (Clinic Responsibilities) further provides that:

> (3) All charges or reimbursement claims made by or on behalf of a **clinic** that is required to be licensed under this part, but that is not so licensed, or that is otherwise operating in violation of this part, are unlawful charges, and therefore are noncompensable and unenforceable.

> (4) …any person establishing, operating, or managing an unlicensed clinic otherwise required to be licensed under this part or part II of chapter 408, or any person who knowingly files a false or misleading license application or license renewal application, or false or misleading information related to such application or department rule, commits a felony of the third degree…

> (6) Any person or entity providing health care services **which is not a clinic**, as defined under *s. 400.9905*, may voluntarily apply for a certificate of exemption from licensure under its exempt status with the agency on a form that sets forth its name or names and addresses, a statement of the reasons why it cannot be defined as a clinic, and other information deemed necessary by the agency. . . .

§400.9935, Fla. Stat. (2008) (emphasis added).

As outlined above, unless a medical provider qualifies for one of the exceptions defined by the aforementioned statute, the medical provider is considered a clinic for purposes of the licensure requirements.  All clinics must obtain a license before treating patients.  Further, any services performed by an unlicensed clinic are not compensable as a matter of law.  *Id.*

The DE FACTO CLINICS claim they held voluntary exemption certificates;

however, the exemptions were issued based upon VIZCAY's attestation that she wholly owned the DE FACTO CLINICS, which is false.  It is extremely important to note that in Florida, AHCA does not investigate the truthfulness of an application for exemption. Instead, it relies on the truthfulness of the applicant.  AHCA has no authority to deny an application for exemption if the application form is fully completed.  Thus, the issuance of an exemption certificate should not prevent a jury from considering all relevant evidence and making a factual finding as to if the DE FACTO clinics were truly wholly owned by VIZCAY, as alleged in the applications.  By allowing this weighing of the facts, Plaintiffs are seeking to have the jury determine if the bills submitted were for services that were not lawfully rendered and thus not payable under PIP.

Further, the ACT specifically states that the right to an exemption certificate is limited to "any person or entity providing health care services **which is not a clinic**, as defined under s. 400.9905."  §400.9935(6), Fla. Stat. (2008).  The DE FACTO CLINICS qualified as clinics, were therefore not qualified to obtain an exemption and should have been prohibited from obtaining an exemption. There is no provision for exemption from Fla. Stat §460.4167.

Under the ACT, operating an unlicensed clinic comes with severe penalties, including third degree felony charges.  The statute is clear that any charges billed by a clinic operating without a proper license or operating in violation of the ACT are unlawful charges, which are not compensable.   §400.9935(3), Fla. Stat. (2008).  If Defendants' logic were applied, clinics would be able to improperly obtain voluntary exemptions using false, misleading or incomplete information and circumvent the entire purpose behind the Statute.  Since AHCA

does not investigate the truthfulness of the information submitted, there would be no enforcement mechanism to ensure compliance with the ACT that is intended to protect the public welfare and reduce fraud, which is all too prevalent.

In *Active Spine v. State Farm Fire & Cas. Co.*, 911 So. 2d 241 (Fla. 3d 2005), Florida's Third District Court of Appeals upheld the decision of the trial court that the medical provider's claims were not compensable because the medical provider did not comply with registration/licensing requirements stated in the former Fla. Stat., §456.0375 (2001), which ultimately changed statute numbers and became the ACT.

Further, as of July 1, 2008, Florida's legislature implemented Fla. Stat. §460.4167 which limits where a chiropractor can work.  This statute states that any clinic that employs chiropractors, but is not also **wholly owned** by licensed chiropractic physician(s), is prohibited from exercising control over the practice of chiropractic medicine.  The statute states that any employment arrangement with a chiropractic physician which does not comply with the terms of the statute, shall be void.  There is no provision for a certificate of exemption from this statute.  Thus, if VIZCAY's ownership of the DE FACTO CLINICS is a sham, the DE FACTO CLINICS' services are not properly payable under PIP as the services were not lawfully rendered in compliance with Fla. Stat. §460.4167.

