**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**ALLSTATE INSURANCE COMPANY, et al.,**

   **Plaintiffs,**

v.                                          Case No.: 8:11-CV-804-T-17EAJ

**SARA C. VIZCAY, et al.,**

   **Defendants.**
_____/

## ORDER

Before the Court are Plaintiffs' **Motion to Compel Better Responses from the Defendant DeFacto Clinics With Regard to Plaintiffs' Request to Produce** (Dkt. 151), **Motion to Compel Better Responses from the Defendant Medical Director Clinics With Regard to Plaintiffs' Request to Produce** (Dkt. 159), and **Motion to Compel Better Responses from the Defendant Sara Vizcay, M.D., With Regard to Plaintiffs' Request to Produce** (Dkt. 160), as well as Defendants' **Consolidated Response in Opposition** (Dkt. 170).

Plaintiffs, six Allstate companies, filed this action against Defendants Dr. Sara Vizcay ("Dr. Vizcay") and seven medical clinics: Best Care Medical Center Inc. ("Best Care"), Dana Medical Center, Inc. ("Dana"), P.V.C. Medical Center, Inc. ("P.V.C."), Caleb Healthcare, Inc. ("Caleb"), Regional Enterprises for Health Corporation ("Regional"), Personal Medical Center, Inc. ("Personal"), and Global Diagnostics, Inc. ("Global") (collectively "Defendant clinics"). Plaintiffs allege that Defendants unlawfully rendered medical services in violation of the Health Care Clinic Act (the "Act") making Defendants' claims for Personal Injury Protection ("PIP") benefits and medical payment coverage submitted to Plaintiffs for Plaintiffs' insured individuals ("Insureds") not properly payable.

Plaintiffs allege negligent misrepresentation, common law fraud, and unjust enrichment. Plaintiffs also seek declaratory relief as to: (1) ownership of Caleb, Regional, Personal, and Global ("the De Facto clinics") and alleged violation of Florida Statute § 400.990 et seq.; (2) Best Care, Caleb, Dana, Global, P.V.C., and Regional's (the "Chiropractic clinics") alleged improper utilization of chiropractors in violation of Florida Statute § 460.4167; (3) Dr. Vizcay's alleged failure to comply with duties as medical director of Best Care, Dana, and P.V.C. ("the Medical Director clinics") and violation of Florida Statutes §§ 400.9935 and 627.736; and (4) the Defendant clinics' alleged unlawful fee split arrangements with Dr. Vizcay and violation of Florida Statutes §§ 456.054, 458.331, 627.736, and 817.505.

Plaintiffs seek to compel the De Facto clinics, the Medical Director clinics, and Dr. Vizcay to produce documents responsive to Plaintiffs' First Request to Produce asserting that the documents requested are relevant to Plaintiffs' claims. Defendants respond that the requested discovery is overbroad, not reasonably calculated to lead to the discovery of admissible evidence, seeks privileged or confidential information, and results in annoyance, oppression, undue burden, and expense.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." (Id.) "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." (Id.) However, a court must limit the scope of discovery

2

if it finds that the discovery sought is unreasonably cumulative or duplicative or if the burden of the proposed discovery outweighs the likely benefits. Fed. R. Civ. P. 26(b)(2)(c).

**I.      Motion to Compel Documents from the De Facto Clinics**

Plaintiffs seek to compel the De Facto clinics to produce the following documents:[1]

Request No. 3: The entire billing file for the Insureds, including copies of bills submitted to any insurer, super bills, fee sheets, and a current billing ledger showing any payments made (showing when and by whom), write-offs and the outstanding balance.

Request No. 9: All documents identifying all individuals or entities that participate or share in any profits of the De Facto clinics, including names, business addresses, and telephone numbers of each individual or entity, the nature of their profit sharing and interest, IRS schedule K1 form, purchase contract, stock certificates, stock restriction agreement, leases, assignments, etc.

