UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO. 8:11-CV-804-EAK-EAJ

ALLSTATE INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY,
ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY, ALLSTATE
FIRE AND CASUALTY INSURANCE
COMPANY, AND ALLSTATE VEHICLE
AND PROPERTY INSURANCE
COMPANY (F/K/A DEERBROOK
INSURANCE COMPANY, SUCCESSOR
BY MERGER TO NORTHBROOK
INDEMNITY COMPANY),

        Plaintiffs,

v.

SARA C. VIZCAY, M.D., BEST CARE MEDICAL
CENTER, INC., CALEB HEALTH CARE, INC.,
FLORIDA REHABILITATION PRACTICE, INC.
(F/K/A DANA MEDICAL CENTER, INC.),
GLOBAL DIAGNOSTIC CENTER, INC.,
PERSONAL MEDICAL CENTER, INC., P.V.C.
MEDICAL CENTER, INC., AND REGIONAL
ENTERPRISES FOR HEALTH CORPORATION,

        Defendants.
_____/

**DEFENDANTS' MOTION TO EXCLUDE
PLAINTIFFS' EXPERT WITNESS CONNIE COLEMAN**

DEFENDANTS SARA C. VIZCAY, M.D. ("VIZCAY"), BEST CARE MEDICAL CENTER, INC. ("BEST CARE"), CALEB HEALTH CARE, INC. ("CALEB HEALTH CARE"), FLORIDA REHABILITATION PRACTICE, INC. (f/k/a Dana Medical Center, Inc.) ("FLORIDA REHAB"), GLOBAL DIAGNOSTIC CENTER, INC. ("GLOBAL DIAGNOSTIC"), PERSONAL MEDICAL CENTER, INC. ("PERSONAL MEDICAL"), P.V.C. MEDICAL CENTER, INC. ("P.V.C."), AND REGIONAL ENTERPRISES FOR

CASE NO. 8:11-CV-804-EAK-EAJ

HEALTH CORPORATION ("REGIONAL ENTERPRISES") (collectively, "Defendants"), by their undersigned counsel, hereby file their Motion to Exclude Connie Coleman's Expert Report and to preclude her from testifying at trial as an expert witness.[1] For all the reasons set forth herein, Defendants respectfully submit that their Motion should be granted in all respects.

## INTRODUCTION

Plaintiffs ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, AND ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY'S (f/k/a DEERBROOK INSURANCE COMPANY, SUCCESSOR BY MERGER TO NORTHBROOK INDEMNITY COMPANY) (collectively, "ALLSTATE") offer as an expert witness Connie Coleman ("Coleman") and provided her Expert Report. Coleman should be excluded because her opinions, as rendered in her Expert Report (Ex. 1), will not assist the trier of fact, as there are no conclusions specific to any allegations made by ALLSTATE in its Complaint. Coleman does not make any conclusions regarding the issues at question in this case. Coleman does not reach any conclusions regarding the causes of action set out in the Complaint. Because Coleman does not make any conclusions that would assist the trier of fact, she should be excluded as an expert witness.

ALLSTATE initiated this action against the Defendants asserting causes of action for negligent misrepresentation, common law fraud, unjust enrichment and various causes of action for declaratory relief. ALLSTATE essentially alleges that the Defendants' bills were false because the facilities were either not properly licensed by the Agency for Health Care Administration ("AHCA")

---

[1] Alternatively, if Coleman is permitted to testify regarding individualized claims, the Defendants believe that their counterclaims should be reinstated, as further addressed below.

or the facilities were licensed by AHCA, but were not in compliance with the requirements under Chapter 400, because they did not have a medical director. ALLSTATE has very clearly taken the position that this case is limited to these broad, generalized issues and that no individualized issues regarding medical bills are at issue. In its Motion to Dismiss the Defendants' counterclaims, ALLSTATE argued that individualized issues are not at issue in this case and the counterclaims should be dismissed or abated because they involve individualized issues. [DE 95]. On July 25, 2012, the Court granted ALLSTATE's Motion to Dismiss finding the arguments "well taken and adopt[ed] it by reference [t]herein." [DE 147]. Notwithstanding ALLSTATE's arguments, it is now attempting to assert individualized defenses to the claims at issue.

