UNITED STATES DISTRICT COURT
IN AND FOR THE MIDDLE DISTRICT
OF FLORIDA

CASE NO: 8:11-cv-00804

ALLSTATE INSURANCE COMPANY;
ALLSTATE INDEMNITY COMPANY;
ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY;
ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY; and
ALLSTATE VEHICLE AND PROPERTY
INSURANCE COMPANY (F/K/A DEERBROOK
INSURANCE COMPANY, SUCESSOR BY
MERGER TO NORTHBOOK INDEMNITY
COMPANY),

       Plaintiffs,

vs.

SARA C. VIZCAY, M.D.; BEST CARE
MEDICAL CENTER, INC.; CALEB
HEALTH CARE, INC.; FLORIDA
REHABILITATION PRACTICE, INC.
(F/K/A: DANA MEDICAL CENTER, INC.);       **DISPOSITIVE MOTION**
GLOBAL DIAGNOSTIC CENTER, INC.;
PERSONAL MEDICAL CENTER, INC.;
P.V.C. MEDICAL CENTER, INC.;and
REGIONAL ENTERPRISES FOR
HEALTH CORPORATION,

       Defendants.

_____/

## DEFENDANT, SARA C. VIZCAY, M.D.'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW AND REQUEST FOR ORAL ARGUMENT

COMES NOW, the Defendant, SARA C. VIZCAY, M.D., by and through her undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Florida Middle District Local Rule 3.01, and hereby files her Motion for Final Summary Judgment and Memorandum of Law in Support thereof and accompanying request for oral argument pursuant

to Florida Middle District Rule 3.01(j) not to exceed sixty (60) minutes and in support thereof states as follows:

<u>**INTRODUCTION**</u>

In April of 2012, six (6) Allstate entities (collectively referred to as "Allstate") initiated this action against Dr. Sara Vizcay, M.D. ("Dr. Vizcay") and seven (7) different medical facilities (collectively referred to as "defendants") (Doc. No. 1). Allstate's complaint includes claims for negligent misrepresentation, common law fraud, unjust enrichments, and declaratory relief regarding pending claims submitted by the Defendant medical facilities owned by Dr. Vizcay[1], and submitted by the Defendant medical facilities at which Dr. Vizcay was the medical director[2]. (Doc. No. 1).

As it relates to Dr. Vizcay, boiled down, Allstate's claims are (1) that Dr. Vizcay does not "wholly own" the facilities that she claims to own[3], and that therefore the services rendered by and billed by these facilities are unlawful and should not have been paid by Allstate, and (2) that for the facilities at which Dr. Vizcay was the medical director[4], Dr. Vizcay did not comply with her statutory medical director duties, therefore the services rendered by and billed by these facilities are unlawful and should not have been paid by Allstate (Doc. 1). Allstate seeks from all Defendants the return of insurance benefits it paid directly to these seven (7) medical facilities through claims for negligent misrepresentation, common law fraud, and unjust enrichment (Doc.

---

[1] The medical facilities owned by Dr. Vizcay are Caleb Health Care, Inc., Global Diagnostic Center, Inc., Personal Medical Center, Inc., and Regional Enterprises for Health Corporation. These medical facilities are also listed as Defendants to this action.
[2] Dr. Vizcay was the medical director at Best Care Medical Center, Inc., Florida Rehabilitation Practice, Inc. (f/k/a Dana Medical Center, Inc.), and P.V.C. Medical Center, Inc. These medical facilities are also listed as Defendants to this action.
[3] Caleb Health Care, Inc., Global Diagnostic Center, Inc., Personal Medical Center, Inc., and Regional Enterprises for Health Corporation.
[4] Best Care Medical Center, Inc., Florida Rehabilitation Practice, Inc. (f/k/a Dana Medical Center, Inc.), and P.V.C. Medical Center, Inc.

1). Allstate also seeks a declaration from this Court as to whether the unpaid claims submitted by these seven (7) medical facilities are payable.

The very simple reality is (1) Dr. Vizcay did not submit any of the bills that form the basis of Allstate's claims, (2) Dr. Vizcay was not paid anything by Allstate for any of the claims submitted by the seven (7) medical facilities, (3) Dr. Vizcay did comply with her medical director duties, and (4) Dr. Vizcay does "wholly own" her facilities.  There are simply no facts to support Allstate's common law claims, and certainly no allegations to support a claim for declaratory relief against Dr. Vizcay as it relates to the payments made and bills outstanding in this case. As such, Dr. Sara Vizcay hereby move this Court for an Order Granting her Motion for Summary Judgment.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of Final Summary Judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The moving party bears the burden in this regard. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324-325 (1986). In assessing whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. *See Batey v. Stone*, 24 F.3d 1330, 1331 (11th Cir. 1994).

The purpose of a summary judgment is to eliminate the needless delay and expense occasioned by an unnecessary trial. *Celotex* at 322, 323. Thus, when a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-movant cannot rely on bear assertions, conclusory statements, surmises or conjectures but must "go beyond the pleadings and by [his]

own affidavits, or by the depositions, answers to interrogatories and omissions on file, designate specific facts showing there is a genuine issue for trial." *Celotex* at 325.

## UNDISPUTED MATERIAL FACTS

1.       It is undisputed that Dr. Vizcay was a licensed medical doctor in the State of Florida during all relevant times.

