UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALLSTATE INSURANCE COMPANY,
et al.,

     Plaintiffs,

vs.                                 CASE NO. 8:11-cv-804-T-17TBM

SARA VIZCAY, M.D., et al.,

     Defendants.

_____/

## ORDER

This cause is before the Court on Defendant, Sara C. Vizcay, M.D.'s Motion for

Summary Judgment and Memorandum of Law and Request for Oral Argument (Dkt. 264),

Defendants, Best Care Medical Center, Inc., Florida Rehabilitation Practice, Inc. (f/k/a Dana

Medical Center, Inc.), and P.V.C. Medical Center, Inc.'s, Motion for Summary Judgment (Dkt.

256), Defendants, Caleb Healthcare, Global Diagnostics, Personal Medical Center, and Regional

Enterprises for Health's, Motions [sic] for Summary Judgment (Dkt. 262), and Allstate's Motion

for Summary Judgment as to Vizcay and the Medical Director Clinic Defendants and

Memorandum of Law (Dkt. 263). As discussed below Sara C. Vizcay, M.D.'s motion is

GRANTED IN PART and DENIED IN PART; all other motions are DENIED.

## BACKGROUND

The plaintiffs ("Allstate")[1] brought this action against Dr. Vizcay and seven health care

clinics to avoid several million dollars worth of No-Fault Personal Injury Protection ("PIP")

claims that Allstate alleges are not properly payable to the health care clinics. Specifically,

Allstate alleges that defendants engaged in fraudulent billing practices, in addition to failing to

comply with the licensing requirements of the Florida Health Care Clinic Act ("HCCA").

Consequently, according to Allstate, all claims for services performed by the health care clinics

in violation of the HCCA are not properly payable.

In 2003, the Florida Legislature enacted the HCCA to strengthen the regulation of health

care clinics as a measure to protect consumers. *See* Fla. Stat. § 400.990(2) ("The Legislature

finds that the regulation of health care clinics must be strengthened to prevent significant cost

and harm to consumers."). "The purpose of [the HCCA] is to provide for the licensure,

establishment, and enforcement of basic standards for health care clinics and to provide

administrative oversight by the Agency for Health Care Administration." *Id.* The HCCA

expanded the scope of the licensing requirements and placed additional regulations on the

operation of health care clinics, i.e., background checks, inspections, increased licensing fees,

and fiscal accountability. All health care clinics in Florida must now obtain and operate under a

license or qualify for one of the limited exemptions. For example, a health care clinic is exempt

from the licensing requirement if it is "wholly owned by one or more licensed health care

practitioners." Fla. Stat. § 400.9905(4). Allstate alleges that the health care clinics: (1)

---

[1] Six related Allstate entities joined as plaintiffs in this lawsuit: Allstate Insurance Company;
Allstate Indemnity Company; Allstate Property and Casualty Insurance Company; Allstate Fire
and Casualty Insurance Company; Allstate Vehicle and Property Insurance Company (f/k/a
Deerbrook Insurance Company Successor By Merger to Northbrook Indemnity Company). The
plaintiffs will be referred to collectively in this order as "Allstate."

concealed their true owners, who are not licensed physicians, in order to qualify for the "wholly owned" exemption under the HCCA, and (2) failed to comply with the requirements that they be properly supervised by a medical director. Compliance with the HCCA is critical because "[a]ll charges or reimbursement claims made by or on behalf of a clinic that is required to be licensed under this part, but that is not so licensed, or that is otherwise operating in violation of this part, are unlawful charges, and therefore are noncompensable and unenforceable." Fla. Stat. § 400.9935(5). Put simply, this dispute largely centers on whether the ownership structure and operation of the health care clinics complies with the HCCA such that Allstate is obligated to pay for the claims submitted by the defendants.