It is also third degree felony for any person other than a chiropractic physician to direct, control, or interfere with a chiropractic physician's clinical judgment regarding medical necessity of chiropractic treatment, unless they fall within a specific exception. Essentially, the legislature attempted to prevent entrepreneurial ownership of chiropractic clinics and re-adopted the Corporate Practice of Medicine Doctrine.  Any interpretation of

Florida's PIP statute that would allow a medical provider to recover payment for services that were provided in violation of any criminal, civil or administrative regulation would be an illogical and unreasonable interpretation of the PIP statute. *Id.; See Medical Management Group of Orlando, Inc. v. State Farm Mut. Auto. Ins. Co.*, 811 So. 2d 705 (Fla. 5th DCA 705) (Agreement for splitting of fees violated Florida Statutes, §817.505 such that they were not compensable); and *Prosper Diagnostic Centers, Inc. v. Allstate Ins. Co.*, 964 So. 2d 763 (Fla. 4th DCA 2007)(appellate court confirmed trial courts order granting summary judgment that services were not compensable due to violations of Florida Statutes, §817.505).

As outlined above, VIZCAY does not wholly own the DE FACTO CLINICS, based upon a deposition of VIZCAY, as well as available corporate and public records. ALLSTATE believes the DE FACTO CLINICS are owned by non-medical entrepreneurs such that the DE FACTO CLINICS qualified as clinics pursuant to Fla. Stat. §400.9905. Since the DE FACTO CLINICS qualified as clinics and did not meet the definition of the exemptions upon which they relied, the services billed to ALLSTATE would not be compensable.

**Allstate is not attempting to state a cause of action for violations of the Health Care Clinic Act**

Defendant argued that ALLSTATE has no private right of enforcement under Fla. Stat. §400.900 based in part on the Florida Supreme Court's decision in *Murphy v. N. Sina Corp.*, 644 So. 2d 983 (Fla. 1994). *Murphy* is clearly distinguishable from the instant case as the Murphys specifically sought to create a private action based on a statute that does not afford a civil remedy. To the contrary, ALLSTATE is not attempting to recover a civil remedy through the licensure rules against VIZCAY, but rather, is enforcing the statutory

and contractual requirement that the services be lawfully rendered as required by Fla. Stat. §627.736.

Similarly, in *State Farm Mutual Automobile Ins. Co. v. Axcess MRI Jacksonville, LLC*, 14 Fla. L. Weekly Supp. 45a (Fla. 4th Cir. Duval Cty 2006), the court noted that State Farm did not have a private right of a cause of action under Fla. Stat. §456.0375 and replacement statute, Fla. Stat. §400.990-400.995; however, based on the fact that State Farm was injured as a result of Axcess' failure to be properly licensed when the services were rendered, the Court found State Farm was not responsible for Axcess' bills and could recover damages.

As exhibited above, ALLSTATEs claims are straight forward causes of action concerning entitlement to PIP benefits under Fla. Stat. §627.736 and these causes of action in no way attempt to create a private right of enforcement of the ACT. Defendants argument is a mere attempt to distract the Court from the actual issues presented in the Complaint.  In *State Farm v. Silver Star,* Case No.6:10-cv-01103-GAP-GJK (M.D. Fla. November 29, 2010), the Honorable Gregory A. Presnell entered and Order denying the same issue presented motion to dismiss in an Order entered on and found "[a] fair reading of the Complaint reveals that Plaintiff's claims concern Defendants' entitlement to benefits pursuant to §627.736.  Plaintiff is not attempting to assert a private cause of action under Fla. Stat. §§400, 408, and 460." *Id.*

**B. Plaintiff's declaratory judgment actions are properly pled and should remain part of Plaintiff's Complaint**

Federal actions that are based upon diversity jurisdiction are required to apply state substantive law and federal procedural law.  It has been held that Florida's Declaratory

13

Judgment Act, Florida Statute §86 et. sec., is substantive and remedial in nature, the federal

Declaratory Judgment Act is only procedural in nature.  *Nationwide Mut. Co. v. Ft. Myers*

*Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1291 (M.D. Fla. 2009), *citing, Marco Island*

*Cable, Inc. v. Comcast Cablevision of the South, Inc.*, 509 F. Supp. 2d 1158, 1160 (M.D.