Request No. 10: All financial records reflecting ownership of the De Facto clinics from the inception of the clinic to the present, including federal corporate income tax returns from 2008 to the present (and 2007 to the present for Caleb), and including both executed and non-executed copies.

Request No. 11: All financial records reflecting ownership of the De Facto clinics, including Schedule "C" forms, Schedule "D" forms, capital gain losses or gains forms, Schedule "E" forms, any K-1 forms and any other evidence of earnings, assets, liabilities, gains, or losses pertaining to the De Facto clinics and to any business enterprise of any type in which the clinic is involved or has been involved for the year 2008 (and 2007 for Caleb) through the present.

Request No. 14: All documents identifying any person or entity that owns, or has any financial interest in, any equipment or furniture located within or utilized by the De Facto clinics, including names, business addresses, telephone numbers, stat and end dates of ownership interest of each individual or entity, and a detailed explanation of the type of equipment or furniture.

Request No. 16: All records as to who owned, rented, or leased the premises, land, or buildings for the last five years, including all oral/written agreements, contracts,

---

[1] Plaintiffs' document production requests in this order are described as narrowed by the Plaintiffs in their motions to compel, not as originally served to the Defendant clinics and Dr. Vizcay.

3

and memorandums of understanding.

Request No. 17: All documents between the De Facto clinics and any landlord, therapy clinics, billing company, medical director, physician, marketing company, medical management company, coding company, independent health care provider that rendered services or evaluated the Insureds.

Request No. 18: All documents relating to the De Facto clinics sharing the facilities, equipment, or services with other individuals or entities, including documents identifying the individual or entity by name, business addresses, and telephone numbers, and contracts, agreements, leases, memos of understanding.

Request No. 19: All documents identifying all individuals or entities that provided services to the Insureds and their taxation identification numbers.

Request No. 20: The wage and hour quarterly report for each De Facto clinic, for the years 2008 (and 2007 for Caleb) through the present.

Request No. 23: All insurance policies and all related documents issued to, or for the benefit of the De Facto clinics from 2008 (and 2007 for Caleb) to the present, including the declarations page and any other documents showing: the insurer; the policy number; the dates the policy was in effect; the type of policy and coverages; the insurance agent that sold the policy; and the policy coverage limits.

Request No. 25: All documents reflecting the person or entity selecting or entering into any agreements pertaining to all marketing and advertising for the De Facto clinics.

Request No. 26: All documents provided to any accountant, person, or entity that prepared or assisted with preparing the De Facto clinic's tax returns for th years 2008 (and 2007 for Caleb) through the present.

Request No. 28: All documents showing any cash payments made by or on behalf of the De Facto clinics to employees or independent contractors providing any type of service to the clinics or on the clinics' behalf.

Request No. 29: All documents reflecting all capital contributions made to, or for the benefit of, the De Facto clinics.

Request No. 30: All documents reflecting communications between Dr. Vizcay and anyone regarding the formation, ownership, operation and management of the business, hiring and firing of staff, handling income, expenses billing, and accounts receivable, and equipment purchase, leasing, maintenance and repairs.

Request No. 32: Dr. Vizcay's W-2 forms, 1099 forms, and any contracts, agreements, or memos of understanding between Dr. Vizcay and the De Facto clinics.

Request No. 33: All W-2 forms and 1099 forms for all employees and independent contractors of the De Facto clinics for the years 2008 (and 2007 for Caleb) through the present.

Request No. 34: All cash receipts and disbursement journals for the De Facto clinics kept either in paper, book, or computer printout for the years 2008 (and 2007 for Caleb) through the present.

Request No. 35: All documentation supporting all withdrawals classified as "journal entries" for the years 2008 (and 2007 for Caleb) through the present for the De Facto clinics.

Request No. 37: All records of loans made to or from the De Facto clinics for the years 2008 (and 2007 for Caleb) through the present.

Request No. 38: All financial records indicating the financial condition of the De Facto clinics for the years 2008 (and 2007 for Caleb) through the present.