ALLSTATE has hired Coleman to testify as an expert and provide opinions regarding medical documentation, CPT coding, compliance with administrative requirements and other immaterial issues. Coleman is not offering any opinions as to the ownership of CALEB HEALTH CARE, GLOBAL DIAGNOSTIC, REGIONAL ENTERPRISES or PERSONAL MEDICAL. (Ex. 2, Deposition of Coleman, pp. 23-25). Coleman is not offering any opinions as to whether or not BEST CARE, P.V.C. or FLORIDA REHAB are in compliance with the Medical Director requirements of Chapter 400. Coleman's opinions will not assist the trier of fact as the Complaint is limited to issues involving (1) ownership of the medical facilities, (2) compliance with the medical director duties, or (3) patient brokering. There are no allegations in the Complaint that the bills at issue were non-compensable for any reasons other than these three claims. Furthermore, Coleman made no conclusions regarding the actual bills that ALLSTATE alleges contained false information. Thus, Coleman's testimony would be outside the scope of the pleadings.

**ARGUMENT**

The admissibility of expert opinion testimony is governed by Federal Rule of Evidence 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993*); see also Lord v. Fairway Elec.*

*Corp.*, 223 F. Supp. 2d 1270, 1279 (M.D. Fla. 2002). As the Supreme Court recognized in *Daubert*, Rule 702 plainly contemplates that the district court will serve as a gatekeeper to the admission of scientific testimony. *Daubert*, 509 U.S. at 589; *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). The "gatekeeping role" of the trial judge is to ensure that scientific evidence is both *reliable* and *relevant* before being admitted. *See Lord*, 223 F. Supp. 2d at 1278; *Abramson v. Walt Disney World Co.*, 370 F. Supp. 2d 1221, 1222-23 (M.D. Fla. 2005); *Cartwright v. Home Depot U.S.A., Inc.*, 936 F. Supp. 900, 901 (M.D. Fla. 1996) (citation omitted). The judge's role is to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value. *See Abramson*, 370 F. Supp. 2d. at 1223. *Daubert* applies not only to testimony based on "scientific" knowledge, but also applies, as is relevant to this witness, to testimony supposedly based on "technical" and "other specialized" knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999); *Williams v. Michelin N. Am., Inc.*, 381 F. Supp. 2d 1351, 1359 n. 12 (M.D. Fla. 2005). Scientific expert testimony will be admissible when:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusion is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1309 (11th Cir. 1999) (citing *City of Tuscaloosa v. Harcros Chem., Inc.*, 158 F.3d 548, 565 n. 21 (11th Cir. 1998)); *see also Home Design Servs., Inc. v. Hibiscus Homes of Florida, Inc.*, 2005 WL 2465020 (M.D. Fla. 2005). "The Eleventh Circuit refers to these three considerations separately as 'qualification, reliability, and helpfulness,' *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004), and has emphasized that they are 'distinct concepts that courts and litigants must take care not to conflate.' *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 578 (N.D. Fla. 2009) (citations omitted). The consequences of failing to meet this burden are

Case 8:11-cv-00804-EAK-EAJ   Document 247   Filed 12/21/12   Page 5 of 19 PageID 2968

CASE NO. 8:11-CV-804-EAK-EAJ

clear. "If the underlying data are so lacking in probative force and reliability that no reasonable expert could base an opinion on them, an opinion which rests entirely upon them must be excluded." *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 179 F.R.D. 450, 457 (D. N.J. 1998) (quoting *In re Paoli Yard PCB Litigation*, 35 F.3d 717, 748 (3rd Cir. 1994). Here, Defendants are challenging the reliability and helpfulness of Coleman's expert testimony.

The standard for reliability of expert scientific evidence was the subject of the Supreme Court's seminal decision in *Daubert*, 509 U.S. 579. In that case, the Court concluded that the enactment of the Federal Rules of Evidence superseded the common law "general acceptance" test for admissibility of scientific evidence enunciated in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). Instead, the Court interpreted Rule 703 to require that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. In order to "establish a standard of evidentiary reliability," the Court emphasized that an expert's "inference or assertion must be derived by the scientific method" and, therefore, "[p]roposed testimony must be supported by appropriate validation-i.e., 'good grounds,' based on what is known." *Id*. at 590. Accordingly, a court must undertake "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. at 592-93.