## DISPUTED MATERIAL FACTS

1.       Dr. Vizcay, was employed under an agreement with BEST CARE MEDICAL CENTER, INC. ("Best Care"), and from October 12, 2004 through the date of the filing of the Complaint in this matter, she served as the Medical Director of Best Care. (Exhibit "A" – Declarations of Dr. Dr. Vizcay)

2.       Dr. Vizcay provided healthcare services to Best Care's patients and was paid by Best Care to provide healthcare services. (Exhibit "A" – Declarations of Dr. Dr. Vizcay)

3.       Dr. Vizcay was employed under an agreement with DANA MEDICAL CENTER, INC. ("Dana"), and from March 2004 through the filing of the Compliant in this matter, she served as the Medical Director of Dana. (Exhibit "A" – Declarations of Dr. Dr. Vizcay)

4.       Dr. Vizcay provided healthcare services to Dana's patients and was paid by Dana to provide healthcare services. (Exhibit "A" – Declarations of Dr. Dr. Vizcay)

5.       Dr. Vizcay was employed under an agreement with P.V.C. MEDICAL CENTER, INC. ("P.V.C."), and from September 30, 2005 through the filing of the Complaint in this matter, she served as the Medical Director of P.V.C. (Exhibit "A" – Declarations of Dr. Dr. Vizcay)

6.       Dr. Vizcay provided health care services to P.V.C.'s patients and was paid by P.V.C. to provide healthcare services. (Exhibit "A" – Declarations of Dr. Dr. Vizcay)

7.     During the time Dr. Vizcay served as the medical director for Best Care, Dana, and P.V.C., all bills and medical records were submitted by the respective medical facilities to Allstate for reimbursement. (Exhibit "A" – Declarations of Dr. Dr. Vizcay)

8.     During the time Dr. Vizcay served as the medical director for Best Care, Dana, and P.V.C, she did not personally submit any medical bills to Allstate for medical services rendered at Best Care, Dana, and P.V.C. (Exhibit "A" – Declarations of Dr. Dr. Vizcay)

9.     During the time Dr. Vizcay served as the medical director for Best Care, Dana, and P.V.C., she never received payment directly from Allstate for medical services rendered at Best Care, Dana, and P.V.C. (Exhibit "A" – Declarations of Dr. Dr. Vizcay)

10.     Dr. Vizcay has never received any payments directly from Allstate for medical services rendered to any of the patients listed in Allstate's complaint. (Exhibit "A" – Declarations of Dr. Dr. Vizcay)

11.     Dr. Vizcay owns all the stock in CALEB HEALTH CARE, INC. ("Caleb"), PERSONAL MEDICAL CENTER ("Personal"), GLOBAL DIAGNOSTIC CENTER, INC. ("Global") and REGIONAL ENTERPRISES FOR HEALTH CORPORATION ("Regional"). (Exhibit "A" – Declarations of Dr. Dr. Vizcay)

12.     Dr. Vizcay is the sole owner of Caleb, Global, Regional, and Personal. (Exhibit "A" – Affidavit of Dr. Vizcay)

13.     Sara Vizcay received a K-1 for all profits of Caleb, Global, Regional, and Personal and paid income taxes on these businesses through her personal tax returns. (Exhibit "A" – Affidavit of Dr. Vizcay)

14.     Sara Vizcay is the only individual that made any capital investments in Caleb, Global, Regional, and Personal. (Exhibit "A" – Affidavit of Dr. Vizcay)

15.     At all times when Caleb, Global, Regional, and Personal were doing business, Dr. Vizcay participated in the management and control of the business operations including the decision to hire or fire personnel, decided who would have access to the business accounts and purchased equipment and medical supplies. (Exhibit "A" – Affidavit of Dr. Vizcay)

16.     Dr. Vizcay was and is the only person that had the power to cease operations at Caleb, Global, Regional, and Personal and she did, in fact, cease operations in June, 2011. (Exhibit "A" – Affidavit of Dr. Vizcay)

17.     After ceasing operations at Caleb, Global, Regional, and Personal, Dr. Vizcay sold the equipment and other tangible assets of the facilities and deposited that money into her personal accounts. (Exhibit "A" – Affidavit of Dr. Vizcay)

18.     Dr. Vizcay is the only individual that has collected and retained any outstanding accounts receivable from Caleb, Global, Regional, and Personal and no other individual has any rights to the assets of Caleb, Global, Regional, and Personal. (Exhibit "A" – Affidavit of Dr. Vizcay)

## ARGUMENT

## I.     DR. VIZCAY IS ENTITLED TO SUMMARY JUDGMENT AS TO ALLSTATE'S CLAIM FOR NEGLIGENT MISREPRESENTATION.

Count I of Allstate's complaint alleges a claim for negligent misrepresentation (Doc. 1 at 15-18). The essence of Allstate's claim for negligent misrepresentation is that the seven (7) medical facilities submitted bills and medical documentation that contained misrepresentations (Doc. 1 at 15-18). The specific misrepresentations alleged are (1) Dr. Vizcay was complying with her medical director duties, and (2) Dr. Vizcay "wholly owned" her clinics (Doc. 1 at 15-18). There is however no record evidence of any representations made to Allstate by Dr. Vizcay.

As Allstate has failed to present any evidence supporting a claim of negligent misrepresentation, Dr. Vizcay is entitled to summary judgment.

To prove negligent misrepresentation, Allstate must show that (1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation. *Atlantic National Bank of Florida v. Vest*, 480 So. 2d 1328, 1331 (Fla. 2d DCA 1985).

A.    **Allstate has failed to establish that Dr. Vizcay made any representations to Allstate.**

It is axiomatic that before there can be a "negligent misrepresentation", there must first be a representation. It appears from the Complaint that Allstate alleges Dr. Vizcay represented in the medical bills and medical documentation that she either "wholly owned" the facility, or that she was "complying with her medical director duties" (Doc. 1 at 15-18). There is no record evidence to support this claim. According to the undisputed affidavit of Dr. Vizcay, she never submitted any bills to Allstate for either the "medical director clinics" or the "de facto clinics." *See* Exhibit "A", Declarations of Dr. Sara C. Vizcay, MD. Where then are these alleged representations by Dr. Vizcay located? When were they made?