Certain facts are undisputed. Dr. Vizcay is a licensed medical doctor in the state of Florida, and was licensed at all times material to this case. (Dkt. 257, ¶¶ 1, 2). It is also undisputed that Dr. Vizcay is listed as the owner of four of the seven health care clinic defendants—Caleb Health Care, Inc. ("Caleb"), Global Diagnostic Center, Inc. ("Global"), Personal Medical Center, Inc. ("PMC"), and Regional Enterprises for Health Corporation ("Regional"). (Dkt. 378, ¶¶ v-gg). Each of these four companies applied for and obtained a certificate of exemption from the Agency for Health Care Administration ("AHCA"), claiming to be "wholly owned by a licensed practitioner." (Dkt. 378, ¶¶ v-gg). The remaining defendant health care clinics—Best Care Medical Center, Inc. ("Best Care"), Florida Rehabilitation Practice, Inc. ("Dana"), and P.V.C. Medical Center, Inc. ("P.V.C.")—were admittedly not owned (in whole or in part) by a chiropractor or licensed physician and, therefore, did not receive a licensing exemption. (Dkt. 378, (1) ¶¶ q-u). Instead, Best Care, Dana, and P.V.C. listed Dr. Vizcay as their medical director. (Dkt. 378, (1) ¶¶ hh-jj).

It is also undisputed that all payments made by Allstate were paid to the seven health care clinics. Specifically, Allstate already paid the following amounts: (1) $158,335.83 to Best Care; (2) $62,733.32 to Caleb; (3) $375,051.18 to Dana; (4) $96,508.99 to Global; (5) $129,885.98 to P.V.C.; (6) $101,895.40 to PMC; and (7) $18,482.31 to Regional.  (Dkt. 378, (1) ¶¶ b, d, f, h, j, l, and n).  Similarly, all unpaid invoices for services rendered were submitted to Allstate by the seven health care clinics.  Allstate has been billed, but has not paid, the following amounts: (1) $317,685.98 by Best Care; (2) $385,783.57 by Caleb; (3) $491,155.46 by Dana; (4) $198,951.54 by Global; (5) $120,290.08 by P.V.C.; (6) $470,934.70 by PMC; and (7) $161,076.88 by Regional. (Dkt. 378, (1) ¶¶ c, e, g, i, k, m, and o).  Notably, there is no evidence that Dr. Vizcay personally billed Allstate for any of the services.

Other, quite material, facts remain in dispute.  As Allstate acknowledges, the parties dispute whether Dr. Vizcay, despite being listed as the sole owner, in fact wholly owned and supervised the business activities of Caleb, Global, PMC, and Regional.  (Dkt. 378, (11) ¶¶ 1, 2). The parties also dispute whether Dr. Vizcay discharged her duties as medical director of the remaining three health care clinics.  (Dkt. 378, (11) ¶¶ 3, 4).  Also disputed is whether any of the defendants fraudulently or negligently misrepresented the corporate structure and billing practices as it relates to claims submitted to Allstate.  (Dkt. 378, (11) ¶¶ 5-9).  As explained below, these factual issues necessarily preclude the entry of summary judgment with respect to many of the claims.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is

4

entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). That burden can be discharged if the moving party can show the Court that there is "an absence of evidence to support the nonmoving party's case." *Id.* at 323, 325. When the moving party has met this initial burden, the nonmoving party must then designate specific facts showing that there exists some genuine issue of material fact in order to defeat summary judgment. *Id.* at 324.

Issues of fact are "genuine" only if a reasonable jury, considering the evidence presented, could find for the nonmoving party. *Anderson*, 477 U.S. at 249. Material facts are those that will affect the outcome of the trial under governing law. *Id.* at 248; *Hickson Corp. v. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir.2004). In determining whether a material issue of fact exists, the court must consider all evidence in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). If the determination of the case hinges on which competing version of the facts or events is true, the case should be submitted to the trier of fact and the motion for summary judgment denied. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir.1987). The weighing of evidence and the consideration of the credibility thereof are issues of fact to be determined by the jury at trial. *See Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1299 (11th Cir. 1983).