Fla. 2007), *vacated in part on other grounds*, 2:04-cv-26-FTM-29DNF, 2007 U.S. Dist.

LEXIS 35730 (M.D. Fla. May 16, 2007), aff'd, 312 Fed. Appx. 211 (11th Cir. 2009).  As

such, this Court is required to rule upon ALLSTATE'S requests for declaratory relief in

accordance with Florida Statute §86.011 which requires in part:

> a bona fide, actual, present practical need for the declaration; that the
> declaration should deal with a present, ascertained or ascertainable state of
> facts or present controversy as to a state of facts; that some immunity, power,
> privilege or right of the complaining party is dependent upon the facts or the
> law applicable to the facts; that there is some person or persons who have, or
> reasonably may have an actual, present, adverse and antagonistic interest in
> the subject matter, either in fact or law; that the antagonistic and adverse
> interest are all before the court by proper process or class representation and
> that the relief sought is not merely the giving of legal advice by the courts or
> the answer to questions propounded from curiosity.  *Santa Rosa County v.*
> *Admin. Comm'n, Div. of Admin. Hearings*, 661 So. 2d 1190, 1192-93 (Fla.
> 1995).

By requiring this, the issuance of advisory opinions, in the form of declaratory judgments, is

avoided "at the instance of parties who show merely the possibility of legal injury on the

basis of a hypothetical state of facts which have not arisen and are only contingent, uncertain,

[and] rest in the future."  *Nationwide*, 657 F. Supp. 2d at 1292, *citing, Fla. Dep't of Ins. v.*

*Guarantee Trust Life Ins. Co.*, 812 So. 2d 459, 460-61 (Fla. 1st DCA 2002).  Thus, when a

plaintiff establishes the existence of a justiciable controversy cognizable under Florida's

Declaratory Judgment Act, a motion to dismiss same should not be granted.  *Nationwide*, 657

F. Supp. 2d at 1292.  To properly determine whether a complaint for declaratory relief is

sufficiently pled, the question "is not whether the plaintiff will succeed in obtaining the decree he seeks favoring his position, but whether he is entitled to a declaration of rights at all." *Id.* at 1292, *citing*, *Murphy v. Bay Colony Prop. Owners Ass'n*, 12 So. 3d 924 (Fla. 2d DCA 2009).   In 2004, the Florida Supreme Court receded from the line of cases which precluded declaratory judgment when unresolved facts existed and instead opined that "an insurer may pursue a declaratory action which requires a determination of the existence or nonexistence of a fact upon which the insurer's obligations under an insurance policy depend." *Higgins v. State Farm Fire & Casualty Co.*, 894 So. 2d 5, 12 (Fla. 2004).   In this action, ALLSTATE has requested that this Court find that the services/treatments provided to ALLSTATE'S insureds/claimants by the Defendants were unlawful and, accordingly, the bills submitted to ALLSTATE by the Defendants in regards to same are not properly payable and ALLSTATE neither had nor has any legal obligation to pay such claims.   The facts necessary to render this declaration are ascertainable.

Accordingly, the parties to the underlying litigation here have a bona fide, actual, present and practical need for this Court to declare whether Defendants' claims for reimbursement were lawfully submitted and whether Defendants are entitled to payment on the pending claims or whether ALLSTATE is entitled to damages for the unlawful claims. The underlying reimbursement claims at issue are not hypothetical.   The antagonistic positions of the parties are actual and present.   The resolution of the issue of whether ALLSTATE is (or ever was) liable for payments of the claims submitted by the Defendants is dependent upon this Court's declaration of how the applicable law applies to the ascertainable facts.  ALLSTATE has satisfied all necessary elements to support its claim for

declaratory relief and this matter is ripe for determination by this Court.