Request No. 39: All records of gifts made by the De Facto clinics to anyone or any entity for the years 2008 (and 2007 for Caleb) through the present.

Request No. 40: All records regarding money taken out of the De Facto clinics and monetary contributions made to the De Facto clinics for the years 2008 (and 2007 for Caleb) through the present.

Request No. 41: All cash receipts and disbursements of the De Facto clinics kept in paper, book, or computer printout for the years 2008 (and 2007 for Caleb) through the present. If there are none in your possession, identify the custodian of these records, to the best of your knowledge.

Request No. 42: All corporate financial documents, including corporate records, statements of accounts, and ledgers, for the De Facto clinics for the years 2008 (and 2007 for Caleb) through the present.

Request No. 43: All general ledger detail records of the De Facto clinics kept in paper, book, or computer printout for the years 2008 (and 2007 for Caleb) through the present.

Request No. 44: All ownership documentation for all vehicles claimed on the De Facto clinics' tax returns, including vehicle registrations and insurance for the years

2008 (and 2007 for Caleb) through the present.

Request No. 49: All checks from bank accounts held by the De Facto clinics, or checks issued on behalf of or for the benefit of the De Facto clinics, made payable to, or for the benefit of Dr. Vizcay for the years 2008 (and 2007 for Caleb) through the present.

Request No. 50: All checks from bank accounts held by the De Facto clinics, or checks issued on behalf of or for the benefit of the De Facto clinics, made payable to, or for the benefit of Eusevio Aquino (for Caleb), Norge Romero (for Global), Ariel Santos (for Personal), and Heather Green and Miguel Moreno-Cardanas (for Regional) for the years 2008 (and 2007 for Caleb) through the present.

Request No. 53: All cellular bills for cellular services paid for by the De Facto clinics for the years 2008 (and 2007 for Caleb) through the present.

Request No. 55: All documents reflecting anyone other than Dr. Vizcay's involvement in any management duties such as: managing, operating, or supervising the day to da operations of the De Facto clinics, including decisions regarding hiring and firing of employees and personnel; hours of operation; marketing and advertising; pricing, banking, and financial matters; record keeping; whether or not to initiate demand letters or litigation; obtaining insurance; paying invoices; and any other functions typically associated with managing a business.

Request No. 58: All applications and documentation regarding deposits submitted in order to obtain utility and telephone accounts for the De Facto clinics.

Plaintiffs contend that the discovery sought from the De Facto clinics is relevant to Plaintiffs' allegations that Dr. Vizcay does not wholly own the De Facto clinics. Plaintiffs claim that the De Facto clinics falsely represented that Dr. Vizcay wholly owned the De Facto clinics to be exempt from Florida's statutory licensing requirements pursuant to Florida Statute § 400.9905(4)(g), and therefore, the De Facto clinics are not properly licensed with the Agency for Health Care Administration ("AHCA"). Plaintiffs also claim that Dr. Vizcay does not wholly own the Chiropractic clinics, and their utilization of chiropractors is in violation of Florida Statute § 460.4167. Plaintiffs also argue that the discovery of financial records is relevant to determine the relationship between parties to financial transactions and whether an individual or entity was used

6

for a fraudulent or improper purpose, which relate to Plaintiffs' allegations of common law fraud and the Defendant clinics' alleged unlawful fee split arrangements with Dr. Vizcay.

The majority of the requests to the De Facto clinics are overbroad. The Court grants Request No. 32, narrows Requests Nos. 16, 49, and 50, and denies the remaining requests.

Request No. 32 is relevant to Plaintiffs' claims and narrowly tailored. Accordingly, Request No. 32 is **GRANTED**.

Request 16 is narrowed to "all deeds, contracts, lease agreements, and mortgage agreements for the premises, land, and buildings where each De Facto clinic was located for the last five years." See State Farm Mut. Auto. Ins. Co. v. Silver Star Health & Rehab, Inc., No. 6:10-cv-1103-Orl-31GJK, slip op. at 27-28 (M.D. Fla. Mar. 22, 2012); Fla. Stat. § 627.732(17) (2012). Accordingly, Request No. 16 is **GRANTED in part**.