Rule 702(a) provides that an expert may testify if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Preliminarily, therefore, out the outset, the Court must determine whether the expert is proposing to testify regarding "(1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592-93. The Court must determine whether the reasoning or methodology underlying the proposed testimony is scientifically valid and whether the reasoning or methodology properly can be applied to the facts at issue. *Id.* In order to

be admissible as expert testimony, the testimony needs to provide a helpful analysis to the Court in understanding a matter of scientific, technical or specialized expertise. In *Daubert*, the Court makes clear that this "helpfulness" criterion is primarily concerned with relevance.

> Rule 702 further requires that the evidence or testimony "assist the trier of fact to understand the evidence or **to determine a fact in issue**." This condition goes primarily to relevance. **"Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."** 3 Weinstein & Berger ¶ 702[02], p. 702-18. See also *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir.1985) ("An additional consideration under Rule 702-and another aspect of relevancy-is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute") ..... Rule 702's "helpfulness" standard requires a valid *18 scientific connection to the pertinent inquiry as a precondition to admissibility.

*Daubert*, 509 U.S at 591 (emphasis added). Proposed expert testimony fails this "helpfulness" prong if it is insufficiently specific – if it is insufficiently tied to the facts of the case – and/or if it is insufficiently reliable. *United States v. Frazier*, 387 F.3d 1244, 1262-63 (11th Cir. 2004). "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person. Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier,* 387 F.3d at 1262-63 (citation omitted) (citing *United States v. Rouco,* 765 F.2d 983, 995 (11th Cir.1985) (observing that expert testimony is admissible if it offers something "beyond the understanding and experience of the average citizen")).

A. <u>**Coleman's Opinions are Not Relevant to the Facts as Alleged in the Pleadings**</u>.

Coleman's opinions do not fit the facts of this case. In order to "fit," expert testimony "must have a traceable and analytical basis in objective fact." *Bragdon v. Abbott,* 524 U.S. 624, 653 (1998). Coleman's testimony is based upon an unidentified, nebulous standard that she has created from whole cloth as there is nothing alleged in the Complaint to establish that ALLSTATE is contesting any of the actual services in this case. Therefore, Coleman's conclusions do not "fit" the issues in

this case. *See Floorgraphics, Inc. v. News America Marketing In-Store Services, Inc.*, 546 F. Supp. 155, 177 (D.N.J. 2008)

In its Motion to Dismiss the Defendants' Counterclaims, ALLSTATE asserted:

> The Complaint and Statement of Particulars filed in this action contains thorough facts, but a summary of the facts will be provided for purposes of this Motion to Dismiss. ALLSTATE issued automobile insurance policies that provided Personal Injury Protection ("PIP") coverage to its insureds specified in "Exhibit A" of Plaintiff's Complaint and Statement of Particulars. ALLSTATE made some PIP payments on behalf of its insureds to the Defendant clinic. Additionally, ALLSTATE was billed for some services allegedly rendered to its insureds that have not been paid as a result of the services not being lawfully rendered.
>
> On April 12, 2011 ALLSTATE filed the present litigation against seven (7) Defendants listed above. During the pertinent timeframe specified in the Complaint, Sara C. Vizcay, M.D. ("VIZCAY") claimed to wholly own four (4) of the Defendant clinics: Caleb Health Care, Inc.; Global Diagnostic Center, Inc.; Personal Medical Center, Inc.; and Regional Enterprises for Health Corporation. These four (4) clinics will be collectively referred to as the "DE FACTO CLINICS." ALLSTATE seeks recovery from the DE FACTO CLINICS and VIZCAY for services rendered to one hundred and ten (110) patients **on the common basis of these clinics and VIZCAY misrepresenting the true owners in order to allow these clinics to operate and seek Personal Injury Protection benefits** as specifically described in the Complaint.
>
> ALLSTATE also seeks recovery from three other Defendant clinics, Best Care Medical Center, Inc.; Florida Rehabilitation Practice, Inc. (f/k/a Dana Medical Center, Inc.); and P.V.C. Medical Center, Inc. (hereinafter referred to as the "MEDICAL DIRECTOR CLINICS") and VIZCAY for services provided to one hundred and thirty seven (137) patients **on the common basis of the required medical director, VIZCAY, failing to comply with her statutorily required duties as medical director**, as specifically described in the Complaint.
>
> ALLSTATE further seeks four (4) separate declarations by the Court. One of the declaration counts seeks a common declaration pertaining to four (4) Defendant clinics and one hundred and ten (110) patients. One declaration seeks a common declaration pertaining to three (3) Defendant clinics and one hundred thirty seven (137) patients. One declaration seeks a common declaration pertaining to six (6) Defendant clinics and two hundred (200) patients. One declaration seeks a common declaration pertaining to all eight (8) Defendants and all two hundred forty seven (247) patients. If any of the counts alleged in the Complaint are disposed of in ALLSTATE's favor, then some or all of the bills for the two hundred and forty seven (247) claims would be deemed not compensable and the ruling would be dispositive for those claims.