Furthermore, neither Dr. Vizcay, nor the medical facilities owe any duty to Allstate or its insureds to represent its ownership or compliance with medical director duties. These two areas of inquiry are specifically governed by the Agency for Health Care Administration and the Board of Chiropractic. There is no statutory or common law duty for any medical provider to have an

2501-001

insurance company determine whether it is in compliance with specific statutory provisions for which there is no civil penalty provided for.

As there is no record evidence of any representations made by Dr. Vizcay about her ownership of her clinics or her compliance with medical director duties, Allstate's claim for negligent misrepresentation must fail. As such, Dr. Vizcay is entitled to summary judgment as to Allstate's claim for negligent misrepresentation.

**B.     Allstate has failed to establish that Dr. Vizcay made material misrepresentations.**

Assuming for purposes of this argument that Dr. Vizcay is found to have made representations to Allstate in some form, this claim must nevertheless fail as Allstate has failed to establish that Dr. Vizcay's representations were "misrepresentations". Essentially, the only one who could ever find that Dr. Vizcay does not "wholly own" her clinics would by the Agency for Health Care Administration. Likewise, the only one who could find that Dr. Vizcay has not complied with her medical director duties is the Board of Chiropractic. Allstate has submitted no evidence that these agencies have found that Dr. Vizcay either does not own her clinics, or that Dr. Vizcay has not complied with any medical director duties. It is not for Allstate to delve into these areas of inquiry. What effect would a finding by a civil jury that Dr. Vizcay does not own her clinics or has not complied with any medical director duties have when the appropriate agencies have not found a violation? Without an appropriate finding of a violation of either the ownership statute or the medical director statute by the governing body Allstate is unable to prove that Dr. Vizcay made "misrepresentations" to Allstate. As such, Dr. Vizcay is entitled to summary judgment as to Allstate's claim for negligent misrepresentation.

### C.        Allstate has failed to show that it "justifiably" relied on misrepresentations

Finally, Allstate has failed to establish that it relied on any representations allegedly made by Dr. Vizcay. The only mention of Allstate "justifiably" relying on representations allegedly made by Dr. Vizcay is a single conclusory statement in Allstate's Complaint (Doc. 1 at 17 ¶93). Allstate has presented nothing more than legal conclusions. There are no facts to support this allegation. As Allstate issued payment based on the information contained in the medical bills and medical documentation, it is impossible for Allstate to show that it relied on anything else in deciding to issue payment. In the absence of any facts whatsoever to support Allstate's mere legal conclusions, summary judgment is appropriate in favor of Dr. Vizcay as to Allstate's claim for negligent misrepresentation.

## II.      DR. VIZCAY IS ENTITLED TO SUMMARY JUDGMENT AS TO ALLSTATE'S CLAIM FOR COMMON LAW FRAUD.

As a claim for negligent misrepresentation sounds in fraud, and the elements are essentially the same, Dr. Vizcay adopts the arguments set forth in section I above. *Drilling Consultants, Inc. v. First Montauk Sec. Corp.*, 806 F. Supp. 2d 1228 (M.D. Fla. 2011) ("Because a negligent misrepresentation claim 'sounds in fraud,' Rule 9(b) applies."). In summary, there is no evidence that Dr. Vizcay made any representations to Allstate regarding ownership of her clinics, or that Dr. Vizcay made any representations regarding her compliance with the medical director statutes. Additionally, there has been no finding by the Agency for Health Care Administration or the Board of Chiropractic that Dr. Vizcay has violated any applicable statutes. Finally, there is no evidence that Allstate "justifiably" relied on any representations regarding ownership or compliance with the medical director requirements. As such, Dr. Vizcay is entitled to summary judgment as to Allstate's claim for common law fraud.

III.    **DR. VIZCAY IS ENTITLED TO SUMMARY JUDGMENT AS TO ALLSTATE'S CLAIM FOR UNJUST ENRICHMENT.**

Count III of Allstate's complaint alleges a claim for unjust enrichment (Doc. 1 at 20-21). Allstate alleges the defendants collectively violated sections 627.736, 817.505, 460.4167, 400.9935, and 400.990 as well as Chapter 408 of the Florida Statutes and therefore the claims paid by Allstate were unlawful and should not have been paid by Allstate (Doc. 1 at 20-21). Allstate's claim for unjust enrichment against Dr. Vizcay fails on multiple levels, and as such Dr. Vizcay is entitled to summary judgment as Allstate's claim for unjust enrichment.

Pursuant to Florida law, in order to prevail on a claim for unjust enrichment, Allstate must prove (1) it has conferred a **direct benefit** on Dr. Vizcay; (2) Dr. Vizcay has **knowledge of the benefit**; (3) Dr. Vizcay **has accepted or retained the benefit** conferred; and (4) the circumstances are such that it would be **inequitable** for Dr. Vizcay to retain the benefit without paying for it. *14th & Heinberg, LLC v. Terhaar*, 43 So.3d 877, 882 (Fla. 1st DCA 2010) (*citing Golden v. Woodward*, 15 So.3d 664, 670 (Fla. 1st DCA 2009)) (emph. added). Allstate must prove that the benefit it conferred on Dr. Vizcay was a direct benefit, not merely an indirect benefit. *Court-Appointed Receiver of Lancer Offshore, Inc. v. The Citco Group*, 2011 U.S. Dist. LEXIS 34582 (March 30, 2011) (*citing Huntsman Packaging Corp. v. Kerry Packaging Corp*., 992 F.Supp. 1439. 1446 (M.D. Fla. 1998)); *Belfor USA Group v. Bray & Gillespie*, 2008 U.S. Dist. LEXIS 7076 (M.D. Fla. January 31, 2008) (*citing Am. Safety Ins. Serv. v. Griggs*, 959 So.2d 322, 331 (Fla. 5th DCA 2007) ("In order to prevail on an unjust enrichment claim, a plaintiff must show he **directly conferred** a benefit on the defendant.")); *Coffee Pot Plaza Partnership v. Arrow Air Conditioning & Refrigeration, Inc.*, 412 So.2d 883 (Fla. 2d DCA 1982); *E&M Marine Corp. v. First Union Nat'l Bank*, 783 So. 2d 311, 312 (Fla. 3d DCA 2001) ("Where unjust enrichment is asserted, a party is liable for services rendered only when he

requests the other party to perform the services or knowingly and voluntarily accepts their benefits.").