## DISCUSSION

At their core, the pending motions for summary judgment are properly distilled into the following issues: (1) whether Florida law provides Allstate with a judicial remedy to avoid payments to the health care clinics in the event it is shown that the defendants failed to comply

with the HCCA; (2) if such a judicial remedy exists, whether there exists a genuine issue of
material fact with regards to the allegations of noncompliance with the HCCA and other
allegations of fraud and material misrepresentation; (3) whether Dr. Vizcay can be held liable for
unjust enrichment without proof of a direct benefit that flowed to her individually; and (4)
whether Allstate is entitled to seek a declaratory judgment against Dr. Vizcay for unpaid
invoices.[1]  Each will be discussed in turn.

> **A.  Under Florida law, an insurer is entitled to seek a judicial remedy to
> recover past payments, and avoid future payments due on
> outstanding invoices, when health care clinics fail to comply with the
> licensing requirements of the HCCA.**

Each defendant argues that Allstate is not permitted to challenge the licenses of the health
care clinics under the licensing regulations prescribed by the HCCA. *See* (Dkts. 256, pp. 6-11;
262, pp. 7-13; 264, pp. 17-18).  At bottom, this line of reasoning rests entirely on the premise
that insurers are not permitted to challenge a health care clinic's compliance with the HCCA in
order to avoid unlawful charges.  That argument was rejected by the Eleventh Circuit in a recent
unpublished opinion. *See State Farm Fire & Casualty Co. v. Silver Star Health and Rehab, Inc.*,
__ Fed. App'x __, 2013 WL 3989107 (11th Cir. Aug. 6, 2013).[2]

---

[1] Some of the defendants seek summary judgment based on the expiration of the statute
of limitations on certain bills. (Dkt. 256).  However, all of the claims in this action are based, at
least in part, on the alleged fraudulent conduct or negligent concealment by the defendants.  As
the moving defendants point out, however, "there is an issue as to when the facts giving rise to
the causes of action were discovered or should have been discovered with the exercise of due
diligence and thus a fact issue may exist." *Id.* at n. 8.  The Court agrees. *See Davis v. Monahan*,
832 So. 2d 708, 709-10 (Fla. 2002).

[2] Of course,"[i]n this Circuit, 'unpublished opinions are not binding precedent but they
may be cited as persuasive authority.'" *Suntree Tech., Inc. v. Ecosense Intern., Inc.*, 693 F.3d
1338, 1349 (11th Cir. 2012) (internal citations omitted).  This Court finds the reasoning of the
*Silver Star* case persuasive.

In *Silver Star*, the appellant argued that because the HCCA does not expressly authorize courts to determine whether health care clinics are in compliance with the licensing requirement, the district court erred by not dismissing the lawsuit. *Id.* at *2. Like the defendants in this case, the appellants suggested the licensing provisions are only enforceable by criminal and administrative penalties, not by insurers to whom claims for payment are made. *Id.* Acknowledging the absence of an express reference to a judicial remedy in the HCCA, and after canvassing the applicable portions of the statute that exempt insurers from paying unlawful charges,[3] the Eleventh Circuit held that "it would make no sense" to read into the statute a provision that the courts are powerless to enforce the licensing provisions in the HCAA. Taking it a step further, the only way the statute can be read to make any sense at all, is to hold that insurers may rely on the licensing provisions of the HCAA to challenge any unlawful bills submitted by health care clinics. Insofar as the defendants base their motions on the premise that Allstate cannot challenge the health care clinic's compliance with the HCAA to avoid payment, each is denied.

---

[3] "All charges or reimbursement claims made by or on behalf of a clinic that is required to be licensed under this part, but that is not so licensed, or that is otherwise operating in violation of this part, are unlawful charges, and therefore are noncompensable and unenforceable." Fla. Stat. § 400.9935(3). Furthermore, Florida's no fault PIP statute states "[a]n insurer . . . is not required to pay a claim or charges . . . [f]or any service or treatment that was not lawful at the time rendered . . .," *id.* § 627.736(5)(b)1.b., and it defines "lawful" as "in substantial compliance with *all* relevant applicable criminal, civil, *and administrative* requirements of state and federal law related to the provision of medical services and treatment," *id.* § 627.732(11) (emphasis added).