**D. This Court has jurisdiction and should not abstain or decline jurisdiction**

"Abstention from the exercise of federal jurisdiction is the exception, not the rule. The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (U.S. 1976). Federal courts generally have a "virtually unflagging obligation...to exercise the jurisdiction given them," and "the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction…" *Id*. at 817. Because of this, "federal courts and state courts often find themselves exercising concurrent jurisdiction over the same subject matter, and when that happens a federal court generally need neither abstain (i.e., dismiss the case before it) nor defer to the state proceedings (i.e., withhold action until the state proceedings have concluded)." *Growe v. Emison*, 507 U.S. 25, 32 (U.S. 1993).

However, in determining whether a federal court may defer to a parallel state proceeding, the district court is required to consider: (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties. *American Bankers Ins. Co. v. First State Ins. Co.*, 891 F.2d 882, 884 (11th Cir. Fla. 1990). "The test for determining when exceptional circumstances exist, therefore, involves the careful balancing

of six factors. The weight to be given any one factor may vary greatly depending on the case; however, the balance is heavily weighted in favor of the federal court exercising jurisdiction." *Id*. at 884.  In the subject action, it would be improper for this Court to defer to the state court as there would be: (1) substantial costs and inconvenience to all parties in litigating the underlying issues in multiple state proceedings, (2) the potential for multiple inconsistent rulings on the same issue would exist if the subject federal action is dissolved into multiple pending state actions, (3) not all the claims associated with the subject litigation are involved in state court actions, (4) the state court actions and the subject federal action deal with differing disputes, and (5) the underlying state law issues do not rise to the level of requiring deferral to the multiple state courts.  As such, there exist no "exceptional circumstances" which would justify the surrendering of this Court's diversity jurisdiction to multiple state courts associated with some but not all of the subject claims.  Moreover, the case law relied upon by the Defendants' in their argument for abstention deals primarily with declaratory actions brought pursuant to 28 U.S.C. §2201 and not upon declaratory actions brought pursuant to Florida Statute §86 et. sec. which are based upon diversity jurisdiction in federal court.  As such, the case law cited by Defendants' in regard to this issue is not on point and should not be considered.  Accordingly, abstention is not proper and this Court's continued jurisdiction and adjudication of this matter is appropriate.

**E. Plaintiff's claims are properly joined and should not be severed**

Pursuant to the Federal Rules of Civil Procedure, "joinder of claims parties and remedies is strongly encouraged." *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974), *citing*, *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966).  The

joinder of plaintiffs is appropriate when the plaintiff parties seek relief against common

defendants and raise identical legal claims.  *See Jean v. Meissner*, 90 F.R.D. 658, 661-662

(S.D. Fla. 1981).  Federal Rule of Civil Procedure 20 provides that individuals/entities may

be joined as defendants in an action when any right to relief is asserted against them jointly,

severally, or in the alternative with respect to or arising out of the same transaction,

occurrence, or series of transactions or occurrences; and any question of law or fact common

to all defendants will arise in the action.  USCS Fed Rule Civ Proc R 20(a)(2).  The purpose

of Rule 20 is "to promote trial convenience and expedite the resolution of disputes, thereby

eliminating unnecessary lawsuits." *Alexander v. Fulton County*, 207 F.3d 1303, 1323 (11th

Cir. 2000) (overruled on other grounds by *Manders v. Lee*, 338 F.3d 1304, 1328 n. 52 (11th

Cir. 2003)).  It has been held that Rule 20(a) allows for the permissive joinder of multiple

individuals/entities as defendants so long as there is a fact common to all defendants;

however, Rule 20 does not require all facts adduced to be common to all defendants.  *Music