Requests Nos. 49 and 50 are narrowed to checks issued by the De Facto clinics made payable to, or for the benefit of, Dr. Vizcay, Eusevio Aquino (for Caleb), Norge Romero (for Global), Ariel Santos (for Personal), and Heather Green and Miguel Moreno-Cardanas (for Regional), for the years 2008 (and 2007 for Caleb) through the present. Accordingly, Requests Nos. 49 and 50 are **GRANTED in part**.

The remaining requests to the De Facto Clinics are overbroad. Accordingly, these requests are **DENIED**.

II. **Motion to Compel Documents from the Medical Director Clinics**

Plaintiffs ask to compel the Medical Director clinics to produce the following documents:

Request No. 1: All forms signed by the Insureds advising the Insureds of the specific charges per CPT Code, including the evaluation and management CPT codes.

Request No. 2: The Insureds in-house coding sheets, fee slips, and superbills.

7

Request No. 3: The entire billing file, including copies of bills submitted to any insurer; super bills; fee sheets; and a current billing ledger showing any payments made (showing when and by whom), write-offs and the outstanding balance.

Request No. 12: All documents identifying all individuals and entities that provided services to the Insureds at the Medical Center clinics, as well as federal taxation identification numbers for each individual and entity, or only one form of documentation, as long as that documentation identifies all individuals that performed services on the Insureds.

Request No. 16: All insurance policies issued to, or for the benefit of, the Medical Director clinics from May 4, 2007 to the present for Best Care; from July 14, 2007 to the present for Dana, and October 17, 2005 to the present for PVC, including the declarations page and any other documents showing: the insurer; the policy number; the dates the policy was in effect; the type of policy and coverages; the insurance agent that sold the policy; and the policy coverage limits.

Request No. 19: All documents describing procedures, protocols or rules of any kind established, maintained or followed by the Medical Director clinics relating to medical services provided by these clinics.

Request No. 20: Dr. Vizcay's W-2 forms, 1099 forms, and any contracts or agreements and/or memos of understanding between Dr. Vizcay and the Medical Director clinics.

Requests Nos. 31 through 40 seek documents from May 4, 2007 to the present for Best Care, from July 14, 2007 to the present for Dana, and from October 17, 2005 to the present for P.V.C.

Request No. 31: All documents, logs, spreadsheets, audit documentation, charts, etc. that shows the Medical Director Clinics' compliance with any medical director duties required to be performed pursuant to the Florida Statutes and the Florida Administrative code.

Request No. 32: All records, documents, and materials of whatever nature you have in your possession regarding any audits that have been performed on billing records and/or billing procedures by the Medical Director clinics' medical director.

Request No. 33: Any logs or other documents showing the Medical Director clinics' medical director reviewed medical bills, medical records, and all other insurance claim-related documents prior to submission to Plaintiffs to ensure they were accurate, fully, and properly completed.

Request No. 34: Any logs or other documents showing the Medical Director clinics' medical director ensured that all practitioners providing health care services or supplies to patients maintained a current, active, and unencumbered Florida license

Request No. 35: Any logs or other documents showing the Medical Director clinics' medical director reviewed any patient referral contracts or agreements executed by the Medical Director clinics.

Request No. 36: Any logs or other documents showing the Medical Director clinics' medical director ensured that all health care practitioners at the clinics had active, appropriate certification or licensure for the level of care being provided

Request No. 37: Any logs or other documents showing the Medical Director clinics' medical director ensured compliance with the record keeping and adverse incident reporting requirements.

Request No. 38: Any logs or other documents showing that the Medical Director clinics' medical director conducted systematic reviews of the clinics' billing to ensure that the billing was not fraudulent or unlawful, and that upon discovery of an unlawful charge, the medical director took immediate action.