**ALLSTATE's Complaint does not seek to raise individual defenses specific to the claims submitted for the two hundred forty seven (247) individual patients specified in "Exhibit A" of ALLSTATE's Complaint and Statement of Particulars.  As a result of the Complaint only bringing forth common issues, it does not individually address and detail every one of the two hundred forty seven (247) claim-specific defenses and affirmative defenses available to ALLSTATE**.  If ALLSTATE does not prevail on the counts raised in the Complaint, it does not automatically follow that the bills are properly payable under Florida Statute §627.736 and ALLSTATE must pay same.

[DE 95, pp. 2-4] (emphasis added).

\* \* \*

In the subject action, ALLSTATE has alleged that all of the Defendants engaged in fraudulent billing practices as they each billed for services that were not lawfully rendered such that they each were not entitled to the payment of PIP benefits.  However, the Defendant clinics counted in their Counterclaim that ALLSTATE breached the subject contracts in regards to 247 individual PIP claims.  **Like the plaintiff in Eckerd, ALLSTATE's action does not require a claim by claim analysis, but instead a global approach regarding the general corporate structure, corporate practices, and licensing compliance of each of the subject Defendant clinics.**  However, like the defendant in Eckerd, the Defendant clinics are attempting to bring 247 individual patient claims, **each with its own issues and additional defenses, all of which are not logically related to the specific underlying issues presented by ALLSTATE in the subject litigation**.  As such, the subject counterclaim is improper as it did not arise from the same transaction or occurrence as the underlying ALLSTATE lawsuit.  Thus, the dismissal of same is appropriate.

[DE 95, pp. 10-11] (emphasis added).

\* \* \*

Moreover, without a stay/abatement of the Counterclaim, the parties will be required to conduct an extensive amount of discovery that is solely related to the Counterclaim and not the underlying action by ALLSTATE.  This will only serve to muddy the water and cloud the issues presented by ALLSTATE.  This is demonstrated in the fact that **ALLSTATE's action is specifically tailored to the business practices of the Defendants and does not address each of the 247 individual purported breach of contract claims cited in the Counterclaim**.

Lastly, to not stay/abate the subject Counterclaim would require that the current deadlines, including for expert disclosures, the completion of discovery, mediation and the trial of ALLSTATE's dispositive action, be rescheduled so that ALLSTATE would be afforded the opportunity to conduct a level of discovery that would **allow it to properly mount its many defenses to the subject Counterclaim, for 247 individual and unique PIP claims**.

[DE 95, pp. 13-14] (emphasis added).

When reduced to its most basic form, this case involves whether VIZCAY owned four of the Defendant facilities and whether she acted appropriately as the medical director of the other three. Coding, documentation and other claim-specific inquiries are not part of this case. Nowhere in the Complaint is there a single allegation regarding coding, documentation, or claim specific inquiries. When it successfully obtained a dismissal of the Defendants' counterclaims for breach of contract, ALLSTATE argued that its claims are limited to generalized issues regarding ownership and compliance with the medical director requirements of the licensing statute. It even claimed that it would need to conduct additional discovery if issues regarding the bills were at issue. Thus, all of Coleman's opinions, which rely upon her conclusions relating to individual bills, are irrelevant.