Additionally, a claim for unjust enrichment is properly founded on a theory of "unjust" enrichment and not on a "wrongful" enrichment. A claim for unjust enrichment is improper if the basis of the claim is an alleged "wrongful" act on the part of the defendant or one based on a statutory violation. *Guyana Tel. & Tel. Co. v. Melbourne Int'l Comms., Ltd.*, 329 F.3d 1241, 1245 n.3 (11th Cir. 2003); *Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288 (S.D. Fla. 2005). The reason of course is because the complaining party need not resort to an equitable claim for recovery if the enrichment complained of is wrongful. If as Allstate contends, there is a right to recovery for violating any of the statutory provisions it alleges were violated, then the statutes themselves would provide a right of action. If there is no right of action in the statutes, then there is a reason, and Allstate cannot circumvent that express exclusion of a right of recovery by asserting an equitable claim for relief.

## A. Allstate has failed to establish that it conferred a "direct benefit" on Dr. Vizcay.

In this case, Allstate's claim for unjust enrichment does not survive the first element in which Allstate must prove it conferred a **direct benefit** on Dr. Vizcay. In asserting its claim for unjust enrichment against Dr. Vizcay, Allstate has alleged in rather conclusory fashion that it "conferred a benefit" on Dr. Vizcay without setting forth exactly what the benefit was (Doc. 1 at ¶21). In fact to date, Allstate has failed to identify any benefit it has conferred on Dr. Vizcay, much less any direct benefit. Allstate's conclusion that it conferred a benefit on Dr. Vizcay smacks in the face of the general allegations contained in the Complaint wherein Allstate alleges that the respective medical facilities were **the only ones** that submitted bills to Allstate and that the respective medical facilities were **the only ones** who received payments directly from

Allstate (Doc. 1 at ¶27-28, 33-34, 46-47, 52-53, 60-61, 67-68, 75-76). The issue then is whether Dr. Vizcay is entitled to final summary judgment as to count I when the record is entirely void of any evidence of a direct benefit conferred on Dr. Vizcay by Allstate.

The record evidence reveals that Dr. Vizcay did not submit and bills to Allstate and Dr. Vizcay did not receive any payment from Allstate, nor did Dr. Vizcay have any anticipation of receiving payments from Allstate. *See* Exhibit "A". It is anticipated that Allstate will argue that the benefit conferred on Dr. Vizcay was the compensation she received from the medical facilities. This form of second-hand benefit however cannot support a claim for unjust enrichment.

An identical argument was made in the case of *Extraordinary Title Servs., LLC v. Fla. Power & Light* Co., 1 So. 3d 400 (Fla. 3d DCA 2009). In *Fla. Power & Light*, the Court addressed a claim for unjust enrichment asserted by an account holder against Florida Power and Florida Power's parent company. In affirming dismissal of the unjust enrichment claim against the parent company, the Third DCA reasoned that there was no contract between the plaintiff and the parent company, there were no payments made by the plaintiff to the parent company, and the parent company provided no services to the account holder. Not only did the Third DCA dismiss the case, but went on to note that the plaintiff **could never "establish" it conferred a direct benefit on the parent company**. *Id.* at 404 (emph. added).

In reaching its decision, the *Fla. Power & Light* Court relied on the case of *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996). In *People's Nat'l*, Southeast Bank entered into participation agreements with five other lenders, including People's National, for the purpose of issuing loans to a developer. Southeast Bank was responsible for collecting payments from the developer and then remitting payments to each of

the five participant lenders as agreed. Peoples National alleged the four (4) other participating lenders collected overpayments from Southeast Bank, and People's National and sued the other lenders under a theory of unjust enrichment. In affirming dismissal of the unjust enrichment claim, the Third DCA reasoned that "Peoples National, could not and did not allege that it had directly conferred a benefit on the defendants, the other participant lenders. In actuality, if any benefit was conferred upon each participant lender in the form of overpayments, it could only have been conferred upon them by Southeast [Bank], not Peoples National." *Id*. at 879.

The same result has been reached by federal courts interpreting a Florida state law claim for unjust enrichment. In the case of *W. Coast Life Ins. Co. v. Life Brokerage Partners. LLC*, 2009 U.S. Dist. LEXIS 81650 (S.D. Fla. Aug. 11, 2009) (magistrate report and recommendations adopted at *W. Coast Life Ins. Co. v. Life Brokerage Ptnrs. LLC*, 2009 U.S. Dist. LEXIS 78962 (S.D. Fla. Aug. 31, 2009), a life insurance company sued twenty-eight defendants who were alleged to have engaged in a scheme described as "stranger-oriented life insurance policies". One of the defendants Park Venture Advisors ("PVA") was a brokerage and was sued for unjust enrichment and was alleged to have participated in the fraudulent scheme and was alleged to have "received compensation for its role in the transactions" from the policy holders. The District Court noted that this type of benefit was simply insufficient to state a claim for unjust enrichment. *Id*. The District Court noted that the only one who could be directly benefitted from issuance of the policies would be the ones who received the policy benefits. *Id*.