7

**B.     Disputed issues of material fact preclude summary judgment with regards to Counts I, II, III, and VI.**

That Allstate is permitted to challenge whether the defendants complied with the statutory requirements of the HCCA does not resolve the matter in Allstate's favor on summary judgment.  Specifically, Allstate is seeking summary judgment against Best Care, Dana, P.V.C., and Dr. Vizcay on Count I (Negligent Misrepresentation), Count II (Common Law Fraud), Count III (Unjust Enrichment), and Count VI (Declaratory Relief as to Failure to Comply with Medical Director Duties/Violation of Florida Statutes §§ 400.9935 & 627.736 Regarding the Medical Director  Clinics).  By these claims, Allstate seeks to show that the health clinics (only Best Care, Dana, and P.V.C., for the purposes of this motion), along with Dr. Vizcay, were unlawfully operating and thus Allstate is not required to pay the outstanding bills and it should be reimbursed for those bills already paid.

In support of its motion, Allstate submits the expert testimony of Connie G. Coleman, L.P.N., C.P.C., C.H.C., A.C.A., a licensed practical nurse and certified professional coder.  After performing a "file by file review" of the medical bills, Coleman ultimately concluded that the bills were not properly coded, rendering the bills fraudulent and unlawful and, therefore, not compensable.  Coleman also concluded that Dr. Vizcay failed to comply with the statutory requirement of conducting a systematic review of the bills to ensure they were not fraudulent and unlawful.  Allstate, however, fails to appreciate the existence of record evidence to the contrary. Dr. Vizcay declared that she complied with the statutorily prescribed obligations of a medical director.  *See* (Dkt. 256-5, ¶¶ 22-33); *see also* (Dkt. 257, ¶¶ 39-52).  While the Court recognizes that the declaration is fairly conclusory in nature the Court must also balance that with the practical difficulty that is inherent in proving a negative.  This is especially true in a case such as this when the proof that must be overcome is in the form of expert opinion.  In essence, Coleman

8

will be testifying that she reviewed various records and, in her opinion, Dr. Vizcay could not have reviewed the bills and complied with her statutory obligations. Ostensibly, Dr. Vizcay will testify that she did. It will ultimately be up to the jury to determine whether to give more weight to Coleman's expert opinion or Dr. Vizcay's fact testimony. In any event, summary judgment is not properly entered with respect to Counts I, II, III, and VI.

### C. Florida law does not require a "direct benefit" to flow to a defendant in order to be liable for unjust enrichment.

Dr. Vizcay seeks summary judgment as to the unjust enrichment claim (Count III) principally on the grounds that Dr. Vizcay did not receive a "direct benefit" from Allstate. *See* (Dkt. 264, p. 10). It is true that in order to maintain a claim for unjust enrichment under Florida law, a plaintiff must have conferred a direct benefit on the defendant. *See Peoples Nat. Bank of Commerce v. First Union Nat. Bank of Florida, N.A.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996). As my colleague, Judge Presnell, illustrated in *State Farm Fire & Casualty Co. v. Silver Star Health and Rehab, Inc.*, 2011 WL 6338496, at *7 (M.D. Fla. Dec. 19, 2011), any determination of a benefit flowing to Dr. Vizcay is largely dependent on the disputed factual issues surrounding the ownership status of the health care clinics. Dr. Vizcay's remaining arguments are meritless and can be summarily rejected without further discussion. Accordingly, Dr. Vizcay's motion for summary judgment is denied as to Count III.