Merchants, Inc. v. Capitol Records, Inc.*, 20 F.R.D. 462, 464 (D.N.Y. 1957).   In determining

if there is a common fact to all defendants, it has been held that the series of transactions or

occurrences requirements under Rule 20 is satisfied if there is some connection or logical

relationship between the various transactions or occurrences among the defendants.  *Mymail,

Ltd. v. Am. Online, Inc.*, 223 F.R.D. 455, 456 (E.D. Tex. 2004).  Thus, a case-by-case

approach is generally used to determine whether particular factual situation meets same

transaction or occurrence test.  *Miller v. Hygrade Food Prods. Corp.*, 202 F.R.D. 142, 144

(E.D. Pa. 2001).  In this action, a connection or logical relationship exists in regards to the

transactions or occurrences of the Defendants as all of the Defendant clinics are

interconnected with Defendant VIZCAY, and all of the Defendants have actively engaged in a common scheme of submitting unlawful claims to ALLSTATE that are not properly payable under Florida's No-Fault law.  The submission of unlawful claims also includes the submission to ALLSTATE of bills and medical records that contained false material facts.

Rule 20 also requires that there be at least one question of law or fact common to all defendants in an action.  *Mesa Computer Utilities, Inc. v. Western Union Computer Utilities, Inc.*, 67 F.R.D. 634, 637 (D. Del. 1975).  However, additional differing claims may be brought against the individual defendants.  *Independent Liberty Life Ins. Co. v. Fiduciary & General Corp.*, 91 F.R.D. 535, 538 (W.D. Mich. 1981); *see also Guedry v. Marino*, 164 F.R.D. 181, 184 (E.D. La. 1995).  In this action there are multiple questions of law and fact common to all the Defendants.  These questions of law or fact include: (1) whether the Defendants each made negligent misrepresentations to ALLSTATE in the presentation of their claims; (2) whether each of the Defendants engaged in common law fraud by submitting the aforementioned claims to ALLSTATE; (3) whether each of the Defendants was unjustly enriched as a result of submitting the aforementioned claims to ALLSTATE; (4) whether the aforementioned submission of the aforementioned claims by the Defendants to ALLSTATE was in violation of Florida No-Fault law; and (5) whether the Defendant clinics and Defendant Vizcay engaged in an unlawful fee split arrangement.  Accordingly, ALLSTATE properly joined the subject Defendants in this action in accordance with Federal Rule of Civil Procedure 20, and Defendant's request for severance should be denied.

## F. Stipulation with regard to Defendant's Motion for More Definite Statement

Counsel for Plaintiffs and Defendants conferred and counsel for Plaintiff agreed to

file a bill of particulars/more definite statement, which will specify the amounts paid by ALLSTATE to the Defendants for the patients' treatment and which insurance carrier is asserting which claims against each Defendant.

WHEREFORE, ALLSTATE respectfully requests this Court to enter an Order denying Defendants' Motion to Dismiss All Claims, to Abstain or in the Alternative to Sever Claims Against Defendants, for More Definite Statement and Memorandum of Law in Support.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 7, 2011 a true and correct copy of the foregoing has been electronically filed with the Clerk of Court by using the ECF system, which will send a notice of electronic filing to Kimberly P. Simoes, Esquire, The Simoes Law Group, P.A., 120 South Woodland Boulevard, Suite 213, Deland, Florida 32720.

By: /s/ Tammy B. Denbo
**TAMMY B. DENBO, ESQ. (Trial Counsel)**
Florida Bar No. 0163597
tammy.denbo@mastenlyerly.com
**DONALD J. MASTEN, ESQ. (Trial Counsel)**
Florida Bar No. 0679161
don.masten@mastenlyerly.com
Masten, Lyerly, Peterson & Denbo, LLC
6730 West Linebaugh Avenue, Suite 101
Tampa, FL 33625
(813) 418-6400/office, (813) 217-9367/fax