Request No. 39: Any logs or other documents showing that the Medical Director clinics' medical director posted signs identifying the medial director in a conspicuous location within the clinic readily available to all patients.

Request No. 40: Any documents showing the Medical Director clinics' medical director served as the clinic records owner as defined in Florida Statute § 456.057.

Request No. 41: Documents to which you refer in your responses to any Interrogatories Plaintiffs sent to the Medical Director clinics.

Plaintiffs assert that the document requests to the Medical Director Clinics are relevant to Plaintiffs' claims that Dr. Vizcay failed to comply with statutorily required duties as medical director for the Medical Director clinics pursuant to Florida Statute § 400.9935, which provides that "[e]ach clinic shall appoint a medical director or clinic director who shall agree in writing to accept legal responsibility for the following activities on behalf of the clinic." Fla. Stat. § 400.9935(1).[2]

---

[2] The medical director or the clinic director shall:

The Court finds unpersuasive the Medical Director clinics' assertion that Plaintiffs lack jurisdiction, standing, or otherwise may not seek discovery as to the Medical Director clinics' and Dr. Vizcay's compliance with the Health Care Clinic Act because the AHCA has already deemed the Medical Director clinics to be in compliance with the Act. Additionally, the Medical Director clinics' blanket assertions of privilege are insufficient. See Fed. R. Civ. P. 26(b)(5)(A).

Requests Nos. 20 and 31 through 40 are relevant and narrowly tailored. Accordingly, Requests Nos. 20 and 31 through 40 are **GRANTED**. Request No. 41 is **DENIED**, as the Medical Director clinics responded that they attached the documents to the extent applicable. The remaining requests are overbroad. Accordingly, these requests are **DENIED**.

### III. Motion to Compel Documents from Dr. Vizcay

Plaintiffs seek to compel Dr. Vizcay to produce the following documents:

Request No. 1: All documents reflecting the purchase of, issuance of, sale, or relinquishment of any stock from the De Facto clinics.

---

(a) Have signs identifying the medical director or clinic director posted in a conspicuous location within the clinic readily visible to all patients.
(b) Ensure that all practitioners providing health care services or supplies to patients maintain a current active and unencumbered Florida license.
(c) Review any patient referral contracts or agreements executed by the clinic.
(d) Ensure that all health care practitioners at the clinic have active appropriate certification or licensure for the level of care being provided.
(e) Serve as the clinic records owner as defined in s. 456.057.
(f) Ensure compliance with the record keeping, office surgery, and adverse incident reporting requirements of chapter 456, the respective practice acts, and rules adopted under this part and part II of chapter 408.
(g) Conduct systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful. Upon discovery of an unlawful charge, the medical director or clinic director shall take immediate corrective action.

Fla. Stat. § 400.9935(1)(a)-(g).

Request No. 2: All documents identifying shareholders of, and any individual and/or entity with any amount of ownership or financial interest in the De Facto Clinics from each clinics' inception to the present, including: names, business addresses, and telephone numbers for each individual or entity identified, the percentage of ownership and the dates of ownership.

Request No. 3: All documents regarding the dates of acquisition and percentage of ownership for any individual or entity with any amount of ownership or financial interest in the De Facto Clinics from the inception of the clinic to the present.

Request No. 4: All contracts between any person or entity for the purchase of stock or ownership or financial interest in the De Facto clinics from inception of the clinic to the present, regardless as to if the contract is still pending.

Request No. 5: If the clinic has changed ownership or opened from its inception to the present, provide the redacted closing statement, contracts or agreements entered into at the time of the sale, promissory notes, bills of sale, IRS Form 8594, IRS Form 941, and IRS form 4797.

Request No. 6: All documents identifying all individuals or entities that participate or share in any profits, in any manner, pertaining to the De Facto Clinics, including names, business addresses, and telephone numbers of each individual or entity, the nature of their profit sharing and interest, IRS schedule K1 form, purchase contract, stock certificates, stock restriction agreement, leases, assignments, etc.