Coleman cannot be ALLSTATE's conduit for evidence regarding individual bills. ALLSTATE successfully excluded the Defendants' counterclaims for breach of contract regarding the bills at issue. Now, in addition to generalized claims regarding ownership and compliance with the medical director requirements of the licensing statute, ALLSTATE attempts to add additional claims through its expert. Coleman is not offering opinions on the only issues raised in the Complaint. ALLSTATE cannot point to any allegations in the Complaint regarding any of the issues raised by Coleman. The discovery in this case has been limited to the generalized issues as set forth in ALLSTATE's Motion to Dismiss. To permit ALLSTATE to successfully limit discovery to those issues, but then permit it to introduce the issues through an expert witness is unfair and improper. In short, Coleman has no relevant opinions to offer in this case as her opinions are outside the scope of the allegations made in the Complaint. The opinions would be relevant to the dismissed counterclaims and thus, if Coleman is permitted to testify, the Defendants request that the counterclaims be reinstated.

**B.     Coleman's Opinions are Nothing More Than Improper Legal Opinions.**

Coleman's opinions are improper for expert testimony as her opinions apply the legal standard she has created to a set of facts. Statutory construction is a legal determination to be made by the trial judge, with the assistance of counsels' legal arguments, not by way of "expert opinion." *See Edward J. Seibert v. Bayport Beach and Tennis Club Ass'n, Inc.*, 573 So. 2d 889 (Fla. 2d DCA 1990), review denied, 583 So. 2d 1034 (Fla.1991); *Devin v. City of Hollywood*, 351 So. 2d 1022 (Fla. 4th DCA 1976); *see also, Williams v State of Florida Department of Transportation*, 579 So. 2d 226 (Fla 1st DCA 1991) (It is the trial judges role to review the applicable codes, interpret the legal requirements thereof, and determine whether there has been compliance.); *Lee County v. Barnett Banks, Inc.*, 711 So. 2d 34, 34 (Fla. 2d DCA 1997) (expert testimony is not admissible concerning a question of law.) Allstate seeks to have Coleman apply the legal standard (the CPT code) to Defendants' CPT coding and medical documentation, essentially instructing the jury on the issue of the Defendants' compliance (or non compliance) with Florida law.

Expert opinions which contain conclusions of law, rely on speculation and which would not assist the trier of fact are properly excluded. *Holman Enterprises v. Fidelity and Guar. Ins. Co.*, 2008 WL 2600989 (D.N.J. 2008). The Court in *Holman* stated:

> "The district court must limit expert testimony so as to not allow experts to opine on "what the law required" or "testify as to the governing law." *United States v. Leo,* 941 F.2d 181, 196-97 (3d Cir.1991). This prohibition on experts testifying as to their own legal conclusions is " 'so well established that it is often deemed a basic premise or assumption of evidence law-a kind of axiomatic principle.' In fact, every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law." *Casper v. SMG,* 389 F.Supp.2d 618, 621 (D.N.J.2005) (quoting *In re Initial Public Offering Sec. Lit.,* 174 F.Supp.2d 61, 64 (S.D.N.Y.2001))."

Compliance with Fla. Stat. § 627.736(4)(b), (5)(b) and (5)(d) are not at issue in this case. Notwithstanding the lack of any allegations in the Complaint pertaining to these provisions, this Court would have to first decide what the legal requirement is in order to comply with Fla. Stat. § 627.736(4)(b), (5)(b) and (5)(d). These are legal standards which are not open to expert interpretation.

Coleman cannot be permitted to interpret these provisions and provide expert testimony regarding compliance with same. *See St. Cyr v. Flying J Inc.*, 2008 WL 2608127 (M.D. Fla. 2008)("Rule 704 was not intended to allow experts to offer opinions embodying legal conclusions"); *Craggs Const. Co. v. Federal Ins. Co.*, 2007 WL 1452927 (M.D.Fla. 2007)(court granted motion to strike expert testimony and held that experts opinions were a series of legal conclusions which were beyond the purview of expert testimony); *Brevard Emergency Services, P.A. v. EmCare, Inc.,* 2006 WL 2425423 (M.D.Fla. 2006)(expert was not allowed to testify regarding applicable "insurance laws" or provide legal opinion about proper claims processing); *Dubiel v. Columbia Hosp. Ltd. Partnership*, 2005 WL 5955691 (S.D.Fla. 2005) (expert opinion that evaluates credibility of witnesses, weighs the evidence, and then draws conclusions by applying his understanding of the law to his own factual determinations is improper). This Court must be the jury's only source of law. *Montgomery v. Aetna Casualty & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir.1990). Therefore, Coleman cannot provide any testimony on any subject matter contained within her expert report.