Likewise, in *Century Senior Servs. v. Consumer Health Benefit Ass'n*, 770 F. Supp. 2d 1261 (S.D. Fla. 2011), the District Court held that the direct benefit element is not satisfied by simply alleging that some third party derives income and other economic benefits from the disbursement of funds between parties to a contract. *Century Senior* involves facts of a

2501-001

somewhat complicated nature, but the essence of the Court's ruling was that a counterclaim filed

by a defendant to an interpleader action alleging *inter alia* that the original plaintiff "derived and

continues to derive <u>substantial income and other economic benefits</u>" from the benefits of a

contract was indirect at best and not directly from the defendant who asserted the counterclaim.

*Id.*

Finally in *Nesbeth v. Mastercard Worldwide*, 2010 U.S. Dist. LEXIS 93870 (S.D. Fla.

July 19, 2010) (magistrate report and recommendations adopted at *Nesbeth v. Usimo*, 2010 U.S.

Dist. LEXIS 93863 (S.D. Fla. Sept. 9, 2010)), the District Court dismissed with prejudice a claim

for unjust enrichment reasoning that the facts were indistinguishable from those in *Fla. Power &*

*Light Co*. In *Nesbeth*, several individuals fell victim to a "ponzi" scheme and brought suit against

several individual and companies alleged to have had participated in and facilitated the scheme.

MasterCard was alleged to have entered into a financial relationship with a "rogue" bank which

allowed the bank to issue debit cards to stakeholders bearing the MasterCard logo which in turn

resulted in a financial benefit to MasterCard as a result of the scheme. The Plaintiffs in turn

asserted *inter alia* a claim for unjust enrichment against MasterCard. In dismissing the unjust

enrichment claim with prejudice, the District Court reasoned that there was no relationship

between the plaintiff and the defendant, plaintiff paid no monies to the defendant, and the

defendant provided no services to the plaintiff. The allegations were insufficient for the Court to

infer a direct benefit conferred upon MasterCard by the plaintiffs. *Id.*

The facts of this case are simply no different than the facts of the case set forth above,

and countless others just like them, finding that an indirect benefit is insufficient to support a

claim for unjust enrichment. Allstate had no contractual relationship with Dr. Vizcay, Allstate

received no bills or claims submissions from Dr. Vizcay, Dr. Vizcay provided no services to

Allstate, and Allstate paid no insurance benefits to Dr. Vizcay. *See* Exhibit "A". After over a year of litigation and extensive discovery, there is simply nothing Allstate can point to in the record to support its claim that it conferred any benefit, much less a "direct benefit" on Dr. Vizcay. *See Swindell v. Crowson*, 712 So. 2d 1162 (Fla. 2d DCA 1998) (holding that in a claim for unjust enrichment, "[d]amages cannot be based on speculation, conjecture or guesswork"). Allstate cannot be allowed to proceed to a jury on speculative claims. *See Court-Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.,* 2011 U.S. Dist. LEXIS 34256 (S.D. Fla. Mar. 30, 2011) (holding that conclusory allegations of *indirect benefits* are insufficient to state a claim for unjust enrichment)(emph added); *Century Senior Servs. v. Consumer Health Benefit Ass'n*, 770 F. Supp. 2d 1261 (S.D. Fla. 2011)("A benefit a defendant gains that does not come directly from the plaintiff does not give rise to a claim for unjust enrichment. See id. In this case, the language of Magnolia's counterclaim does not include any allegation of a benefit conferred directly onto CSS; it claims that the benefits were 'derived' from Magnolia's sales."). Because there is no record evidence that a "direct benefit" was conferred by Allstate on Dr. Vizcay, Dr. Vizcay is entitled to summary judgment as a matter of law as to Allstate's unjust enrichment claim.

**B.      A claim for unjust enrichment cannot be based on statutory violations.**

Allstate's claim for unjust enrichment is nothing more than a clever disguise designed to circumvent the fact that the statutory provisions that form the basis of Allstate's Complaint do not give Allstate a private right of enforcement. The reality is that allegations of statutory violations cannot legally support a claim for unjust enrichment. *Florida v. Tenet Healthcare Corp*., 420 F. Supp. 2d 1288 (S.D. Fla. 2005). "Liability in unjust enrichment has in principle nothing to do with fault. It has to do with wealth being in one person's hands when it should be

in another person's." *Guyana Tel. & Tel. Co. v. Melbourne Int'l Comms., Ltd.*, 329 F.3d 1241, 1245 n.3 (11th Cir. 2003). As soon as Allstate relies on a statutory violation to serve as the "inequitable" retention element, the claim must fail. *Id.* (citation omitted).

In this case, Allstate predicates its unjust enrichment claim on allegations that the defendants violated various provisions of Chapters 400, 408 and 460 as well as 627.736 of the Florida Statutes (Doc. No. 1). Based on its own allegations, Allstate's right of recovery is clearly based on allegations of statutory violations and not "inequitable" retention of insurance benefits. While statutory violations could give rise to a right to recover damages, such a basis is not proper for an unjust enrichment claim which is concerned with "inequitable" not "wrongful" retention. *Guyana*, 329 F.3d at 1245 n.3. Because "the law of unjust enrichment is concerned solely with enrichments that are unjust independently of [alleged] wrongs," Allstate's unjust enrichment claim is inappropriate as a matter of law. *Flint v. ABB, Inc.*, 337 F.3d 1326, 1330 n.2 (11th Cir. 2003) (noting that when the plaintiff relies on a wrong to supply the unjust factor, "the causative event is a wrongful enrichment rather than an unjust enrichment"). Dr. Vizcay is therefore entitled to summary judgment as Allstate's claim for unjust enrichment.