### D. Dr. Vizcay is not personally liable for unpaid invoices.

Dr. Vizcay also moves for summary judgment as to Counts IV-VII, because these counts are based on contractual fee agreements between Allstate and the health care clinics, not Dr. Vizcay individually. (Dkt. 263). As Dr. Vizcay points out, it is the health care clinics that hold the assignment of benefits; it is the health care clinics that submitted the claims to Allstate for

payment; and it is the health care clinics, consequently, that have the expectation (or perhaps more appropriately, the entitlement) to be paid on these claims; Dr. Vizcay claims nothing. Notwithstanding, Allstate argues that Dr. Vizcay was one of the wrongful actors in this scheme and, ultimately, the beneficiary of any payment by Allstate to the healthcare clinics on the disputed claims. (Dkt. 280, pp. 19-20). Allstate is conflating Dr. Vizcay's role as an individual participant in the overall scheme with the role of the health care clinics as the beneficiaries of the unpaid invoices.

Allstate's response to Dr. Vizcay's motion for summary judgment reveals that Allstate implicitly recognizes that Dr. Vizcay is not properly named a defendant in the declaratory judgment actions. *See* (Dkt. 280, p. 20) ("[T]he Court should look beyond the mere corporate form and consider VIZCAY's actions in the determination of the questions presented by ALLSTATE's declaratory judgment actions, i.e., whether ALLSTATE has any obligation to pay the bills coming from the Defendant Clinics because VIZCAY's actions . . . are in the heart of the determination as to whether the clinics operated without a proper license.") (emphasis added). To be sure, the complaint only seeks a declaration that Allstate is not obligated to make payments on the bills submitted by the health care clinics. *See* (Dkt. 1,¶¶ 124 ("ALLSTATE is uncertain as to whether the charges billed by the DE FACTO CLINICS to ALLSTATE are properly payable . . . ."); 163 ("This action . . . seeks to determine ALLSTATE's payment obligations . . . related to bills submitted by the MEDICAL DIRECTOR CLINICS . . . ."); 177 ("This action . . . arises out of a dispute . . . with respect to ALLSTATE's payment obligation for rendered services . . . related to bills submitted by the CHIROPRACTIC CLINICS . . . ."); 200 ("This action . . . seek[s] to determine . . . ALLSTATE's payment obligations . . . relating to bills submitted by each of the CLINICS . . . ."). It is of no consequence that Dr. Vizcay may receive

10

some form of benefit from the receipt of payments by the health care clinics should they prevail in this action.  What matters, and what is clear from the pleadings and record evidence, is that Allstate is not obligated to make any payments directly to Dr. Vizcay and, likewise, Dr. Vizcay has no legal right to collect payments from Allstate.  Accordingly, the Court will grant Dr. Vizcay's motion for summary judgment insofar as it relates to Counts IV through VII.  *See, e.g., Silver Star*, 2011 WL 6338496, at *5 (M.D. Fla. Dec. 19, 2011).  Accordingly, it is

**ORDERED** that Defendant, Sara C. Vizcay, M.D.'s Motion for Summary Judgment and Memorandum of Law and Request for Oral Argument (Dkt. 264) is GRANTED IN PART and DENIED IN PART.  Vizcay's motion for summary judgment is granted insofar as it seeks summary judgment of Counts IV through VII.  The motion is denied in every other respect.

**IT IS FURTHER ORDERED** that Defendants Best Care Medical Center, Inc., Florida Rehabilitation Practice, Inc. (f/k/a Dana Medical Center, Inc.), and P.V.C. Medical Center, Inc.'s Motion for Summary Judgment (Dkt. 256) is DENIED.

**IT IS FURTHER ORDERED** that Defendants, Caleb Healthcare, Global Diagnostics, Personal Medical Centerand Regional Enterprises for Health's Motions [sic] for Summary Judgment (Dkt. 262) is DENIED.

**IT IS FURTHER ORDERED** that Allstate's Motion for Summary Judgment as to Vizcay and the Medical Director Clinic Defendants and Memorandum of Law (Dkt. 263) is DENIED.

**DONE AND ORDERED** in Chambers in Tampa, Florida this 30th day of September, 2013.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies furnished to: All Counsel of Record

11