Request No. 7: All stock certificates and financial records reflecting ownership of the De Facto clinics from the inception of the clinic to the present, including federal corporate income tax returns from the inception of the clinic to the present, and including both executed and non-executed copies.

Request No. 8: All financial records reflecting ownership of the De Facto clinics, from the inception of the clinic to the present, including Schedule "C" forms, Schedule "D" forms, capital gain losses or gains forms, Schedule "E" forms, any K-1 forms and any other evidence of earnings, assets, liabilities, gains, or losses pertaining to the De Facto clinics and to any business enterprise of any type in which the clinic is involved or has been involved.

Request No. 9: Dr. Vizcay's personal tax returns for 2006, 2007, and 2011.

Request No. 10: All documents identifying any person or entity that owns, or has any financial interest in, any equipment or furniture located within or utilized by the De Facto clinics, from the inception of the clinics to the present, including names, business addresses, telephone numbers, stat and end dates of ownership interest of

each individual or entity, and a detailed explanation of the type of equipment or furniture.

Request No. 12: All records as to who owned, rented, or leased the premises, land, or building where the De Facto clinics were located from the inception of the clinics to the present, including all oral/written agreements, contracts, or memorandums of understanding pertaining thereto.

Request No. 14: All insurance policies issued to or for the benefit of Dr. Vizcay, the De Facto clinics, from the inception of the clinics to the present, including the declarations page and any other documents showing: the insurer; the policy number; the dates the policy was in effect; the type of policy and coverages; the insurance agent that sold the policy; and the policy coverage limits (excluding your personal auto insurance or health insurance policy information).

Request No. 16: All documents reflecting the person selecting or entering into any agreements pertaining to all marketing and advertising for the De Facto clinics from the inception of the clinics to the present.

Request No. 17: All documents provided to any accountant or other person or entity that prepared or assisted with preparing your individual tax returns and the corporate tax returns for the De Facto Clinics from the inception of the clinics to the present.

Request No. 19: All documents showing any cash payments made by or on behalf of the De Facto clinics from the inception of the clinics to the present, to you and any employees or independent contractors providing any type of service to the clinics or on their behalf.

Request No. 20: All documents reflecting all capital contributions made by anyone or entity to, or for the benefit of, the De Facto clinics, from the inception of the clinics to the present.

Request No. 21: All documents reflecting communications between Dr. Vizcay and any person or entity regarding: the formation, ownership, operation and management of the business, hiring and firing of staff, handling income, expenses billing, and accounts receivable, and equipment purchase, leasing, maintenance and repairs.

Request No. 23: W-2 forms and 1099 forms for all employees and independent contractors of the De Facto clinics from the inception of the De Facto clinics to the present.

Request No. 24: All W-2 forms and 1099 forms issued by the De Facto clinics for the following suspected, but undisclosed, owners: Norge Romero, Eusevio Aquina, Ariel Santos, Miguel Moreno-Cardanas; Heather Green, and Enrique Toledo.

Request No. 25: All cash receipts and disbursement journals for Dr. Vizcay and the De Facto clinics, from the inception of the clinics to the present.

Request No. 26: All documents supporting all withdrawals classified as "journal entries" for the De Facto clinics, from the inception of the clinics to the present.

Request No. 27: All records of loans made to or from you, the De Facto clinics, from the inception of the clinics to the present.

Request No. 28: All financial records indicating the financial condition of the De Facto clinics, from the inception of the clinics to the present.

Request No. 29: All records of gifts made by the De Facto clinics to any person or entity from the inception of the clinics to the present.

Request No. 30: All records regarding money taken out of and monetary contributions made to the De Facto clinics from the inception of the clinics to the present.

Request No. 31: All cash receipts and disbursements of the De Facto clinics either kept in paper, book, or computer printout for the inception of the clinic to the present. If there are none in your possession, care, custody, or control, identify the custodian of these records, to the best of your knowledge.