Coleman's Report does not meet the reliability or relevance standards established by *Daubert*. First, as to reliability, Coleman does not utilize any scientific methodology in reaching her opinions that are supported by any appropriate validation. Coleman states that she was asked to "review and opine on the coding and billing practices" of the Defendant clinics. [Ex. 1, p. 3]. Coleman's method for undertaking this review is insufficient. All Coleman does is look at a collection of bills from each of the Defendant clinics, provide an overview of coding systems and some of the possible codes that were either billed by the Defendant clinics or could have been billed, and concludes that the facilities engaged in "questionable coding" practices. Coleman further opines that the use of form bills do not provide for fair and accurate selection of all possible E/M codes which could lead to the submission of claims that are improper. Coleman, however, does not conclude that the Defendants submitted any bills that were actually improper.

In order to meet the relevance standard by assisting the trier of fact, there needs to be a helpful analysis and a sufficient connection to the facts of the case. The testimony must concern matters that are beyond the understanding of the average lay person and must be something more than what ALLSTATE's attorneys can argue in closing argument. Coleman's report does not rise to these standards. As stated above, Coleman simply reviewed a set of bills from each of the Defendant clinics, and opined that the use of one form bill could lead to the submission of improper bills and that the documentation was insufficient. Coleman's opinion regarding the omission of possible E/M codes is simply based upon a review of the form bills and the pattern that is reflected by those bills. The jury could reach that conclusion by looking at the bills without Coleman's proffered testimony. However, this is not relevant due to the Defendants' counterclaims for breach of contract being dismissed from this lawsuit based upon ALLSTATE's assertion that the individual bills were not at issue.

Coleman does not take into account the services provided by each doctor in each bill and does not reach any conclusion that will assist the trier of fact. Coleman's testimony that the Defendant clinics form bill does not adequately include every possible E/M code is irrelevant to any issues presented in this case as ALLSTATE's claims involve ownership and compliance with Chapter 400 – NOT coding challenges. In fact, a challenge to coding or an individual bill submission would only be permitted if the actual breach of contract claims were being litigated – which they are not. Whether or not the form bills contain every possible E/M code is not relevant to ALLSTATE's claim of negligent misrepresentation related to the bills and allowing Coleman to offer extensive testimony regarding the alleged shortcomings of the bills is a waste of limited trial time. Further, allowing irrelevant testimony to be presented to the jury through a purported expert serves no purpose other than to confuse and wrongfully sway the jury. CPT coding, medical documentation and the myriad of other alleged statutory or administrative violations asserted by

Coleman are not at issue in this lawsuit.

Notwithstanding that this case does not involve ALLSTATE's challenge to any CPT coding or medical documentation requirements, a jury could easily determine if the CPT codes selected by the Defendants accurately represent the services which were performed by the Defendants. The assistance of an expert is not permitted to tell a jury that the services performed by Defendants are different than the CPT codes which were identified on the bills submitted to ALLSTATE. In fact, Coleman did not even analyze these bills. Expert testimony "must be directed to matters within the witness' scientific, technical or specialized knowledge and not to lay matters which a jury is capable of understanding without the expert's help." *Andrews v. Metro North Commuter R. Co.*, 882 F.2d 705, 708 (2nd Cir. 1989) (citing *McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1272 (6th Cir. 1988); *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055-56 (4th Cir. 1986). Coleman's opinions are not the proper subject of opinion testimony because the Court may provide the jury with the legal requirements for bill submissions pursuant to the Florida Statutes (if relevant) and the jury will use common logic to make the relevant decisions. For all the reasons set forth above, Coleman should be excluded as an expert in this case.

**C.      Coleman's Opinions are Not Reliable.**

Expert testimony may be admissible when the expert is qualified to testify competently on the issue in question and the methodology employed is sufficiently reliable. Every opinion offered by Coleman arises out of her interpretation of the legal requirements applicable to bill submissions under Fla. Stat. §627.736 and her application of those standards to Defendants' billing and medical records. Coleman's opinions do not meet the requirement for reliability.