### C.     Allstate has failed to show that Dr. Vizcay was "unjustly enriched".

Not only can a claim for unjust enrichment not be predicated on alleged "wrongful" conduct, but where a party in exchange for any benefit conferred on another party, receives exactly what they bargained for, there can be no claim for unjust enrichment. *Moynet v. Courtois*, 8 So.3d 377, 379 (Fla. 3d DCA 2009)("when a defendant has given adequate consideration to someone for a benefit conferred, a claim for unjust enrichment necessarily fails"); *Pan American West, Ltd. v. Cardinal Commer. Dev.*, LLC, 50 So. 3d 68 (Fla. 3d DCA 2010). Allstate has not alleged that medical services paid for by Allstate were not provided, or

that medical services paid for by Allstate were not provided by a licensed physician, or that the medical services paid for by Allstate were not medically necessary. In fact, Allstate has not once alleged that any injury has resulted as a result of medical services provided by the medical facilities. Assuming that this Court finds that Allstate conferred a benefit on Dr. Vizcay, the issue is whether Dr. Vizcay is entitled to summary judgment when the record presents no facts to show that Allstate did not receive adequate compensation for the benefit allegedly conferred.

Pursuant to Florida law, if a plaintiff fails to demonstrate that the defendant did not provide adequate compensation for the benefit the plaintiff alleges to have conferred, then the claim for unjust enrichment must fail as a matter of law. *See e.g. American Safety Insurance Company, v. Griggs*, 959 So. 2d 322 (Fla. 5th DCA 2007); and *Moynet*, 8 So.3d at 379; *Pan American West, Ltd.*, 50 So. 3d 68. Allstate has simply failed to set forth show that it was not compensated – in the form of medical services rendered to its insureds – for the benefits it alleges to have conferred on the Defendants. As such, Dr. Vizcay is entitled to summary judgment as to Allstate's claim for unjust enrichment.

## IV.  DR. VIZCAY COMPLIED WITH HER MEDICAL DIRECTOR DUTIES.

Regardless of the Court's findings regarding the legal arguments presented in sections I, II and III above, the record evidence more than clearly reveals that Dr. Vizcay complied with her medical director duties and is therefore entitled to summary judgment. Dr. Vizcay hereby adopts and incorporates by reference herein the legal and factual arguments presented in the medical director clinics' motion for summary judgment.

## V.  ALLSTATE IS NOT ENTITLED TO CHALLENGE DR. VIZCAY'S OWNERSHIP AND/OR COMPLIANCE WITH MEDICAL DIRECTOR DUTIES.

Notwithstanding the foregoing, Dr. Vizcay is entitled to final summary judgment as to Allstate's entire complaint. Allstate's complaint as a whole raises two issues: (1) Allstate

contends Dr. Vizcay does not "wholly own" her clinics as required by Florida Law; and (2) Allstate contends the Dr. Vizcay did not comply with the medical director requirements (Doc. No. 1). Based on these alleged violations, Allstate argues the claims submitted by the seven (7) medical facilities were "unlawful" pursuant to section 627.736(1)(a) of the Florida Statutes[5]. Dr. Vizcay however is entitled to summary judgment as a challenge to the ownership or control of a medical provider or compliance with the medical director requirements is not authorized by the 627.736 statute, and, in any event, the record evidence reveals that Dr. Vizcay wholly owns her clinics and that she did comply with the medical director requirements. *See* Exhibit "A".

**A.    Section 627.736(1)(a) does not provide Allstate with an express or implied basis to challenge Dr. Vizcay's ownership or compliance with medical director requirements.**

Allstate's sole position in this action is that section 627.736(1)(a) of the Florida Statutes allows an insurance company *carte blanche* authority to challenge a medical provider's compliance with each and every statutory and administrative requirement found in not only the Florida Statutes and Administrative Code but also the federal register.[6] In this particular case, Allstate is attempting to create an end run around the fact that the statutes it relied on in its complaint do not set forth a private right of enforcement. Essentially, Allstate is twisting the language of the PIP statute. The reality is, however, a literal and unbiased reading of the PIP statute reveals no such authority. The issue therefore is whether subsection 627.736(1)(a) allows an insurance company, or anyone for that matter, to challenge the ownership of a medical facility or challenge whether a medical director has complied with the medical director requirements.

---

[5] Section 627.736 of the Florida Statutes is commonly referred to as the Florida PIP statute.
[6] Allstate relies on the definition of "lawful" and "lawfully provided" found in section 627.732 of the Florida Statutes

As the basis of Allstate's entire complaint is subsection 627.736(1)(a) of the Florida Statutes – that is where the inquiry must begin. Does subsection 627.736(1)(a) of the Florida Statutes authorize Allstate that challenge ownership of a medical facility or compliance with medical director requirements? It is Dr. Vizcay's position that it does not.

**B.** **Dr. Vizcay is entitled to summary judgment as Dr. Vizcay owns Global, Caleb, Personal and Regional as a matter of law and Allstate is not entitled to enforce the Health Care Clinic Act.**

Assuming *in arguendo* this Court holds that Allstate is entitled to engage in an inquiry into the ownership of the "de facto clinics" despite the fact that the provisions of section 627.736(1)(a) of the Florida Statutes have been complied with, Dr. Vizcay is still entitled to summary judgment because the record supports Dr. Vizcay's ownership of Caleb, Global, Personal and Regional.

According to Allstate, the services at issue were unlawful because Dr. Vizcay is not the "owner" of Caleb, Global, Personal and Regional as contemplated in section 400.9905(4)(g) of the Florida Statutes. There is however not a single controlling Florida case Allstate can cite to that stands for the proposition that an uninterested third party like Allstate can challenge ownership of a medical facility. The facts in this case reveal that but one person "owns" Caleb, Global, Personal and Regional and that is Dr. Vizcay. *See* Exhibit "A".