Request No. 32: All corporate financial documents, including corporate records, statements of accounts, and ledgers for the De Facto clinics from the inception of the clinics to the present.

Request No. 33: All general ledger detail records the De Facto clinics kept in paper, book, or computer printout from the inception of the clinics to the present.

Request No. 34: All ownership documents for all vehicles claimed on the De Facto clinics' tax returns, including vehicle registrations and insurance from the inception of the clinics to the present.

Request No. 40: All checks from bank accounts held by you, the De Facto clinics, and checks issued on behalf of, or for the benefit of, you, the De Facto clinics, made payable to, or for the benefit of Norge Romero, Eusevio Aquina, Milly Sanchez, Ariel Santos, Miguel Moreno-Cardanas, Heather Green, and/or Enrique Toledo, from the inception of the clinics to the present;

Request No. 44: All documents reflecting your involvement in any management duties such as: managing, operating, or supervising the day to day operations of the De Facto clinics, including: decisions regarding hiring/firing of employees and

personnel; hours of operation; marketing and advertising; pricing, banking, and financial matters; record keeping; whether or not to initiate demand letters or litigation; obtaining insurance; paying invoices; any other functions typically associated with managing a business.

Request No. 45: All documents reflecting anyone other than your involvement in any management duties such as: managing, operating, or supervising the day to day operations of the De Facto clinics, including: decisions regarding hiring/firing of employees and personnel; hours of operation; marketing and advertising; pricing, banking, and financial matters; record keeping; whether or not to initiate demand letters or litigation; obtaining insurance; paying invoices; any other functions typically associated with managing a business.

Request No. 52: Any documents showing any person's or entity's explanation of your required duties and expectations as medical director for any and all health care facilities/clinics where you have ever served as medical director.

Requests Nos. 53 through 62 seek documents from May 4, 2007 to the present for Best Care, from July 14, 2004 to the present for Dana, and from October 17, 2005 to the present for P.V.C.

Request No. 53: For the Medical Director clinics, please provide documents, logs, spreadsheets, audit documentation, charts, etc. that shows your compliance with your medical director duties required to be performed pursuant to Florida Statutes and Florida Administrative Code.

Request No. 54: All records, documents, and materials of whatever nature you have in your possession, care, custody, or control regarding any audits that have been performed by you, as medical director, on the Medical Director clinics' billing records or billing procedures.

Request No. 55: Any logs or other documents showing you, as medical director, reviewed medical bills, medical records and all other insurance claim-related documents of the Medical Director clinics prior to submission to Plaintiffs to ensure they were accurate, fully, and properly completed.

Request No. 56: Any logs or documents showing you, as medical director for the Medical Director clinics ensured that all practitioners providing health care services or supplies to patients maintained a current, active, and unencumbered Florida license.

Request No. 57: Any logs or documents showing you, as medical director for the Medical Director clinics ensured reviewed any patient referral contracts or agreements executed by these clinics.

14

Request No. 58: Any logs or documents showing you, as medical director for the Medical Director clinics ensured that all health care practitioners at these clinics had active, appropriate certifications or licensure for the level of care being provided

Request No. 59: Any logs or documents showing you, as medical director for the Medical Director clinics ensured compliance with the record keeping and adverse incident reporting requirements for these clinics.

Request No. 60: Any logs or documents showing you, as medical director for the Medical Director clinics conducted systematic reviews of the clinics' billing to ensure that the billing was not fraudulent or unlawful, and that upon discovery of an unlawful charge, the medical director took immediate action.

Request No. 61: Any logs or documents showing you, or any representative or employee of the Medical Director clinics posted signs identifying the medial director in a conspicuous location within the clinic readily available to all patients.

Request No. 62: Any logs or documents showing you, as medical director for the Medical Director clinics served as the clinic records owner as defined in Florida Statute § 456.057.