First, Coleman does not assert that the "research, studies and reports" that she utilized in rendering her opinions are the same information relied upon by experts in the field. Additionally, she has not cited any instances of peer review, publications, or common methods utilized by others

in the industry relating to her methodology for analyzing CPT coding rules. Coleman utilized the following list of "sources" and "authorities" in arriving at her expert opinions:

- Physicians Current Procedural Terminology (CPT)
- F.S. 627.736(5)(d)
- Department of Health and Human Services, Office of the Inspector General, OIG Compliance Program for Individual and Small Group Practices.
- American Medical Association
- American Health Information Management Association
- American Hospital Association
- American Managed Care and Review Association
- American Peer Review Association
- Blue Cross and Blue Shield Association
- Health Insurance Association of America
- 65 FR 59434, October 5, 2000
- FAC 64B8-9.003 – Standards for Adequacy of Medical Records
- F.S. 458.331
- F.S. 456.072(2)
- Health Care Fraud & Abuse, A Physicians Guide to Compliance, Second Edition
- Health Insurance Portability and Accountability Act of 1996
- "Update: Maintaining a Legally Sound Health Record – Paper and Electronic"- Journal of AHIMA
- The AMA 1995 Spring Newsletter
- Health Care Financial Administration's National Correct Coding Policy Manual for Part B Medicare Carriers, 2d ed.
- F.S. 627.732(15)
- The Department of Justice, Healthcare Fraud Report, Fiscal Year 1998
- F.S. 817.234
- F.S. 641.19(14)
- F.S. 641.52(5)
- F.S. 456.072
- The Federal Bureau of Investigation, Financial Crimes Report to the Public, Fiscal Year 2006
- ACR Practice Guidelines for Communication of Diagnostic Imaging Findings, American College of Radiology (10/01/05)
- APTA Professional Ethics – Overview, American Physical Therapy Association
- "APTA Position on One-on One and the Group Codes Under Medicare" American Physical Therapy Association, December 12, 2007
- CPT Assistant 1993 to 2007
- CPT Reference of Clinical Examples, AMA
- "Defensible Documentation Elements" American Physical Therapy Association
- "Documentation Review Sample Checklist. Review for Medical Records Documentation." American Physical Therapy Association
- MAG Mutual Healthcare Solutions

- Evaluation and Management Documentation Guidelines, U.S. Department of Health & Human Services, Centers for Medical and Medicaid Services
- National Certification Examination Candidate Handbook, National Certification Board for Therapeutic Massage and Bodywork, May 2005
- "Physical Therapy in Physicians Offices," Department of Health and Human Services
- "Presidents Council on Integrity and Efficiency and Executive Council on Integrity and Efficiency." Quality Standards for Inspections, January 2005
- PT Magazine
- "The ABCs of CPT Coding" American Physical Therapy Association, PT Bulletin
- "Standards of Ethical Coding" American Health Information Management Assoc.
- "The Audit Process" Office of Inspector General, Office of Audit Services, Second Edition, January 3, 2005
- F.S. 456, 458, 480, 486, 607.0831, 627.732, 627.736, 817.234, FAC 64B-3.001, FAC 64B-8-10.002, FAC64B8-9.003, FAC 64B8-9.0075, FAC 64B8-9.011
- "In the absence of written criteria, [Coleman] applied her clinical and professional expertise in the medical and coding professions…

Although Coleman identifies a handsome list of resources, the lack of peer-review support leads to the conclusion that this is simply her personal opinion of the relevant and useful standards applicable to Florida No Fault. It is this Court's responsibility to ensure that any expert testimony which is presented to the jury is reliable. Coleman's expert testimony does not meet the standards of scientific reliability mandated by *Daubert*. In fact, Coleman's opinions are predicated on several improper legal standards such as her opinion that the lack of documentation in the medical record results in "billing for services not rendered." During Coleman's deposition she provided the following testimony:

> **Coleman:** My opinion is that to the manner of the CPT coding, from a standpoint that it requires certain evidence to support that it was rendered. And whether or not massage was performed and whether or not they think what they did was massage, without that clarity in the documentation, then I don't know that a patient, for that matter, would know that massage, from a coding standpoint, was performed. For example, the code is 15 minutes. Did they get 15 minutes? Was it performed by a machine? Was it mechanical? Was it manual? Was it performed in conjunction with anything else that would be considered unbundled? The documentation does not state with clarity in part of performing the services, documenting the service, so to the extent what the code represents -- what the code represents was not performed.