The undisputed facts reveal that Dr. Vizcay owns 100% of the stock in Caleb, Global, Personal and Regional and has owned the stock in Caleb, Global, Personal and Regional since these facilities opened. *See* Exhibit "A". Dr. Vizcay was the only individual that made any capital investments in Caleb, Global, Personal and Regional. *See* Exhibit "A". Dr. Vizcay is the only individual with the right to receive profits from Caleb, Global, Personal and Regional and in fact Dr. Vizcay did receive all the profits from Caleb, Global, Personal and Regional. *See* Exhibit

"A". Dr. Vizcay was issued the K-1 from Caleb, Global, Personal and Regional for the profits of Caleb, Global, Personal and Regional and paid all taxes out of her own personal funds. *See* Exhibit "A". Dr. Vizcay was the only individual was suffered any financial loss for the business of Caleb, Global, Personal and Regional. *See* Exhibit "A". Dr. Vizcay is the only individual with the power to sell Caleb, Global, Personal and Regional and the only individual with the power to cease the operations of Caleb, Global, Personal and Regional. *See* Exhibit "A". In fact, in June of 2011, Dr. Vizcay exercised her rights to cease the business operations of Caleb, Global, Personal and Regional. Finally, no other individual has the right to the accounts receivables of Caleb, Global, Personal and Regional. At all times during the operation of Caleb, Global, Personal and Regional, Dr. Vizcay participated in the management and control of the Caleb, Global, Personal and Regional including the decision to hire or fire personnel, and decided who would have access to the business accounts and Dr. Vizcay purchased the equipment and medical supplies. *See* Exhibit "A". After Dr. Vizcay closed Caleb, Global, Personal and Regional, she sold all of the furniture and other tangible assets and deposited that money into her personal account. *See* Exhibit "A".

The reality is that Dr. Vizcay has owned Caleb, Global, Personal and Regional since the day these facilities opened. *Sackett v. Shahid*, 722 So. 2d 273 (Fla. 1st DCA 1998) (holding that a person who permits his name to be registered on the books of a corporation as the owner of shares of stock may be estopped from disputing ownership of the shares). When considering issues of ownership, courts do not look to who "controls" the business but generally look to the corporate records, i.e. stocks, articles of incorporation, etc., to determine who the company's shareholders are. *Id*. If a person's name appears as a shareholder in the corporate records, this is prima facie evidence of corporate ownership. *Id.* at 275. Typically courts will defer to analyzing

the control over day to day operations when it is necessary to settle disputes between business partners who have a dispute over ownership – not by unrelated third parties. *Id.*; *see also Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003).

Violations of the Health Care Clinic Act (the "Act"), including section 400.9905(4)(g) have very specific penalties, none of which is available to an insurance company like Allstate and none of which indicates that an insurance company is entitled to apply its own definitions and standards to rules designed to be enforced by an administrative agency established by the Legislature. *See* §400.995, Fla. Stat. Despite all of the legal arguments that have been presented in this case, Allstate is simply not entitled to take an act of legislation like the Act and enforce its provisions via some twisting of the PIP statute. The fact remains, only the Agency for Health Care Administration (the "Agency") has been charged with ensuring compliance with the Act.[7] And because the terms used in section 400.9905(4)(g) of the Florida Statutes, including "supervise" and "business activities" are undefined, application of these definitions and standards should be left to the Agency. As there are penalties for violations of the Act, there is no need for Allstate, this Court, or a jury of lay persons to invade the province of the Agency and do what the Agency is charged to do. "[I]f administrative agencies are to function and endure as viable institutions, courts must refrain from 'promiscuous intervention' in agency affairs 'except for most urgent reasons.'" *Gulf Pines Memorial Park Inc. v. Oaklawn Memorial Park Inc.*, 361 So. 2d 695, 698 (Fla. 1978). As such, Dr. Vizcay is entitled to final summary judgment.

---

[7] § 400.990 **Short title; legislative findings.**—

…

(2) The Legislature finds that the regulation of health care clinics must be strengthened to prevent significant cost and harm to consumers. The purpose of this part is to provide for the licensure, establishment, and enforcement of basic standards for health care clinics and to provide administrative oversight by the Agency for Health Care Administration.

## VI.   DR. VIZCAY IS ENTITLED TO SUMMARY JUDGMENT AS TO ALLSTATE'S CLAIMS FOR DECLARATORY RELIEF.

Finally, Allstate has alleged four (4) claims for declaratory relief (Doc. 1 at 21-40). The basis of Allstate's requested declarations are claims submitted by the seven (7) medical facilities only and not by Dr. Vizcay. As there is no case or controversy between Allstate and Dr. Vizcay individually this Court need not exercise jurisdiction over Allstate's claim for declaratory relief <u>as it relates to Dr. Vizcay only</u>. Dr. Vizcay is therefore entitled to summary judgment as to counts IV-VII of Allstate's complaint.

Allstate's request for declaratory relief is governed by 28 U.S.C. § 2201. As such, counts IV-VII must be construed according to 28 U.S.C. § 2201(a). *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, 2008 U.S. Dist. LEXIS 56195 (S.D. Fla. June 17, 2008). To obtain a judgment for declaratory relief pursuant to 28 U.S.C. § 2201(a), a party must prove (1) the plaintiff has a present **bona fide need** for a declaration; (2) the plaintiff is **in doubt as to his rights**; (3) **all parties necessary** to the resolution of these issues are presently before the court; and (4) the plaintiff is not merely seeking legal advice, but is rather seeking a **resolution of his rights regarding a present controversy**. *Syndicate Exchange Corp. v. Bussey (In re Pro Greens, Inc.)*, 305 B.R. 356, 360 (Bankr. M.D. Fla. 2003) (emph. added). In considering whether a court should exercise jurisdiction over a claim for declaratory relief, the Court is confined by Article III of the United States Constitution which authorizes this Court to adjudicate only actual "cases" and "controversies." *Allen v. Wright*, 468 U.S. 737, 750 (1984).

Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review. *Digital Props., Inc. v. City of Plantation,* 121 F.3d 586, 589 (11th Cir.1997)(citations omitted). The ripeness doctrine prevents the courts, through avoidance of premature adjudication, from

2501-001

entangling themselves in **abstract disagreements**. *Id. See Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967), *overruled on other grounds by, Califano v. Sanders*, 430 U.S. 99 (1977) (emph. added). "In all cases arising under the Declaratory Judgment Act, the threshold question is whether a justiciable controversy exists." *Atlanta Gas Light Co. v. Aetna Casualty and Surety Co.*, 68 F.3d 409, 414 (11th Cir. 1995). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of **practicality** and wise **judicial administration**." *Id.* at 288 (emph. added). As it relates to Allstate's claims for declaratory relief against Dr. Vizcay, this Court must consider whether the facts alleged and the record evidence before the Court demonstrate the existence of a substantial controversy between Allstate and Dr. Vizcay, and whether there are even adverse interests between Allstate and Dr. Vizcay, with sufficient **immediacy** and **reality** to warrant the issuance of a declaratory judgment. *Id.*

As it relates to Dr. Vizcay, the declarations sought by Allstate request merely advisory opinions based on the hypothetical fact Dr. Vizcay individually submitted claims to Allstate when she did not. *See* Exhibit "A". As the concern of Allstate's requested declarations have to do only with those **claims submitted by or on behalf of the medical facilities** and not by Dr. Vizcay individually, and there is no evidence Dr. Vizcay holds any entitlement to money from Allstate in the form of an assignment of benefits, and there is no expectation by Dr. Vizcay that Allstate pay her directly for the claims submitted by the medical facilities, there is no case or controversy between Allstate and Dr. Vizcay. To allow Allstate to proceed on these claims against Dr. Vizcay when she did not submit any of the unpaid claims would be nothing more than a waste of judicial resources and any declaration against Dr. Vizcay individually in this context would, under no circumstances, constitute adjudication on the merits. Allstate admits in

its complaint that the medical providers are the one who hold the assignments of benefits, the medical providers submitted the claims and therefore the medical providers are the ones with an expectation of being paid for these claims (Doc. 1 *generally*).

This exact issue was decided in *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab, Inc.,* 2011 U.S. Dist. LEXIS 145629 (M.D. Fla. Dec. 19, 2011). In that case, District Court Judge Gregory Presnell granted summary judgment for a physician who was named in State Farm's declaratory judgment count along with a medical provider. In granting summary judgment for the physician, Judge Presnell reasoned that the medical provider submitted the claims, and the medical holds the right to payment of the claims; as such, there was no case in controversy between State Farm and the physician. The same is true in this case.

As in the *State Farm* case, any declarations against Dr. Vizcay regarding claims she did individually not submit are improper as a matter of law as Allstate cannot establish that Allstate and Dr. Vizcay have "**adverse legal interests** of sufficient **immediacy** and **reality** to warrant the issue of a declaratory judgment." *Belfor USA Group v. Bray & Gillespie*, 2008 U.S. Dist. LEXIS 7076 *12 (M.D. Fla. January 31, 2008). As such, this Court should decline to entertain Allstate's requests to the extent they seek declarations against Dr. Vizcay individually and Dr. Vizcay is entitled to summary judgment as to counts IV-VII of Allstate's complaint.

## STATEMENT REGARDING ADOPTION OF MEMORANDA OF OTHER PARTIES

Dr. Vizcay hereby adopts and incorporates by reference herein the legal and factual arguments presented by the other defendants in this matter so as to avoid unnecessary duplication or argument.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 22nd day of January, 2013, I electronically filed the foregoing with the Clerk using the CM/ECF system which will send a notice of electronic filing to Ms. Kimberly P. Simoes, Esquire, The Simoes Law Group, P.A. 120 South Woodland Boulevard, Suite 213, Deland, Florida 32720; Mr. Eric A. Lee, Esquire, Lee & Amztis, PL, 5550 Glades Road, Suite 401, Boca Raton, Florida, 33431, Mr. Donald James Masten, Esquire, Masten, Peterson & Denbo, LLC, 189 South Orange Ave., Suite 1450, Orlando, FL 32801  and Ms. Tammy-Mary Baldwin Denbo, Esquire, Masten, Peterson & Denbo, LLC, 6730 W. Linebaugh Ave, Suite 101, Tampa, FL 33625; and Mr. Daniel A. Martinez, Esquire and Ms. Inguna Varslavane-Callahan, Esquire, Callahan & Martinez, LLC, 2935 1st Avenue North, Floor 2, St. Petersburg, Florida 33713.

s/ Crystal L. Eiffert
Crystal L. Eiffert, Esquire
Florida Bar No.: 0553581
ceiffert@ealawgroup.com
EIFFERT & ASSOCIATES, P.A.
122 E. Colonial Drive
Suite 210
Orlando, FL 32801
(407) 244-1980 (telephone)
(407) 244-1981 (facsimile)
*Trial Counsel for*
*Defendants/Counter-Plaintiffs*

THE SIMOES LAW GROUP, P.A.
Kimberly P. Simoes
Florida Bar No.: 109479
kimberly@simoeslaw.com
120 S. Woodland Ave., Ste. 213
Deland, FL 32720
Telephone: 386/490-4360
Facsimile: 386/738-0701

LEE & AMTZIS, P.L.
Eric Lee
Florida Bar No.: 961299
lee@leeamlaw.com
5550 Glades Road, Suite 401
Boca Raton, FL 33431
Telephone: 561/981-9988
Facsimile: 561/981-9980