**A.     Ownership Requests**

Plaintiffs assert that the Requests Nos. 1-10, 12, 14, 16-17, 19-21, 23-34, 40, 44-45, and 52 ("ownership requests") are relevant to Plaintiffs' allegations that Dr. Vizcay does not wholly own the De Facto clinics.

Upon consideration, the Court grants Requests Nos. 9, and 24, narrows Requests Nos. 7, 12, and 40, and denies the remaining ownership requests.[3]

Requests Nos. 9 and 24 are relevant to Plaintiffs' claims and narrowly tailored. Any argument by Dr. Vizcay that she does not have these documents in her individual capacity is

---

[3] While Dr. Vizcay may have concerns about the breadth of the financial information requested, subject to the limitations discussed in this order the requested discovery is relevant and discoverable. The parties' confidentiality agreement governing disclosure offers, during the discovery process, certain protections for documents designated as confidential.

unpersuasive as she must produce documents in her possession, custody, and control. See Fed. R. Civ. P. 34(a)(1). Accordingly, Requests Nos. 9 and 24 are **GRANTED**.

Request No. 40 is narrowed to checks issued by the De Facto clinics made payable to, or for the benefit of, Dr. Vizcay, Norge Romero, Eusevio Aquina, Milly Sanchez, Ariel Santos, Miguel Moreno-Cardanas, Heather Green, and/or Enrique Toledo, from the inception of the clinics to the present. Accordingly, Request No. 40 is **GRANTED in part**.

For Requests Nos. 1 though 6, Dr. Vizcay maintains that ownership in the De Facto clinics has not changed since each clinic's inception, and there are no other documents other than stock certificates and the Schedule K-1s responsive to these requests. Dr. Vizcay states that she will produce the stock certificates and has produced the clinics' Schedule K-1s reflecting all ownership in the clinics and all of the clinics' profits distributed to Dr. Vizcay. Accordingly, Requests Nos. 1 through 6 are **DENIED**. Request No. 7 is narrowed to the stock certificates from the inception of the De Facto clinics to the present. Accordingly, Request No. 7 is **GRANTED in part**.

Request No. 12 is narrowed to "all deeds, contracts, lease agreements, and mortgage agreements for the premises, land, and building where each De Facto clinic was located for the last five years." Accordingly, Request No. 12 is **GRANTED in part**.

The remaining ownership requests are overbroad. Accordingly, these requests are **DENIED**.

**B.    Requests Nos. 53 through 62**

Plaintiffs assert that Requests Nos. 53 through 62 relate to Plaintiffs' claims that Dr. Vizcay failed to comply with her duties as medical director for the Medical Director clinics. Dr. Vizcay responds that the documents sought in Requests No. 53 through 62 are not in her possession and adopts the objections asserted by the Medical Director clinics.

Requests Nos. 53 through 62 are relevant to Plaintiffs' claims and narrowly tailored. Although Dr. Vizcay states that the documents are not in her possession, she must produce documents in her possession, custody, and control. See Fed. R. Civ. P. 34(a)(1). Accordingly, Requests Nos. 53 through 62 are **GRANTED**.

Accordingly, and upon consideration, it is **ORDERED and ADJUDGED** that:

(1) Plaintiffs' Motion to Compel Better Responses from the Defendant DeFacto Clinics With Regard to Plaintiffs' Request to Produce (Dkt. 151) is **GRANTED in part and DENIED in part**;

(2) Plaintiffs' Motion to Compel Better Responses from the Defendant Medical Director Clinics With Regard to Plaintiffs' Request to Produce (Dkt. 159) is **GRANTED in part and DENIED in part**;

(3) Plaintiffs' Motion to Compel Better Responses from the Defendant Sara Vizcay, M.D., With Regard to Plaintiffs' Request to Produce (Dkt. 160) is **GRANTED in part and DENIED in part**.

(4) Defendants shall produce the requested discovery as set forth above within twenty (20) days of this order.

**DONE AND ORDERED** in Tampa, Florida on this 12th day of October, 2012.

ELIZABETH A JENKINS
United States Magistrate Judge