(Ex. 2, P. 44, Lines 1-17)

15

> **Simoes:**  And as it pertains to the analysis that you've performed on the remaining CPT codes in your report, and I'll just ask this as a comprehensive question, just to short circuit, are all of your opinions based on the documentation that you've been provided? Is that the information that you're looking at to come to your opinions?
>
> **Coleman:**  Well, without any documentation to review, I guess, conversely, I would not have any opinions. But it's the analysis of the documentation that was reviewed that allowed me to formulate my opinions.

(Ex. 2, P. 51-52)

These predicate opinions are based upon flawed methodology, incorrect legal assumptions and Coleman's own theories. Coleman does not provide any basis (legal or factual) to support the foregoing statements which create the basis for all of Coleman's opinions. Furthermore, Coleman's opinions are neither "objective nor independent" as required under the relevant analysis. Coleman's testimony amounts to nothing more than "subjective belief or unsupported speculation" expressly addressed by *Daubert*. Neither *Daubert* nor the Federal Rules of Evidence require a court to admit proffered opinions that are "connected to existing data only by the *ipse dixit* of the expert." *Michigan Millers Mut. Ins. Corp. v. Benfield,* 140 F.3d 915, 921 (11th Cir.1998) (quoting *General Electric Co. v. Joiner,* 552 U.S. 136, 146 (1997)).

Opinion testimony that amounts to nothing more than rank speculation or a witness's subjective belief is inadmissible. *See Daubert, 509 U.S. at 590 (*"Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation;") *Rogers v. Ford Motor Co.,* 952 F. Supp. 606, 615 (N.D. Ind. 1997) ("the district court's foremost objective must be to rule out subjective belief or unsupported speculation"). Furthermore, Coleman conceded that she has no knowledge of what State Farm's No Fault adjusters utilize in making payment decisions for any of the claims at issue. In sum, other than purely personal opinions, Coleman's expert opinions are of no value and invade the province of the jury.

CASE NO. 8:11-CV-804-EAK-EAJ

## CONCLUSION

For all the reasons set forth herein, Defendants BEST CARE MEDICAL CENTER, INC., CALEB HEALTH CARE, INC., FLORIDA REHABILITATION PRACTICE, INC. (f/k/a Dana Medical Center, Inc.), GLOBAL DIAGNOSTIC CENTER, INC., PERSONAL MEDICAL CENTER, INC., P.V.C. MEDICAL CENTER, INC., and REGIONAL ENTERPRISES FOR HEALTH CORPORATION respectfully request that this Court enter an Order striking the Plaintiff's expert Connie Coleman as an expert witness in this case, together with such other and further relief as the Court may deem just and proper.

## LOCAL RULE 3.01(g) CERTIFICATION

I HEREBY CERTIFY that I personally contacted Counsel for Plaintiffs in a good faith effort to resolve the issues raised in this Motion. However, the parties were unable to resolve this dispute.

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

CASE NO. 8:11-CV-804-EAK-EAJ

DATED:  December 21, 2012        _____
ERIC LEE (Bar No. 961299)
lee@leeamlaw.com
LEE & AMTZIS, P.L.
5550 Glades Road, Suite 401
Boca Raton, FL 33431
Telephone: 561/981-9988
Facsimile:  561/981-9980

THE SIMOES LAW GROUP
KIMBERLY P. SIMOES (Bar No. 109479)
120 S. Woodland Ave., Ste. 213
Deland, FL  32720
Telephone: 386/490-4360
Facsimile:  386/738-0701
ksimoes2@cfl.rr.com

Eiffert & Associates, P A
Crystal Eiffert, Esq.
ceiffert@ealawgroup.com
122 E Colonial Dr., Ste. 210
Orlando, FL 328011219
Telephone:  (407) 244-1980
Facsimile:  (407) 244-1981
**Attorneys for Defendants**

CASE NO. 8:11-CV-804-EAK-EAJ

## SERVICE LIST

Masten, Lyerly, Peterson & Denbo, LLC
Tammy B. Denbo, Esq.
Donald J. Masten, Esq.
6730 W. Linebaugh Ave., Ste. 101
Tampa, FL  33625

Callahan & Martinez, LLC
Daniel A. Martinez, Esq.
Inguna Varslavane-Callahan, Esq.
Kelly J. McAuley, Esq.
2935 1st Ave., Flr. 2
St. Petersburg, FL  33713